**SACK & SACK, ESQS.**
110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
*Attorneys for Plaintiff*

UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

|  |  |
|---|---|
| **JEAN P. SIMON, M.D.,** | Civ. No.: 07-cv-11426 (SAS) |
| Plaintiff, | ECF CASE |
| — against — | **COMPLAINT** |
|  | **JURY TRIAL REQUESTED** |
| **UNUM, UNUM PROVIDENT, PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, THE PAUL REVERE LIFE INSURANCE COMPANY, FIRST UNUM LIFE INSURANCE COMPANY, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY AND UNUMPROVIDENT CORPORATION,** |  |
| Defendants. |  |

-------------------------------------------------------------------------- x

Plaintiff, JEAN P. SIMON, M.D. ("*Dr. Simon*" or "*Plaintiff*") by his attorneys, Sack & Sack, Esqs., as and for its complaint, alleges as follows:

## NATURE OF ACTION

1.    This action is brought by Dr. Simon against UNUM, UNUM PROVIDENT, PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, THE PAUL REVERE LIFE INSURANCE COMPANY, FIRST UNUM LIFE INSURANCE COMPANY, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY AND UNUMPROVIDENT CORPORATION (together hereinafter referred to as, "*UNUM*" or "*Defendants*").

2.      This action is brought in breach of contract by Defendants' based upon their failure to pay Dr. Simon accrued disability benefits pursuant to disability policies entered into between UNUM and Dr. Simon.

3.      This action is further grounded in fraud based upon UNUM's actions described herein.

4.      UNUM willfully and wrongfully breached the terms and conditions of the UNUM Policies issued to Plaintiff by: (i) wrongfully withholding Plaintiffs disability benefits; and (ii) otherwise failing to honor provisions of the UNUM Policies during the "period of total disability" that continues through this date.

### THE PARTIES

5.      At all times hereinafter mentioned, Plaintiff is a citizen of the County, City and State of New York.

6.      At all times hereinafter mentioned, UNUM is a foreign corporation, authorized to do business in the State of New York, and doing business in the State of New York.

### JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a). The parties are of diverse citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9.      Venue is properly placed in the United States District Court for the Southern District of New York since the Plaintiff resides herein, the Defendants do business here, the witnesses are located here, and this is the most convenient place for the trial of this action.

## FACTS COMMON TO ALL COUNTS

### DR. SIMON'S EDUCATIONAL AND EMPLOYMENT HISTORY

10.     Dr. Simon is a very well respected obstetrician / gynecologist and gynecological surgeon ("*OB/GYN*"), and had been highly-ranked consistently for 20 years prior to the incidents leading up to this Complaint, as one of the top OB/GYNs in New York.

11.     Dr. Simon graduated from the University of Paris in 1982, after five years of residency in France, specializing in OB/GYN surgery.

12.     In September 1982, Dr. Simon moved to the United States and began an OB/GYN residency, training at Columbia Presbyterian in 1982, St. Luke's Roosevelt Hospital in 1984 and Boston City Hospital from 1986 to 1988, before becoming a Board Certified OB/GYN.

13.     Beginning in 1988, Dr. Simon went into private practice on the Upper East Side of Manhattan, with admitting privileges at Beth Israel Hospital, Mount Sinai Hospital (since 1991) and New York Presbyterian Hospital (since 2000).

### DR. SIMON'S DUTIES AND RESPONSIBILITIES AS AN OB/GYN

14.     As a Board-certified OB/GYN, the substantial and material duties of his occupation required Dr. Simon to perform all the duties of his OB/GYN specialty, including, but not limited to, deliveries and surgical procedures in a hospital setting, ranging from normal vaginal delivery (where his left hand had to guide the fetal head down the vaginal canal, helping with the rotation, deflexion, extension of the fetal head, etc.) to more complicated deliveries such as forceps, vacuum extraction and cesarean sections.

15.     As a solo practitioner in his OB/GYN specialty, Dr. Simon personally delivered all the babies of all his patients as a substantial and material duty of his occupation.  The deliveries and other substantial and material duties of his occupation required Dr. Simon to be present at the

3

hospital, on the Labor and Delivery floor, with his parturient patient, as part of the process of delivering babies. All of the various baby-delivery-protocols require an extraodinarily high degree of strength, dexterity, mobility, control and sensitivity in order to prevent the risk of harm to the baby and the mother. These protocols ranged from normal vaginal delivery (where the left hand must guide the baby's head down the vaginal canal, then assist with the rotation, deflexion, and extension of the fetal head, etc.) to more complicated deliveries such as forceps, vacuum extraction and cesarean section.

16.     Oftentimes, in both emergency and non-emergency situations, as an OB/GYN specialist, Dr. Simon would be required to perform caesarian sections involving open abdominal surgery (requiring full participation of both of his hands, the left being inside the uterus, under the fetal head, with full wrist extension guiding the fetal head through the uterus).

17.     In addition to the Obstetrical care, Dr. Simon's practice of his OB/GYN specialty included a complete range of gynecological (non-obstetric) medical surgical procedures for non-pregnant women, including minor and major surgical procedures performed in the hospital setting. Because Dr. Simon received his first OB/GYN specialty training in France, he trained in the most sophisticated, complex, intricate microsurgical, laparoscopy, and vaginal hysterectomy procedures with the French pioneers who invented and developed the technology and protocols that are today the gold standard of gynecological surgery. These procedures, which require the highest degree of skill and training, also require the highest degree of fine dexterity and control, and were the mainstay of Dr. Simon's OB/GYN specialty practice.

4

### DR. SIMON'S CONTRACT WITH UNUM

18.     On or about January 1, 1993, Dr. Simon purchased disability policies from Defendant UNUM for purposes of purchasing disability policies in the event he were to become disabled (or "totally disabled") by means of his occupation as an OB/GYN specialist.

19.     Dr. Simon, as an individual consumer, obtained two (2) standard form disability insurance policies from UNUM: (i) Policy Number 36-3376084608, effective January 1, 1993 ("*Policy 1*"); and (ii) Policy Number 36-1737-6122493, effective August 1, 1995 ( "*Policy 2*", together with Policy 1, the "*UNUM Policies*" or the "*Plan*"). (Exhibit "A")

20.     The UNUM Policies are standard form policies that are offered and are available to consumers at large.

21.     According to the UNUM Policies, Dr. Simon is entitled to disability proceeds in the event he suffers a "Total Disability" or becomes "totally disabled," which is defined in the UNUM policies as follows:

> Total Disability or totally disabled
> means that . . .  due to Injuries or
> Sickness you are not able to perform
> the substantial and material duties of
> your occupation . . .

22.     The UNUM Policies promise to pay benefits to Dr. Simon if he suffered a "total disability" that impaired his ability to perform the "the substantial and material duties of [his] occupation" as an OB/GYN specialist.

5

> ### DR. SIMON'S "TOTAL DISABILITY"

23.    On or about November 23, 2003, Dr. Simon became "Totally Disabled" in accordance with the terms defined in the UNUM Policies while performing the material and substantial duties of his occupation as an OB/GYN specialist on a regular basis according to the terms of the UNUM Policies.

24.    Specifically, on or about November 23, 2003, Dr. Simon suffered a massive abscess/cellulitis of the left hand.

25.    As a consequence of his injury, Dr. Simon was treated by Dr. Scott Wolfe, Chief, Hand & Upper Extremity Surgery, Hospital for Special Surgery, at Hospital for Special Surgery in New York City. Subsequently, Dr. Simon was diagnosed with acute septic tenosynovitis of the left hand and was immediately taken to the OR, where he underwent emergency surgery under general anesthesia.

26.    As part of the surgery, an approximately 7-inch vertical incision was performed to the palmar aspect Dr. Simon's left hand, wrist and lower forearm. The procedure was a three-hour procedure, which included debridement of deep space infection and horseshoe abscess, and lysis of adhesions.

27.    Dr. Simon was hospitalized at Hospital for Special Surgery in New York City. The incision was left open to allow for the drainage of the abscess. Dr. Simon also received intravenous antibiotics to treat the severe gram negative and positive infections.

28.    Dr. Simon also underwent two additional surgical procedures under general anesthesia, for a total of three surgical procedures under general anesthesia. The second procedure took place on or about November 28, 2003, to complete the debridement and irrigate the deep space

of the left hand. The initial incision was partially closed, but left open at the level of the wrist to allow for secondary healing. The third procedure took place in or around December 2003.

29.    On or about December 4, 2003, Dr. Simon was discharged from the hospital and allowed to return home with a 24-hour-a-day  peripherally inserted central catheter ("*PICC*") directly to his heart, in order to administer the massive antibiotics he required for one month.  A nurse visited Dr. Simon every day to change the antibiotic supply, check the dressing, ensure there was no infection at the PICC site, and to ensure that the pump of the PICC was functioning properly.

30.    Dr. Simon underwent significant hand therapy with an Occupational Therapist at the Hospital for Special Surgery in New York City.

31.    Following his injury and hospitalization, and the removal of his PICC, Dr. Simon underwent significant therapy and treatment by medicine's top specialists in the field, including Scott Wolfe, MD (Chief of Hand Surgery at the Hospital for Special Surgery) and a second opinion by Stephen Glickel, MD (Chief of Hand Surgery Department at St. Luke's Roosevelt Hospital) who confirmed Dr. Wolfe's diagnosis, but to no avail.

32.    Currently, Dr. Simon permanently suffers from sequellae from his massive abscess/cellulites of the left hand, which prevents him from performing "the substantial and material duties of his occupation," thereby rendering Dr. Simon "totally disabled" pursuant to the UNUM Policies.

33.    As a result of his injuries, Dr. Simon suffers a "total disability" as defined in the UNUM Policies.

34.    Dr. Simon is totally disabled from his occupation as an OB/GYN specialist based

7

upon definitions set forth in the UNUM Policies and pursuant to prevailing law.

35.    Dr. Simon has and continues to receive care by a Physician appropriate for the condition causing his disability.

36.    Dr. Simon's inability to ⌐⌐rm the "the substantial and ¹ duties of his occupation" thereby ren⌐ on "totally disabled" is supported t⌐ ignosis of top specialists in the fi⌐ ⌐and Surgery, Doctors Scott Wolfe and Stephen Glickel.

⌐ of the foregoing agree that Dr. Simon's duties and responsibilities as an ⌐ ⌐not be modified to accommodate his disability.

| UNUM HA | ... | ⌐LIGAT | ⌐ THE | I POLICIES |
| --- | --- | --- | --- | --- |

38.    Despite that Dr. Simon suffers a "total disability" pursuant to the terms of UNUM

⌐ad faith and without reason, justification ⌐ ⌐⌐⌐ ⌐ ⌐y payments to Dr. Simon or otherwise honor the terms, cc⌐ ⌐u privileges set forth in the UNUM Policies.

39.    Dr. Simon has ⌐⌐⌐ ⌐ ⌐nable requests for information from UNUM in a timely fashion.

40.    Dr. Simon timely submitted an adminis⌐ ⌐ appeal challenging the decision to withhold his disability benefits.

41.    Dr. Simon's administrative ⌐ ⌐al was denied, thereby exha⌐ 'ministrative remedies.

42.    Dr. Simon has and continues to pay ⌐⌐ ⌐s in order to maintain the UNUM Policies. Furthermore, Dr. Simon has followed all conditions precedent and complied with

all policy requirements for receipt of payment of benefits under the UNUM Policies for being "totally disabled."

43.    UNUM has consistently and fraudulently denied Dr. Simon's disability benefits.

44.    In refusing to pay Dr. Simon's claims, UNUM, in bad faith, has engaged in a practice and pattern of inundating Dr. Simon with unduly burdensome, irrelevant and unreasonable requests for information in a disingenuous effort to find a reason not to pay Dr. Simon's disability claims, to which he is entitled.

45.    At all times herein, Defendants' conduct Dr. Simon has risen to the level of such an egregious nature it is extreme and outrageous conduct.

46.    Defendants intended to cause Plaintiff severe emotional distress.

47.    UNUM intended to defraud Dr. Simon by collecting and continuing to collect premiums with the intention that Dr. Simon believe that he is protected by UNUM's representations.

48.    Dr. Simon relied and continues to rely upon UNUM's material misrepresentations that Dr. Simon is entitled to disability benefits in the event he suffers a total disability.

49.    UNUM never had any intention of properly investigating Dr. Simon's injury.

50.    UNUM never had any intention of providing Dr. Simon with any protection in the event he became totally disabled.

51.    UNUM failed to properly investigate Dr. Simon's injury and, any purported investigation was biased only towards fraudulently finding or inventing a pretense to deny Dr. Simon's claims.

52.      UNUM demonstrated, through the acts, correspondence, telephone calls, internal memos and emails of its employees and their superiors that it had no intention of paying Dr. Simon's claims but continued to carry on conversations and correspondence with Dr. Simon pretending to be doing a purported investigation into Dr. Simon's injury

53.      It was only in or about September 2005, nearly two (2) years following his injury, that UNUM finally had its own doctor examine Dr. Simon's injury, after which there were no further follow-up consultations with any other independent medical examiners.

54.      Furthermore, UNUM failed to perform any ergonomic assessment or functional capacity evaluation to assist it in evaluating Dr. Simon's claim, nor were any second opinions by independent OB/GYNs performed for the purpose of assessing Dr. Simon's total disability.

55.      Unum intentionally, willfully and knowingly engaged in a pattern of harassing, belittling and intimidating Dr. Simon, accusing him of lying about whether he was performing surgery and insisting that he return to the subtantial and material duties of his occupation notwithstanding the obvious fact that, had Dr. Simon succumbed to their insults and insinuations and attempted to comply with their unreasonable and outrageous demands, the risk of harm to his patients would have been obvious, forseeable and self-evident.

56.      Unum willfully and knowingly engaged in a pattern of deception, subterfuge and deceit by corresponding with Dr. Simon on a variety of stationery, representing  a variety of entities, all of whom are captioned Defendants, with the deliberate intent to obfuscate and confuse.

57.      UNUM intended that Dr. Simon rely to his detriment upon its material misrepresentations concerning any purported investigation or determination concerning Dr. Simon's injury and claim for benefits stemming therefrom.

10

58.    Unum pretended to process Dr. Simon's claim through its appeals process but never addressed the issues of whether or not Dr. Simon is able to perform the substantial and material duties of his occupation.

59.    Although Dr. Simon was paying for, and continues to pay high premiums towards his "own occupation" policy that he believed to his detriment would protect him and his family from exactly the kind of harm that befell him on November 23, 2003, UNUM has intentionally engaged in a "bait and switch" and with scienter and intention to willfully and knowingly defraud Dr. Simon, processed Dr. Simon's claim for benefits as if it were a cheaper "any occupation" policy.

60.    During the alleged appeal process UNUM pretended to enter into settlement discussions with Dr. Simon.

61.    In September 2006, three years following the injury, and two years after the elimination period, UNUM ceased the purported appeal of Dr. Simon's claims and "remanded" his claim to the initial claims review department in a further "bad faith" effort to withhold benefits, to which Dr. Simon is entitled.

62.    UNUM then made more irrelevant and unreasonable requests for information about Dr. Simon's injury, his occupation and even his wife's personal information in a disingenuous effort to find a reason not to pay Dr. Simon's claim for benefits.

63.    UNUM continues to fraudulently refuse to properly investigate whether or not Dr. Simon is able to perform the substantial and material duties of his occupation.

64.    UNUM's actions, apart from its obligations under the UNUM Policies, are morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to its civil

obligations.

65.     In addition, apart from the fraud and bad faith actions of UNUM, despite the provision contained in the UNUM Policies providing that benefits will be paid for "a period of total disability," UNUM willfully, wrongfully and uniformly breached and continue to breach the express terms and conditions of the UNUM Policies by refusing to pay benefits accumulated since November 23, 2003.

66.     As a result of Dr. Simon's injury, which has interfered with the substantial and material duties of his occupation, Dr. Simon's patients have departed the practice.

67.     Additionally, as a result of Dr. Simon's injury, which prevents him from performing the substantial and material duties of his occupation, Dr. Simon no longer receives referrals from, among others, general surgeons, internists, urologists, family practioners, nor from patient's family members, friends, colleagues and acquaintances.

68.     Defendant UNUM has made no meaningful attempt or effort to rehabilitate, negotiate or deal in good faith with Dr. Simon.

69.     Defendant UNUM has engaged in a variety of unethical and illegal activities forcing Dr. Simon to file a lawsuit.

70.     Dr. Simon asks this Court to order UNUM to honor the UNUM Policies immediately.

71.     UNUM has breached its contracts with the Dr. Simon by refusing to make payments to him under the terms of his disability policies.

72.     Dr. Simon has incurred significant losses as a consequence of UNUM's failure and refusal to make payments to him under the terms of his disability policies.

12

73.    By reason of the foregoing, Dr. Simon is entitled to recover all of his damages from the Defendants.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

### COUNT ONE
### (Breach of Contract)

74.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

75.    UNUM has breached its contracts with the Dr. Simon by refusing and failing to make payments to him under the terms of his disability policies.

76.    By reason of UNUM's breach of contract, Dr. Simon is entitled to recover all of the proceeds due to him under the policies including past premiums paid under the UNUM Policies, to have future premiums waived, as well as to have the Court and a jury establish what future benefits are due and to have them paid to Plaintiff.

77.    Plaintiff is also entitled to recover all consequential damages suffered as a result of the Defendants' refusal and failure to pay Plaintiff pursuant to the terms of the policies, including his mental anguish, inconvenience, inability to proceed with his lifestyle, loss of business, and any other consequential damages cause by the Defendants' wrongful refusal to pay Plaintiff under the terms of the policies, that are legally permitted to be recovered by law.

78.    By reason of the foregoing, Plaintiff is entitled to recover all of his damages from the Defendants.

### COUNT TWO
### (Breach of Covenant of Good Faith and Fair Dealing)

13

79.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

80.    Implicit in the dealings, agreements and understandings between Dr. Simon and Defendants is a covenant of good faith and fair dealing.

81.    The covenant of good faith and fair dealing requires that Defendants not take any action which will have the effect of destroying Dr. Simon's rights to receive the promised financial benefits due him under the UNUM Policies.

82.    By failing to properly and fairly provide Dr. Simon with the benefits due him under the UNUM Policies, Defendants have breached the implied covenant of good faith and fair dealing.

## COUNT THREE
### (Fraud)

83.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

84.    The Defendants have entered into a scheme to defraud the Plaintiff with respect to the sale of disability insurance.

85.    The Defendants issue disability policies for which they collect substantial premiums, particularly those policies such as the ones sold to the Plaintiff, then, when the insured makes a legitimate claim under the terms of the UNUM Policies, the Defendants refuse to make any payments at all.

86.    The Defendants' conduct described herein amounts to fraud.

87.    By reason of the Defendants' fraudulent conduct, Plaintiff has been damaged as set forth above.

14

88.    By reason of the foregoing, Defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

89.    By reason of the Defendants' fraudulent conduct, Plaintiff is entitled to recover all of his damages from the Defendants, including actual damages, punitive damages, treble damages and attorney's fees.

## COUNT FOUR
### (Consumer Fraud)

90.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

91.    Plaintiff is an individual consumer.

92.    The UNUM Policies are standard form policies that are offered and are available to consumers at large.

93.    The Defendants have entered into a pattern and scheme to defraud the public and the Plaintiff with respect to the sale of disability insurance.

94.    Plaintiff and Defendants occupy disparate bargaining positions.

95.    Unum engaged in deceptive acts and practices by offering and issuing expensive disability policies with "own occupation" total disability provisions, thereby collecting costly premiums from a gullible, unsuspecting public who are talked into believing that such expensive "own occupation" policies offer superior protection in the event of injury or sickness. The, in "bait and switch" fashion, administer those consumer the claims on those policies as cheap "any occupation" policies, while continuing to con the claimant into continuing to pay ongoing high premiums by pretending to evaluate the claim, pretending to enter into settlement discussions,

15

pretending to appeal the claim, pretending to remand the claim, pretending to reevaluate the claim, then pretending to again appeal the claim in an ongoing process to collect costly premiums, as Unum did with Dr. Simon.

96.     The Defendants' conduct violates §349 of the General Business Law of the State of New York and constitutes a fraud upon the Plaintiff and the public.

97.     By reason of the Defendants' fraudulent conduct in violation of §349 of the General Business Law, Plaintiff has been damaged as set forth above.

98.     By reason of the foregoing, Defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

99.     By reason of the Defendants' fraudulent conduct, Plaintiff is entitled to recover all of his damages from the Defendants, including actual damages, punitive damages, treble damages and attorney's fees.

## COUNT FIVE
### (Intentional Infliction of Emotional Distress)

100.     Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

101.     At all times herein, Defendants' conduct Dr. Simon has risen to the level of such an egregious nature it is extreme and outrageous conduct.

102.     Defendants intended to cause Plaintiff severe emotional distress.

103.     Defendants' extreme and outrageous conduct, through word and deed, did indeed cause Dr. Simon severe emotional distress.

104.     Plaintiff has been injured by reason of Defendants intentional extreme and

outrageous conduct.

105.    Plaintiff has suffered damages as a result of the injury caused by Defendant's intentional extreme and outrageous conduct.

106.    By reason of the Defendants' intentional infliction of emotional distress, Plaintiff is entitled to recover all of his damages from the Defendants, including actual damages, punitive damages, treble damages and attorney's fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court order the following relief in favor of Plaintiff by determining that:

I.      Plaintiff is "totally disabled" pursuant to the language and within the meaning of the UNUM Policies in that he cannot perform each of the material duties of his regular occupation;

II.     Defendants must pay all disability benefits in arrears due and owing since the termination of benefits, plus interest, less any applicable "other income benefits", in an amount not less than $20,000,000;

III.    Defendants' obligation to pay disability benefits to Plaintiff shall continue as long as he remains disabled, subject to the terms of and the applicable benefit period contained in the UNUM Policies;

IV.     Plaintiff shall be entitled to recoup his attorney's fees, as well as all other costs and disbursements of this action;

V.      Plaintiff may return to this Court, upon motion, to seek further relief in the event that it becomes necessary;

VI.     An award of prejudgment interest, costs, punitive damages (where applicable) and

        attorneys' fees; and

VII.    Such other and further relief that this Honorable Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on

all questions of fact raised by the complaint.


Dated: New York, New York
       March 24, 2008


                            Respectfully submitted,

                            **SACK & SACK, ESQS.**



By:     Jonathan S. Sack, Esq.  (JS 1835)

        *Attorneys for Plaintiff*
        110 East 59th Street, 19th Floor
        New York, New York 10022
        Tel.: (212) 702-9000
        Fax: (212) 702-9702

Exhibit A

In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Casualty Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy.  Loss must begin while the policy is in force.

This policy is a legal contract between you and us.  It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application.  A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH BIRTHDAY OR FOR FIVE YEARS, WHICHEVER IS LATER:**  You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time.  The premiums shown in the Policy Schedule on Page 3 are guaranteed to your 65th birthday or for five years, whichever is later.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED:**  You can renew this policy as long as you are actively and gainfully working full time; there is no age limit.  You must pay premiums on time at our premium rates then in effect at time of renewals.  (For further conditions, see the page titled "Premiums and Renewals."  See Page 7 for the benefit provisions that will be included in the continued policy.)

## D I S A B I L I T Y   I N C O M E   P O L I C Y

**JEAN P SIMON MD, the Insured**
**Policy Number 36-337-6084608**

**10 day right to examine your policy** – We want you to fully understand and be entirely satisfied with your policy.  If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt.  We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy.  It will be considered never to have been issued.

C-337-F

# GUIDE TO POLICY PROVISIONS

|  | Page |
|---|---|
| Renewal Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| Policy Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| UPDATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| Definitions (Injuries, Sickness, Transplant Surgery, Cosmetic Surgery, | |
|   Policy Anniversary, Physician, Total Disability, your occupation, . . . . . | 4 |
|   period of disability . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| Elimination Period . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| Pre-existing Condition Limitation . . . . . . . . . . . . . . . . . | 5 |
| Benefits | |
|   Total Disability . . . . . . . . . . . . . . . . . . . . . . . . | 6 |
|   Presumptive Total Disability . . . . . . . . . . . . . . . . . . . | 6 |
|   Waiver of Premium . . . . . . . . . . . . . . . . . . . . . . . | 6 |
|   Rehabilitation . . . . . . . . . . . . . . . . . . . . . . . . | 7 |
|   Benefits When Policy Renewed After Your 65th Birthday | |
|     or Five Years, Whichever is Later . . . . . . . . . . . . . . . | 7 |
|   Payment for Part of Month . . . . . . . . . . . . . . . . . . . | 7 |
| Additional Benefits | |
|   Residual Disability/Recovery (includes revised Waiver | |
|     of Premium provision) . . . . . . . . . . . . . . . . . . . | 8 |
|   Guaranteed Physical Insurability/Long Term Disability . . . . . . . . . . . | 12 |
| Premiums and Renewals | |
|   Policy Term . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
|   Grace Period . . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
|   Conditional Right to Renew After Your 65th Birthday or Five Years | |
|     Whichever is Later - Premiums Are Not Guaranteed . . . . . . . . . . . | 14 |
|   Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . | 14 |
|   Suspension During Military Service . . . . . . . . . . . . . . . . . . | 15 |
|   Premium Adjustment at Death . . . . . . . . . . . . . . . . . . | 15 |
| Claims | |
|   Notice of Claim . . . . . . . . . . . . . . . . . . . . . . . | 15 |
|   Claim Forms . . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
|   Proof of Loss . . . . . . . . . . . . . . . . . . . . . . . . | 15 |
|   Time of Payment of Claims . . . . . . . . . . . . . . . . . . . | 16 |
|   Payment of Claims . . . . . . . . . . . . . . . . . . . . . . | 16 |
|   Physical Examinations . . . . . . . . . . . . . . . . . . . . . | 16 |
|   Misstatement of Age . . . . . . . . . . . . . . . . . . . . . | 16 |
|   Legal Actions . . . . . . . . . . . . . . . . . . . . . . . . | 16 |
| General Provisions | |
|   Entire Contract . . . . . . . . . . . . . . . . . . . . . . . | 16 |
|   Time Limit on Certain Defenses . . . . . . . . . . . . . . . . . . | 16 |
|   Conformity With State Statutes . . . . . . . . . . . . . . . . . . | 16 |
|   Assignment . . . . . . . . . . . . . . . . . . . . . . . . . | 16 |

READ YOUR POLICY CAREFULLY

## P O L I C Y   S C H E D U L E

Insured – JEAN P SIMON MD                    Policy Number – 36-337-6084608
Effective Date – January 1, 1993             First Renewal Date – February 1, 1993
Issue Date – January 14, 1993                Renewal Term – One Month

Monthly Policy Premium payable from January 1, 1993 until the first UPDATE Increase
Date (see Page 3 (cont.)):

Non-Smoker Gross Monthly Policy Premium  ...................................  $330.29
Smoker Surcharge  .........................................................   $33.04
Policy Fee  ...............................................................    $4.15
Volume Discount  .........................................................   -$18.68
Franchise Discount  ......................................................   -$51.27

Net Monthly Policy Premium  ..............................................  $297.53

Other Premium Paying Methods  (Net Premiums):
        $3,571.98 Annually
        $1,785.99 Semi-Annually
         $893.00 Quarterly


------------------------MONTHLY BENEFIT FOR TOTAL DISABILITY------------------------

                              $10,000.00

----------------------------------ELIMINATION PERIOD----------------------------------

              365 days of Total and/or Residual Disability

              An Elimination Period starting after your 65th birthday
              must consist entirely of days of Total Disability

--------------------MAXIMUM BENEFIT PERIODS FOR TOTAL DISABILITY--------------------

Injuries:
    Total Disability starting before your 65th birthday  ................   for Life
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday  ...................................   24 months
    Total Disability starting on or after your 75th birthday  ..........   12 months


                    (Policy Schedule is continued on next page.)

**POLICY SCHEDULE (continued)**

**Sickness:**

Total Disability starting before your 60th birthday ................ for Life

Total Disability starting on or after your 60th birthday
   but before your 61st birthday ...................... to your 65th birthday

Total Disability starting on or after your 61st birthday
   but before your 62nd birthday .................................. 48 months

Total Disability starting on or after your 62nd birthday
   but before your 63rd birthday .................................. 42 months

Total Disability starting on or after your 63rd birthday
   but before your 64th birthday .................................. 36 months

Total Disability starting on or after your 64th birthday
   but before your 65th birthday .................................. 30 months

Total Disability starting on or after your 65th birthday
   but before your 75th birthday .................................. 24 months

Total Disability starting on or after your 75th birthday ........... 12 months

------------------------------ADDITIONAL BENEFITS--------------------------------
(The premium for each benefit is included in the Net Policy Premium shown above.)

Residual Disability/Recovery ..............................Page 8        Premium $51.94

**Maximum Benefit Periods For Residual Disability**

**Injuries or Sickness:**

Residual Disability starting before
   your 61st birthday                                    To your 65th birthday

Residual Disability starting on or after your 61st birthday
   but before your 62nd birthday                              48 months

Residual Disability starting on or after your 62nd birthday
   but before your 63rd birthday                              42 months

Residual Disability starting on or after your 63rd birthday
   but before your 64th birthday                              36 months

Residual Disability starting on or after your 64th birthday
   but before your 65th birthday                              30 months

Guaranteed Physical Insurability/Long Term Disability  ...Page 12       Premium $3.05
   Total Maximum Increase is $1,000.00 Monthly Benefit for Total Disability. Premium
   for this option will reduce as stated on Page 12.  The option will continue until
   its expiration date described on Page 12.

(Policy Schedule is continued on next page.)

## POLICY SCHEDULE (continued)

--------------------------------------------UPDATE--------------------------------------------

The benefits and premium named below will be automatically increased without evidence of insurability, as follows:

| UPDATE Increase Date | New Monthly Benefit for Total Disability | New Monthly Net Premium for this Policy |
|---|---|---|
| 1/01/94 | $10,700.00 | $318.54 |
| 1/01/95 | $11,450.00 | $342.12 |
| 1/01/96 | $12,260.00 | $369.38 |
| 1/01/97 | $13,120.00 | $400.22 |
| 1/01/98 | $14,000.00 | $433.71 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown.  If an UPDATE Increase Date shown does not coincide with a renewal date for this policy, the increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate period of disability.  If the premium for the policy is being waived on the effective date of the increase, the premium for the increase will also be waived.  When you resume paying premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not accept an increase, your refusal:

1.  forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2.  postpones the schedule of benefit increases to the next UPDATE Increase Date, if any;
3.  adjusts the premiums for the remaining increases, if any, since such premiums are based on your attained age at the time of an UPDATE Benefit increase; and
4.  in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit increases to which you were entitled by one.

If you have not reached your 60th birthday on the last UPDATE Increase Date, you may apply for an amendment providing additional UPDATE Benefit increases.  You can do this by making formal application within the period of 60 days prior to and 31 days after the last UPDATE Increase Date.  Approval will be subject to our underwriting guidelines then in effect.

## DEFINITIONS

**Injuries** means accidental bodily injuries occurring while your policy is in force.

**Sickness** means sickness or disease which is first manifested while your policy is in force. It includes disability from transplant surgery or cosmetic surgery.

**transplant surgery** means the transplant of part of your body to another person.

**cosmetic surgery** means surgery to improve your appearance or to correct disfigurement.

**Policy Anniversary** means the renewal date falling on an anniversary of the Effective Date of the policy; except that when the Policy Anniversary does not coincide with a renewal date, it means the next renewal date thereafter.

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**period of disability** means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or

2. starts more than twelve months after the end of the previous period (six months after the end of the previous period if benefits are expressed as a number of months - see Maximum Benefit Periods on Page 3);

in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Period will apply.

Elimination Period means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown on Page 3. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

If the Elimination Period is fulfilled during a period of disability, the first subsequent disability due to a different or unrelated cause will not require an Elimination Period, provided the first subsequent disability occurs within the twelve month period from the end of the prior disability, during, which the Elimination Period was satisfied.

EXCLUSIONS

We will not pay benefits for loss caused by:

1. war or any act of war, whether war is declared or not; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:
   a. complications of pregnancy; and
   b. normal pregnancy or childbirth on the later of the 91st day of disability or the day of disability following the Elimination Period.

Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. Examples of conditions that are not complications include false labor and morning sickness.

We will not pay benefits for loss we have excluded by name or specific description; any such exclusion will appear in the Policy Schedule.

PRE-EXISTING CONDITION LIMITATION

We will not pay benefits for loss which is caused by a Pre-existing Condition. Pre-existing Condition means a physical impairment, deformity or a medical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy. A medical condition means a sickness or physical condition which, within the two year period prior to the Effective Date of this policy, either: 1) resulted in your receiving medical advice or treatment; or 2) caused symptoms for which an ordinarily prudent person would seek medical advice or treatment.

## BENEFITS

**TOTAL DISABILITY**
We will pay the Monthly Benefit for Total Disability shown on Page 3 as follows:

1. Benefits start on the day of Total Disability following the Elimination Period.
2. Benefits will continue while you are totally disabled during the period of disability but not beyond the Maximum Benefit Period.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

**PRESUMPTIVE TOTAL DISABILITY – LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS**
You will be presumed totally disabled if Injuries or Sickness results in the entire and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss.  Your ability to work will not matter.  Further medical care will not be required. Benefits will be paid according to the Total Disability provisions of this policy.  But, benefits will start on the date of loss if earlier than the day benefits start as shown on Page 3.  If loss occurs before your 65th birthday, the Monthly Benefit for Total Disability will be paid as long as you live regardless of the Maximum Benefit Period shown on Page 3.

**WAIVER OF PREMIUM**
After you have been totally disabled for 90 days during a period of disability, we will:

1. refund any premiums which became due and were paid while you were totally disabled; and
2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.  After it ends, to keep this policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

REHABILITATION

Total Disability - Your participation in a program of occupational rehabilitation will not of itself be considered a recovery from Total Disability.

Expense - If, during a period of Total Disability, you notify us in writing that you want to participate in a program of occupational rehabilitation, we will consider paying for certain expenses you incur. The extent of our role will be determined by written agreement with you. Generally, we will pay for the reasonable cost of training and education which is not otherwise covered under health care insurance, workers' compensation or any public fund or program except Medicaid.

A program of occupational rehabilitation must be designed to help you return to work and be:

1. a formal program of rehabilitation at an accredited graduate school, college or business school, or at a licensed vocational school;
2. a recognized program operated by the federal or a state government; or
3. any other professionally planned rehabilitation program of training or education.

BENEFITS WHEN POLICY RENEWED AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER

If this policy is continued in accordance with the "Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever is Later" on Page 1, all of the benefit provisions on Pages 6 and 7 will be included in the continued policy. (If a Treatment of Injuries Benefit and/or a Preliminary Term Benefit is contained in this policy, it can be included in the continued policy. No other "Additional Benefits", if any, named on Page 3 will be included in the continued policy.) The Maximum Benefit Period starting while this policy is so continued is shown on Page 3. The Monthly Benefit for Total Disability will not change unless you choose to renew with a lesser amount.

PAYMENT FOR PART OF MONTH

If any payment under this policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

RESIDUAL DISABILITY/RECOVERY BENEFITS with Cost of Living Indexing of Prior Monthly
Income
(Nothing in this provision limits the policy definition of "Total Disability.")

## DEFINITIONS

Monthly Income means your monthly income from salary, wages, bonuses, commissions,
fees or other payments for services which you render. Normal and usual business ex-
penses are to be deducted; income taxes are not. Monthly Income must be earned. It
does not include dividends, interest, rents, royalties, annuities, sick pay or bene-
fits received for disability under a formal wage or salary continuation plan or other
forms of unearned income.

Monthly Income can be credited to the period in which it is actually received or to
the period in which it is earned. We allow either the cash or accrual accounting
method. But, the same method must be used to determine the Prior Monthly Income and
the Current Monthly Income during a period of disability. If you elect the cash ac-
counting method we will not include income received for services rendered prior to
the start of the period of disability in your current monthly income.

Prior Monthly Income means the greatest of:

1.  your average Monthly Income for the 12 months just prior to the start of the
    period of disability for which claim is made;
2.  your average Monthly Income for the year with the highest earnings of the last
    two years prior to the start of such period of disability; or
3.  your highest average Monthly Income for any two successive years of the last
    five years prior to the start of such period of disability.

Current Monthly Income means your Monthly Income in your occupation for each month
of Residual Disability being claimed.

Loss of Monthly Income means the difference between Prior Monthly Income and Current
Monthly Income. Loss of Monthly Income must be caused by the Residual Disability for
which claim is made.  The amount of the loss must be at least 20% of Prior Monthly
Income to be deemed Loss of Monthly Income. If your loss is more than 75% of Prior
Monthly Income, we will deem the loss to be 100%.

Residual Disability or residually disabled, during the Elimination Period, means that
due to Injuries or Sickness:

1.  you are not able to do one or more of your substantial and material daily
    business duties or you are not able to do your usual daily business duties for
    as much time as it would normally take you to do them;
2.  you have a Loss of Monthly Income in your occupation of at least 20%; and
3.  you are receiving care by a Physician which is appropriate for the condition
    causing disability.  We will waive this requirement when continued care would
    be of no benefit to you.

After the Elimination Period has been satisfied, you are no longer required to have
a loss of duties or time. Residual Disability or residually disabled then means that
as a result of the same Injuries or Sickness:

1. you have a Loss of Monthly Income in your occupation of at least 20%; and
2. you are receiving care by a Physician which is appropriate for the condition causing the Loss of Monthly Income. We will waive this requirement when continued care would be of no benefit to you.

Monthly Benefit for Total Disability is shown on Page 3. (It can be increased by certain other benefit provisions if they are included in your policy and are applicable. If included, they are titled "Cost of Living Adjustments" and "Social Insurance Substitute Benefit.")

Residual Disability Monthly Benefit is the benefit payable under this provision. It is determined monthly by this formula. Each month, it equals:

$$\frac{\text{Loss of Monthly Income}}{\text{Prior Monthly Income}} \times \text{Monthly Benefit for Total Disability}$$

### RESIDUAL DISABILITY/RECOVERY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

1. Benefits start on the day of Residual Disability following the Elimination Period or, if later, after the end of compensable Total Disability during the same period of disability.
2. Benefits will continue while you are residually disabled during a period of disability but the combined period for which benefits for Total and Residual Disability are payable can not exceed the Maximum Benefit Period shown on Page 3.
3. The first six monthly payments for Residual Disability will be the greater of:
   a. 50% of the Monthly Benefit for Total Disability; or
   b. the Residual Disability Monthly Benefit determined for each month.

Residual Disability benefits will not be paid for any days for which Total Disability benefits are paid.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Monthly Income and Prior Monthly Income. Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

### COST OF LIVING INDEXING OF PRIOR MONTHLY INCOME
(Applicable to benefits paid after the 12th month of a period of disability)

#### Definitions

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may, subject to the approval of the Superintendent of the New York Insurance Department, use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Index Factor is used by us to determine your adjusted Prior Monthly Income for each Review Period. We will compute this factor by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

#### Adjusted Prior Monthly Income

If Injuries or Sickness results in a period of disability that lasts at least 12 months, we will compute Cost of Living Adjustments on each Review Date for Residual Disability Benefits. Monthly benefits which thereafter accrue during that period of disability will be adjusted by indexing your Prior Monthly Income as follows:

1. On each Review Date, your Prior Monthly Income will be multiplied by your Index Factor. The result is your adjusted Prior Monthly Income. It will be used to figure your Loss of Monthly Income during the Review Period that follows. It will also be used in the formula to compute each Residual Disability Monthly Benefit payable during that Review Period.

   An increase in your Prior Monthly Income can cause your Loss of Monthly Income to be greater. This in turn can result in an increase in your Residual Disability Monthly Benefit. Other than your Index Factor (which is computed by using actual CPI-U values), there is no limit on the percent of increase in your Prior Monthly Income for a Review Period. If the CPI-U should go down, your adjusted Prior Monthly Income can decrease. But, it can never reduce below your Prior Monthly Income at the start of the period of disability.

2. Indexing of your Prior Monthly Income will end on the earliest of:

   a. the end of the period of disability (see Page 4);
   b. the end of a benefit period; or
   c. your 65th birthday.

If the computations end because of a or b above, disability benefits which can be paid for the first 12 months of a new period of disability will not include a Cost of Living Adjustment. A new first Index Month and Review Date will apply to each new period of disability that lasts more than 12 months.

## WAIVER OF PREMIUM

For periods of disability which start before your 65th birthday, the Waiver of Premium provision on Page 6 is replaced by the following:

### "WAIVER OF PREMIUM — TOTAL DISABILITY AND RESIDUAL DISABILITY

If, during a period of disability, Injuries or Sickness results in more than 90 days of Total and/or Residual Disability, we will:

   1. refund any premiums which became due and were paid while you were so disabled; and
   2. waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability."

NOTE:  All portions of this Residual Disability/Recovery Benefit expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date and benefits may continue to be payable past your 65th birthday, as shown on Page 3.

GUARANTEED PHYSICAL INSURABILITY/LONG TERM DISABILITY OPTION

## DEFINITIONS

**Option Date** means each anniversary of the Effective Date of the policy starting with the first and ending with the one which falls on or next follows your 55th birthday. If an Option Date does not coincide with a renewal date for this policy, it will change to coincide with the next renewal date thereafter.

**Option Period** means the period which begins 60 days before and ends 31 days after an Option Date.

**Special Option Date** means (a) the date you terminate your employment relationship with an employer which has a group long term disability insurance plan in force under which you are covered at the time of termination; or (b) the date the group long term disability insurance plan terminates. This Option may be exercised only once under the Special Option Date.

**Special Option Period** means the period which begins on the Special Option Date and ends 91 days thereafter.

## BENEFIT

On each Option Date, or once on the Special Option Date, you have the right to increase the Monthly Benefit for Total Disability shown on Page 3. You may do so, without submitting evidence of physical insurability, by following the rules set forth below.

Increases will be made only upon formal application by you and must be approved by us. You must apply within an Option Period or within the Special Option Period. The Effective Date of an increase will be shown on the Increased Benefit Amendment issued at the time of the increase.

The amount of an increase will be subject to each of the following:

1. An increase, when combined with all other loss of time benefits then in force with us and other insurers, may not exceed the amount we would issue to you as a new applicant. This amount will be subject to our published issue and participation limits on the day you apply for an increase or on the Effective Date of the policy, whichever results in a higher amount.
2. After your 46th birthday, an increase can not exceed one-third of the Maximum Increase shown on Page 3 (rounded up to the next $10.00).
3. The sum of all increases can not exceed the Maximum Increase shown on Page 3.

If you do not qualify for an increase on an Option Date, you can still apply for an increase during a later Option Period or during the Special Option Period.

The first premium for an increase must be paid within 31 days; later premiums must be paid as part of the Policy Premium. If the premium for the policy is being waived (see Waiver of Premium provision) on the effective date of the increase, you will not have to start paying the premium for the increase until the premium for your policy becomes payable again.

337-GPI/LTD          JEAN P SIMON MD 36-337-6084608          Page 12

The premium for each increase will be based on your attained age on the date of your application for each increase.  It will also be based on:

1.  our premium rates in effect at the time of the increase or on the Effective Date of the policy, whichever is less; and
2.  your occupational class at the time of the increase or on the Effective Date of the policy, whichever will produce the lower premium.

When an increase is exercised, the premium for this Option will be reduced.  The reduced premium will be based on the Maximum Increase remaining.

**Increase During Disability:**  During any Option Period, you can apply for an increase even though you are disabled.  (This provision is not available during the Special Option Period).  Your annual rate of earned income will be considered that which you had when the period of disability began.  An increase of up to 10% of the original Maximum Increase shown on Page 3 (rounded up to the next $10.00) approved by us during a period of disability will apply to the benefits payable while that period of disability continues.  This increased Monthly Benefit for Total Disability, plus any excess of 10% approved during the same period of disability will apply to new, separate periods of disability (see Page 4).

**Note:**  This Option will expire, and no further premiums for it will be due, on the earlier of:  (a) the date when the Maximum Increase has been exercised; or (b) the end of the Option Period for the 55th birthday Option Date.

## PREMIUMS AND RENEWALS

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3. It ends on the First Renewal Date also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the day the preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the policy will stay in force.

If this policy is continued after your 65th birthday, the Grace Period provision is changed to read as follows:

> **"GRACE PERIOD**
> This policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. The grace period will not apply if, at least 30 days before the premium due date, we have delivered or mailed to your last address shown in our records written notice of our intent not to renew this policy. During the grace period, the policy will stay in force. We may refuse renewal of the policy only on a Policy Anniversary and only when you become ineligible to continue it because you cease to be actively and gainfully employed full time."

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You can renew this policy as long as you are actively and gainfully working full time. From time to time, we can require proof that you are actively and gainfully working full time. If you stop working, (except by reason of Total Disability), this policy will terminate on the next Policy Anniversary; except that coverage will continue to the end of any period for which premium has been accepted. All losses must occur while your policy is in force; except if your policy terminates for any reason, loss from Injuries may begin within 30 days from the date of the accident.

Premiums must be paid on time. They will be based on our table of rates by attained age in effect at time of renewals for persons in your same rate class who are insured under policies of this form. Other than your attained age, the factors used to determine your rate class will be the same as those that applied to you on the Effective Date of this policy.

The benefit provisions which will be included in the continued policy are described on Page 7.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the policy will be reinstated as of the approval date. Lacking such approval, the policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, your rights and ours will remain the same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE

If you enter full-time active duty in the military (land, sea or air) service of any nation or international authority, you may suspend your policy. But, you may not suspend the policy during active duty for training lasting 3 months or less. The policy will not be in force while it is suspended, and you will not be required to pay premiums. Upon receipt of your written request to suspend the policy, we will refund the pro-rata portion of any premium paid for a period beyond the date we receive your request.

If your full-time active duty in military service ends before your 65th birthday, you may place this policy back in force without evidence of insurability. Your coverage will start again when:

1. we have received your written request to place the policy back in force; and
2. you have paid the required pro-rata premium for coverage until the next premium due date.

However, your request and premium payment must be received by us within 90 days after the date your active duty in the military service ends. Premiums will be at the same rate that they would have been had your policy remained in force. You and we will have the same rights under the policy as before it was suspended.

## PREMIUM ADJUSTMENT AT DEATH

Any premium paid for a period beyond the date of your death will be refunded to your estate.

**CLAIMS**

## NOTICE OF CLAIM

Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our home office, Chattanooga, Tennessee, or to our agent. Notice should include your name and the policy number.

## CLAIM FORMS

When we receive your notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of your loss. You must give us this proof within the time set forth in the Proof of Loss section.

## PROOF OF LOSS

If the policy provides for periodic payment for a continuing loss, you must give us written proof of loss within 90 days after the end of each period for which we are liable. For any other loss, written proof must be given within 90 days after such loss.

If it was not reasonably possible for you to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so.

337-F-C                    JEAN P SIMON MD 36-337-6084608                    Page 15

## TIME OF PAYMENT OF CLAIMS
After we receive written proof of loss, we will pay monthly all benefits then due you for disability.  Benefits for any other loss covered by this policy will be paid as soon as we receive proper written proof.

## PAYMENT OF CLAIMS
Benefits will be paid to you.  Any benefits unpaid at death will be paid to your estate.

If benefits are payable to your estate, we can pay benefits up to $1000 to someone related to you by blood or marriage whom we consider to be entitled to the benefits. We will be discharged to the extent of any such payment made in good faith.

## PHYSICAL EXAMINATIONS
We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending.

## MISSTATEMENT OF AGE
If your age has been misstated, the benefits will be those the premium paid would have bought at the correct age.

## LEGAL ACTIONS
You may not start a legal action to recover on this policy within 60 days after you give us required proof of loss.  You may not start such action after three years from the time proof of loss is required.

### GENERAL PROVISIONS

## ENTIRE CONTRACT
This policy with the application and attached papers is the entire contract between you and us.  No change in this policy will be effective until approved by one of our officers.  This approval must be noted on or attached to this policy.  No agent may change this policy or waive any of its provisions.

## TIME LIMIT ON CERTAIN DEFENSES

1. After two years from the Effective Date of this policy, no misstatements, except fraudulent misstatements, made by you in the application for this policy will be used to void the policy or to deny a claim for loss incurred or disability that starts after the end of such two year period.

2. No claim for loss incurred or disability that starts after two years from the Effective Date of this policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the Effective Date of this policy.

## CONFORMITY WITH STATE STATUTES
Any provision of this policy which, on its effective date, is in conflict with the laws of the state in which you reside on that date is changed to conform to the minimum requirements of those laws.

## ASSIGNMENT
No assignment of interest in this policy will be binding on us until a copy is on file with us. It must be approved by one of our officers. We are not responsible for the validity of any assignment.

**PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY** PART II — ANSWERS MADE TO EXAMINER

IN CONTINUATION OF AND FORMING PART OF APPLICATION FOR INSURANCE TO

PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, Chattanooga, Tennessee 37402

Full Name of Person Examined (Last) _Simon_ (First) _JANE JEAN_ (Middle) _PASCAL_   Date of Birth _6/1/54_   Occupation _PHYSICIAN_

1. a. Name and address of your personal physician (If none, ☐ Check) _LARRY EISEBERG, M.D._
   _1049 5th AVE N.Y. N.Y._

   b. Date and reason last consulted? _Routine Physical  92_

   c. What treatment was given or medication prescribed?

2. Have you ever been treated for or ever had any known indication of:

| | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? | ☐ | ☒ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☒ |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☒ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☒ |
| e. Jaundice, intestinal bleeding, ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☒ |
| f. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate or reproductive organs? | ☐ | ☒ |
| g. Diabetes; thyroid or other endocrine disorders? | ☐ | ☒ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | ☐ | ☒ |
| i. Deformity, lameness or amputation? | ☐ | ☒ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☒ |
| k. Allergies; anemia, hemophilia or leukemia? | ☐ | ☒ |

3. Are you now under observation or taking treatment? ☐ ☒
4. Have you had any change in weight in the past year? ☐ ☒
5. Other than above, have you within the past 5 years:
   a. Had any mental or physical disorder not listed above? ☐ ☒
   b. Had a checkup, consultation, illness, injury, surgery? ☐ ☒
   c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? ☐ ☒
   d. Had electrocardiogram, X-ray, other diagnostic test? ☐ ☒
   e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? ☐ ☒
6. Have you ever used barbiturates, narcotics, excitants or hallucinogens or ever sought treatment or been arrested for their use? ☐ ☒
7. Have you ever sought help or treatment for alcohol use? ☐ ☒
8. a. Have you ever had any disorder of menstruation, pregnancy or of the reproductive organs or breasts? _N/A_ ☐ ☐
   b. To the best of your knowledge and belief, are you now pregnant? _N/A_ ☐ ☐
9. Have you ever had military service deferment, rejection or discharge because of a physical or mental condition? ☐ ☒
10. Have you ever requested or received a pension, benefits, or payment because of an injury, sickness or disability? ☐ ☒
11. Family History: (Father, Mother, Brothers, Sisters) Tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide? ☐ ☒

DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS: Include diagnoses, dates, duration and names and addresses of all attending physicians and medical facilities.)

(For additional comments, use back side)

| a. | Age if Living? | Age at Death? | Cause of Death? | b. | Number Living? | Dead? | Age if Living? | Age at Death? | Cause of Death? |
|---|---|---|---|---|---|---|---|---|---|
| Father | 68 | | | Brothers | 1 | | 30 | | |
| Mother | 63 | | | Sisters | 1 | | 45 | | |

The foregoing statements are full, complete, and true to the best of my knowledge and belief.   Dated at _1049 5th AVE N.Y._

PARAMEDICAL ORGANIZATION (Please stamp or type below)
HEALTHMASTERS INC.
450 - 7th AVENUE
NEW YORK, N. Y. 10001

this _23_ day of _December_ 19 _92_

(X) X _Jane Simon_

Signature of person examined

Witness (X) _____

Signature of Examiner   M Degree

608 46C8

№ 157325

I hereby apply to Provident Life a̶ ̶  ̶usualty Insurance Company for insurance  ̶ ̶ed on the following representations:

1. (a) Full name? (Print) Jean Pascal Simon   (b) Sex? M ☑ F ☐
   (c) Height? ft. 6 in. 0 (d) Weight? lbs 165 (e) Date of Birth? 6/1/1954 (f) Birthplace? Paris

2. (a) Occupation: Surgeon
   (c) Employer *Lenox Hill Anesthesiology Dept* (b) Exact duties: Surgery
   (d) Are you actively at work fulltime in the above occupation? Yes ☑ No ☐ (e) Length of Employment: 10 yrs

3. (a) Annual Earned Income From Your Occupation for Fed-
   eral Tax Purposes (After Business Expenses, if any):

   | | Current Annual Rate of Earned Income | Actual Prior Calendar Year | Actual Year Prior to Last Calendar Year |
   | --- | --- | --- | --- |
   | Salary | $ 700,000 | $ 630,000 | $ 150,000 |
   | Other (Describe) | $ 30,000 | $ 30,000 | $ 30,000 |
   | (b) Unearned Income Prior 2 Years (Interest, Dividends, etc.) | | $ 5,000 | $ 2,000 |

4. (a) Do you have or are you applying for other  (1) Individual, (2) Association, (3) Group; or (4) Employer Sick Pay disability income coverage; or (5) Overhead Expense disability coverage? Yes ☐ No ☑ (If "Yes" give details below)

   | Company or Source | Type (1, 2, 3, 4 or 5) | Monthly Disability Amount | Benefit Period Accident | Sickness |
   | --- | --- | --- | --- | --- |
   | | | | | |
   | | | | | |
   | | | | | |

   (b) Do you have Social Security substitute coverage?  Yes ☐ No ☑ Amount $ _____ Company _____
   (c) Is any coverage to be replaced by this insurance? Yes ☐ No ☑ If "Yes", complete Form C-1336-Q4.
   (d) Does your net worth exceed $4,000,000? Yes ☐ No ☑ If "Yes" complete Form C-1336-NW.
   (e) Have you smoked cigarettes within the last 12 months? Yes ☑ No ☐

5. Have you ever been treated for or ever had any known indication of:

   |  | Yes | No |
   | --- | --- | --- |
   | (a) High blood pressure, diabetes, cancer, arthritis, asthma, emphysema, or emotional, nervous or mental disorder, or disease or disorder of the eyes, ears or speech? | ☐ | ☑ |
   | (b) Disease or disorder of the neck, back, spine, heart, lungs, breasts, or the circulatory, digestive, urinary or reproductive systems? | ☐ | ☑ |
   | 6. Have you ever been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS) or Aids Related Complex (ARC)? | ☐ | ☑ |
   | 7. Have you ever used barbiturates, narcotics, excitants or hallucinogens, or ever sought help or treatment for their use or alcohol use? | ☐ | ☑ |
   | 8. Other than above, have you, within the past 5 years, had medical or surgical advice or treatment, had a physical examination, or been under observation for any disease or disorder? | ☐ | ☑ |
   | 9. Have you ever made application for Disability, Health or Life Insurance which has been declined, modified or rated? (If "Yes", give names of organization, kinds of insurance, dates and reasons.) | ☐ | ☑ |
   | 10. Do you have a physical impairment or deformity, or take any type of prescribed medication? | ☐ | ☑ |

   (Give details of "Yes" answers to Q5-10. Include diagnoses, dates, physicians and addresses)

   Check-up - Dr. Eisenberg - excellent health - July 1992 -2086th St New York, NY

11. (a) Will your employer pay for all disability coverage to be carried by you with no portion of the premium to be included in your taxable income? Yes ☐ No ☑ (b) How much premium is paid with this application? ____10,_____

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II, if any, of this Application are true, complete, and correctly stated. They are offered to Provident Life and Casualty Insurance Company as the basis for any insurance issued on this Application. I have received a disclosure concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Provident Life and Casualty Insurance Company and/or its reinsurers any such information.

I authorize all said sources, except the Medical Information Bureau, to give such records or knowledge to Equifax, Inc. This agency is employed by Provident Life and Casualty Insurance Company to collect and send such information.

A copy of this authorization shall be as valid as the original.

Signed at NY NY
City / State
this 16 day of Nov 19 92
Field Office 715- NYBO

Signature of Proposed Insured X _____

I certify that I have truly and accurately recorded on this application the information supplied by the Proposed Insured.

DUPLICATE

Form C-1336     13-3591317

# PROVIDENT LIFE AND CASUALTY
### INSURANCE COMPANY

1 FOUNTAIN SQUARE
CHATTANOOGA, TN 37402

(A STOCK COMPANY)

DIRECT LINE
(212) 735-8028

FAX
(212) 735-5808

KATHERINE SAYER

Corpc

ALL PROVISIONS ON THE
ATTACHED PAGES ARE A
PART OF YOUR POLICY

nt and
xecutive Officer

P.C. MANAGEMENT COMPANY

605 THIRD AVENUE, 14TH FLOOR
NEW YORK, NEW YORK 10158

"our" and "us" mean Provident Life and Casualty Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application. A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH BIRTHDAY OR FOR FIVE YEARS, WHICHEVER IS LATER:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time. The premiums shown in the Policy Schedule on Page 3 are guaranteed to your 65th birthday or for five years, whichever is later.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED:** You can renew this policy as long as you are: 1) actively and gainfully working full time in operating your business or profession; and 2) still incurring Covered Overhead Expenses as defined on Page 5. There is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals." See Page 7 for the benefit provisions that will be included in the continued policy.)

### O V E R H E A D   E X P E N S E   D I S A B I L I T Y   P O L I C Y

#### JEAN P SIMON MD, the Insured
#### Policy Number 36-1737-6122493

#### SEE ADDITIONAL EXCLUSION(S) ON PAGE 3-A

**10 day right to examine your policy** -- We want you to fully understand and be entirely satisfied with your policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy. It will be considered never to have been issued.

C-1737 F



In this policy, the words "you" and "your" mean you, the Insured named below; "we," "our" and "us" mean Provident Life and Casualty Insurance Company.

We will pay benefits for covered loss resulting from Injuries or Sickness subject to all of the provisions of this policy. Loss must begin while the policy is in force.

This policy is a legal contract between you and us.  It is issued in consideration of the payment in advance of the required premium and of your statements and representations in the application.  A copy of your application is attached and made a part of the policy.

**NON-CANCELLABLE AND GUARANTEED CONTINUABLE AT GUARANTEED PREMIUMS TO YOUR 65TH BIRTHDAY OR FOR FIVE YEARS, WHICHEVER IS LATER:** You can continue this policy to your 65th birthday or for five years, whichever is later, by paying premiums on time.  The premiums shown in the Policy Schedule on Page 3 are guaranteed to your 65th birthday or for five years, whichever is later.

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER; PREMIUMS ARE NOT GUARANTEED:**  You can renew this policy as long as you are: 1) actively and gainfully working full time in operating your business or profession; and 2) still incurring Covered Overhead Expenses as defined on Page 5.   There is no age limit. You must pay premiums on time at our premium rates then in effect at time of renewals. (For further conditions, see the page titled "Premiums and Renewals."  See Page 7 for the benefit provisions that will be included in the continued policy.)

### O V E R H E A D    E X P E N S E    D I S A B I L I T Y    P O L I C Y

JEAN P SIMON MD, the Insured
Policy Number 36-1737-6122493

SEE ADDITIONAL EXCLUSION(S) ON PAGE 3-A

10 day right to examine your policy — We want you to fully understand and be entirely satisfied with your policy.  If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt. We will refund any premiums you have paid within 10 days after we receive your notice of cancellation and the policy.  It will be considered never to have been issued.

C-1737-F

                                                                           Page
Renewal Conditions  . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
Policy Schedule  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3
UPDATE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3
Definitions (Injuries, Sickness, Transplant Surgery,
    Cosmetic Surgery, Policy Anniversary, Physician, Total Disability,  . . . . . .    4
    your occupation, period of disability, Elimination period)  . . . . . . . . .    4
    Covered Overhead Expenses  . . . . . . . . . . . . . . . . . . . . . .    5
Exclusions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6
Pre-existing Condition Limitation  . . . . . . . . . . . . . . . . . . . .    6
Benefits
    Total Disability  . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6
    Accumulating Benefit  . . . . . . . . . . . . . . . . . . . . . . . . .    7
    Presumptive Total Disability  . . . . . . . . . . . . . . . . . . . . .    7
    Waiver of Premium  . . . . . . . . . . . . . . . . . . . . . . . . . .    7
    Payment for Part of Month  . . . . . . . . . . . . . . . . . . . . . . .    7
    Benefits When Policy Renewed After Your 65th Birthday
        or Five Years, Whichever Is Later  . . . . . . . . . . . . . . . . .    7
Conversion Privilege  . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
Additional Benefits
    Residual Disability (Includes revised Waiver of Premium provision)  . . . . .    9
    Business Value Protector  . . . . . . . . . . . . . . . . . . . . . . .   13
    Guaranteed Physical Insurability  . . . . . . . . . . . . . . . . . . .   14
Premiums and Renewals
    Policy Term  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16
    Grace Period  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16
    Conditional Right to Renew after Your 65th Birthday or Five Years,
        Whichever Is Later - Premiums Are not Guaranteed  . . . . . . . . . . .   16
    Reinstatement  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16
    Suspension During Military Service  . . . . . . . . . . . . . . . . . .   17
    Your Right to Cancel Policy Pro-rata  . . . . . . . . . . . . . . . . .   17
    Premium Adjustment at Death  . . . . . . . . . . . . . . . . . . . . .   17
Claims
    Notice of Claim  . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
    Claim Forms  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17
    Proof of Loss  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
    Time of Payment of Claims  . . . . . . . . . . . . . . . . . . . . . .   18
    Payment of Claims  . . . . . . . . . . . . . . . . . . . . . . . . . .   18
    Physical Examinations  . . . . . . . . . . . . . . . . . . . . . . . .   18
    Misstatement of Age  . . . . . . . . . . . . . . . . . . . . . . . . .   18
    Legal Actions  . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
General Provisions
    Entire Contract  . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
    Time Limit on Certain Defenses  . . . . . . . . . . . . . . . . . . . .   18
    Conformity With State Laws  . . . . . . . . . . . . . . . . . . . . . .   18

READ YOUR POLICY CAREFULLY



Insured - JEAN P SIMON MD                Policy Number - 36-BOE-6122493
Effective Date - August 1, 1995          First Renewal Date - August 1, 1996
Issue Date - August 3, 1995              Renewal Term - Twelve Months

Annual Normal Policy Premium payable from August 1, 1995 until the first UPDATE In-
crease Date (see Page 3 (cont.)) is $2,444.48 on a non smoking premium basis..

Annual Franchise Policy Premium payable from August 1, 1995 until the first UPDATE
Increase Date (see Page 3 (cont.)) is $2,077.80 on a non smoking premium basis..

In consideration of the franchise agreement between your Employer and us, we agree
to accept the Franchise Policy Premiums for this policy.

-----------------------------MONTHLY BENEFIT-------------------------------

$10,000.00

-----------------------------ELIMINATION PERIOD----------------------------

30 days of Total and/or Residual Disability

An Elimination Period starting after your 65th birthday
must consist entirely of days of Total Disability

-----------------------------MAXIMUM BENEFIT LIMIT-------------------------

$120,000.00

The Maximum Benefit Limit will be reduced by one-half for a
period of disability that starts at or after your 75th birthday

-----------------------------ADDITIONAL BENEFITS--------------------------
(The premium shown for an Option is included in the Policy Premium)

Residual Disability  ....................................Page 9      Premium $204.00

Business Value Protector  ...............................Page 13     Premium $528.00
     BVP Monthly Benefit.................................................$7,500.00
     BVP Maximum Benefit Period.............................................12 Months
     BVP Elimination Period..............................30 Days of Total Disability

Guaranteed Physical Insurability  .......................Page 14     Premium $18.48
     Maximum Increase.......................$1,000.00 for the Monthly Benefit
                                           $12,000.00 for the Maximum Benefit Limit

(Policy Schedule is continued on next page.)



---------------------------------------**UPDATE**---------------------------------------

The benefits and premium named below will be automatically increased without evidence of insurability, as follows:

| UPDATE Increase Date | New Monthly Benefit | New Maximum Benefit Limit | New Annual Normal Premium for this Policy | New Annual Franchise Premium for this Policy |
|---|---|---|---|---|
| 8/01/96 | $10,700.00 | $128,400.00 | $2,588.12 | $2,199.90 |
| 8/01/97 | $11,450.00 | $137,400.00 | $2,749.52 | $2,337.09 |
| 8/01/98 | $12,260.00 | $147,120.00 | $2,932.08 | $2,492.26 |
| 8/01/99 | $13,120.00 | $157,440.00 | $3,134.68 | $2,664.47 |
| 8/01/00 | $14,040.00 | $168,480.00 | $3,362.74 | $2,858.32 |

UPDATE Benefit increases are effective on the UPDATE Increase Dates shown. If an UPDATE Increase Date shown does not coincide with a renewal date for this policy, the increase will be effective on the next renewal date.

An UPDATE Benefit increase will apply only to a period of disability which starts after the effective date of the increase. It must qualify as a separate period of disability. If the premium for the policy is being waived on the effective date of the increase, the premium for the increase will also be waived. When you resume paying premiums for the policy, you must also start paying the premium for the increase.

You are entitled to UPDATE Benefit increases on the dates shown above. If you do not accept an increase, your refusal:

1. forfeits your right on that UPDATE Increase Date to the UPDATE Benefit increase;
2. postpones the schedule of benefit increases to the next UPDATE Increase Date, if any;
3. adjusts the premiums for the remaining increases, if any, since such premiums are based on your attained age at the time of an UPDATE Benefit increase; and
4. in no way extends the last UPDATE Increase Date shown above.

Each refusal of an UPDATE Benefit increase reduces the number of UPDATE Benefit increases to which you were entitled by one.

If you are under age 59 on the last UPDATE Increase Date, you may apply for an amendment providing additional UPDATE Benefit increases. You can do this by making formal application within the period of 60 days prior to and 31 days after the last UPDATE Increase Date. Approval will be subject to our underwriting guidelines then in effect.

(Policy Schedule is continued on next page.)



ADDITIONAL EXCLUSION(S)

In addition to the exclusions contained herein, this policy does not cover loss caused by:

ANY INJURY TO OR DISEASE OF THE RIGHT SHOULDER.



**Injuries** means accidental bodily injuries occurring

**Sickness** means sickness or disease which is first manifested while your policy is in force. It includes disability from transplant surgery or cosmetic surgery.

**transplant surgery** means the transplant of part of your body to another person.

**cosmetic surgery** means surgery to improve your appearance or to correct disfigurement.

**Policy Anniversary** means the renewal date falling on an anniversary of the Effective Date of the policy; except that when the Policy Anniversary does not coincide with a renewal date, it means the next renewal date thereafter.

**Physician** means any person other than you who is licensed by law, and is acting within the scope of the license, to treat Injuries or Sickness which results in covered loss.

**Total Disability** or **totally disabled** means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

**period of disability** means a period of disability starting while this policy is in force. Successive periods will be deemed to be the same period unless the later period:

1. is due to a different or unrelated cause, or
2. starts more than six months after the end of the previous period;

in which event, the later period will be a new or separate period of disability. A new Elimination Period must then be met. And, a new Maximum Benefit Limit will apply.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable. The number of days is shown on Page 3. These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

**Monthly Benefit** is shown on Page 3.

payable
during each ███████████████████.

**Covered Overhead Expenses** means items of expense incurred by you which are usual and customary in the operation of your business or profession.  They must be generally accepted as tax deductible business overhead expenses.  They include but are not limited to items such as:

1.  employees' salaries (except as excluded below);
2.  charges for utilities such as electricity, telephone, heat and water;
3.  either a) rent, or b) an equivalent rental cost for space which you occupy in a building you own and which space you use in the operation of your business or profession, consisting of taxes, maintenance and mortgage interest payments plus the greater of scheduled depreciation for tax purposes or scheduled mortgage principal payments;
4.  for furniture, equipment and implements of your business or profession; either a) leasing cost, or b) an equivalent cost consisting of taxes, maintenance and interest payments plus the greater of scheduled depreciation for tax purposes or scheduled principal payments;
5.  laundry, janitorial and maintenance services;
6.  business insurance premiums (including professional liability insurance premiums); and
7.  accounting, billing and collection service fees.

Covered Overhead Expenses do not include:

1.  salaries, fees, drawing accounts, profits or other remuneration for:
    a.  you;
    b.  any person sharing your business expenses;
    c.  any member of your profession or occupation; or
    d.  any person employed to perform your duties;
2.  additions to inventory or the costs of goods or merchandise purchased for sale;
3.  any kind of expense for which you were not liable in the normal course of your business or profession prior to a covered disability; and
4.  more than your share of expenses when they are shared with one or more persons.

An expense covering more than one month will be prorated to determine the expense for one month.



We will not pay benefits for loss caused by:

1. war or any act of war, whether war is declared or not; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by:
   a. complications of pregnancy; and
   b. normal pregnancy or childbirth on the later of the 91st day of disability or the day of disability following the Elimination Period.

   Complications are physical conditions physicians consider distinct from pregnancy even though caused or worsened by pregnancy. Complications of pregnancy shall include, but not be limited to, non-elective caesarean section, ectopic pregnancy which is terminated and spontaneous termination of pregnancy, which occurs during a period of gestation in which a viable birth is not possible. Examples of conditions that are not complications include **false labor** and **morning sickness**.

We will not pay benefits for loss we have excluded by name or specific description; any such exclusion will appear in the Policy Schedule.

## PRE-EXISTING CONDITION LIMITATION
We will not pay benefits for loss starting within two years of the Effective Date of this policy which is caused by a Pre-existing Condition. A claim for benefits for loss starting thereafter will not be reduced or denied on the ground it is caused by a pre-existing condition unless the condition is excluded by name or specific condition. Pre-existing Condition means a physical impairment, deformity or a medical condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this policy. A medical condition means a sickness or physical condition which, within the two year period prior to the Effective Date of this Policy, either: 1) resulted in your receiving medical advice or treatment; or 2) caused symptoms for which an ordinarily prudent person would seek medical advice or treatment.

## BENEFITS

**TOTAL DISABILITY**
We will pay benefits during a period of disability for Covered Overhead Expenses which accrue while you are totally disabled after the Elimination Period, but:

1. the amount of benefit paid for each month of Total Disability will not exceed the Monthly Benefit (except as set forth below); and
2. the sum of all Total Disability benefits paid during a period of disability will not exceed the Maximum Benefit Limit shown on Page 3.

If you die during a period of disability and benefits are being paid, we will continue to pay benefits for your share of Covered Overhead Expenses which accrue during the two month period after your death, but:

1. the amount of benefit paid for each month will not exceed the Monthly Benefit (except as set forth below); and
2. no benefits will be paid for Covered Overhead Expenses which accrue after your business interests have been sold.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

If the Covered Overhead Expenses ████████████████ ████ are
less than the Monthly Benefit, the unpaid benefit ████████ forward and
applied to expenses incurred in a later month during a period ████ty when the
Monthly Benefit is less than the Covered Overhead Expenses.

If the Covered Overhead Expenses in one month during a period of disability are more
than the benefits payable, the excess expenses may be carried forward and reimbursed
in a later month during the period of disability when the Covered Overhead Expenses
are less than the benefits which would have been payable.

In no event will the sum of all benefits paid during a period of disability exceed
the Maximum Benefit Limit.

**PRESUMPTIVE TOTAL DISABILITY - LOSS OF SPEECH, HEARING, SIGHT OR THE USE OF TWO LIMBS**
You will be presumed totally disabled if Injuries or Sickness results in the entire
and permanent loss of:

1. speech;
2. hearing in both ears;
3. the sight of both eyes; or
4. the use of both hands, or of both feet or of one hand and one foot.

You must present satisfactory proof of your loss.  Your ability to work will not
matter.  Further medical care will not be required.  Benefits will be paid according
to the Total Disability provisions of this policy.  But, benefits will start on the
date of loss if earlier than the day benefits start as shown on Page 3.

**WAIVER OF PREMIUM  - TOTAL DISABILITY AND PARTIAL DISABILITY**
After you have been totally disabled for 90 days during a period of disability, we
will:

1. refund any premiums which became due and were paid while you were totally dis-
   abled or receiving a Partial Disability Benefit; and
2. waive the payment of each premium which thereafter becomes due for as long as
   the period of disability lasts.  After it ends, to keep this policy in force,
   you must again pay any premiums which become due.

For premiums to be waived, you must give us satisfactory proof of disability.

**PAYMENT FOR PART OF MONTH**
If any payment under this policy is for part of a month, the daily rate will be 1/30th
of the payment which would have been made if disability had continued for the whole
month.

**BENEFITS WHEN POLICY RENEWED AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS
LATER**
If this policy is continued in accordance with the "Conditional Right to Renew After
your 65th Birthday or Five Years, Whichever is Later" on Page 1, all of the benefit
provisions on Pages 6 and 7 will be included in the continued policy.  If a Partial
Disability Benefit is contained in this policy, it will be included in the continued
policy.  No "Additional Benefits", if any, named on Page 3 will be included in the
continued policy.  The Monthly Benefit will not change unless you choose to renew with
a lesser amount.  If this policy is continued after your 75th Birthday, the Maximum
Benefit Limit will be reduced by one-half.

## CONVERSION PRIVILEGE

While your policy remains in force prior to your 60th birthday, you may convert it to a disability income policy (herein called the "Conversion Policy"). You must apply for a Conversion Policy. You must not be disabled. You must be actively and gainfully working full time. The following conditions will apply to the Conversion Policy:

1.  It will contain the same renewal guarantees as in this policy. It will provide disability benefits substantially equal to the benefits of this policy. But, the benefits will not be based on incurred Covered Overhead Expenses. The monthly benefit of the Conversion Policy will be the amount you choose as long as it does not exceed:

    a.  the Monthly Benefit shown on Page 3; or
    b.  an amount which, together with all other disability benefits then in force with us and other insurers, does not exceed the amount we would then offer to you as a new applicant or would have offered to you as a new applicant on the Effective Date of this policy, whichever results in the higher amount.

    If a Residual Disability Benefit, Business Value Protector Option or Guaranteed Physical Insurability Option is part of this policy, it will not become a part of the Conversion Policy. The Conversion Policy will, however, contain Partial Disability Benefits.

2.  The Conversion Policy may contain any exclusion contained in this policy.

3.  If a period of disability stops before this policy is converted and then, due to the same or a related cause, starts again within 6 months under the Conversion Policy; benefits will be payable under the Conversion Policy if the full Maximum Benefit Limit had not been paid under this policy. But, benefits payable under the Conversion Policy can not exceed an amount equal to the remainder of the Maximum Benefit Limit for this period of disability. Full maximum benefits will be applicable for new periods of disability which start while the Conversion Policy is in force.

4.  The Conversion Policy will be effective on the date your formal written application for conversion is approved by us. The first premium must be paid within 31 days thereafter.

5.  The premium for the Conversion Policy will be based on our rates in effect for your attained age on the Effective Date of this policy. It will be based on your occupation on the date of conversion. Any other rate classes will be the same as those which applied to you when this policy was issued.

RESIDUAL

(Nothing in this provision...

## DEFINITIONS

**Gross Income** means any monthly income received by you or your business for services performed by you.  Gross Income also includes monthly income generated by anyone employed in your business who performs the same duties as yours, to the extent that that person's income is attributable to you.

Gross Income can be credited to the period in which it is actually received or to the period in which it is earned.  We allow either the cash or accrual accounting method.  But, the same method must be used to determine the Prior Gross Income and the Current Gross Income during a period of disability.  If you elect the cash accounting method we will not include income received for services rendered prior to the start of the period of disability in your current monthly income.

**Prior Gross Income** means your Gross Income for the month immediately preceding a period of disability.

**Current Gross Income** means your Gross Income for each month of Residual Disability being claimed.

**Loss of Gross Income** means the difference between Prior Gross Income and Current Gross Income for the month for which benefits are payable.

**Net Income** means Gross Income minus your share of the usual and customary business expenses which you or your business incurs on a regular basis and are essential to your established business operation.

**Prior Net Income** means the greatest of:

1. your average Net Income for the 12 months just prior to the start of the period of disability for which claim is made;
2. your average Net Income for the year with the highest earnings of the last two years prior to the start of such period of disability; or
3. your highest average Net Income for any two successive years of the last five years prior to the start of such period of disability.

**Current Net Income** means your Net Income for each month of Residual Disability being claimed.

**Loss of Net Income** means the difference between Prior Net Income and Current Net Income.  Loss of Net Income must be caused by the Residual Disability for which claim is made.  The amount of the loss must be at least 20% of Prior Net Income to be deemed Loss of Net Income.



1.  you are not able to do one or more of your substantial and material daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;
2.  you have a Loss of Net Income in your occupation of at least 20%; and
3.  you are receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you.

After the Elimin████████████████████████████████, you are no longer ████
a loss of duties███████████████████████████████████████████████
due to Injuries███

1.  you have a█████
2.  you are rece█████
    causing the Loss█████
    care would be of no█████

**Monthly Benefit and Maximum Benefit**

Residual Disability Monthly Benefit is the Bi███████████████
is determined monthly by this formula. Each month█████████

$$\text{Loss of Gross Income} \over \text{Prior Gross Income} \times \text{Monthly Benefit}$$

The Residual Disability Monthly Benefit will not exceed your Covered Overhead Expenses minus 75% of your Current Gross Income for any month.

### RESIDUAL DISABILITY/RECOVERY BENEFITS

We will pay benefits during a period of disability for Covered Overhead Expenses which accrue while you are residually disabled after the Elimination Period or, if later, after the end of a period during which Total Disability benefits were payable during the same period of disability, but:

1.  The amount of benefit paid for each month of Residual Disability will not exceed the Residual Disability Monthly Benefit (except as stated in the Accumulating Benefit provision); and
2.  The sum of all Total and Residual Disability benefits paid during a period of disability will not exceed the Maximum Benefit Limit shown on Page 3.  And, benefits will not be payable after your 65th birthday (or for longer than 12 months if Residual Disability benefits start between your 64th and 65th birthday).

The first six monthly payments while you are residually disabled will be the greater of:

1.  50% of the Monthly Benefit; or
2.  the Residual Disability Monthly Benefit determined for each month.



benefits are paid.

In no event will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness or from both will not matter. We will pay benefits for the disability which provides the greater benefit.

We can require any proof which we consider necessary to determine your Current Gross Income, Prior Gross Income, Current Net Income and Prior Net Income. Also, we or an independent accountant retained by us shall have the right to examine your financial records as often as we may reasonably require.

### INDEXING OF PRIOR GROSS INCOME
(Applicable to benefits paid after the 12th month of a period of disability)

#### Definitions

CPI-U means the Consumer Price Index for All Urban Consumers. It is published by the United States Department of Labor. If the CPI-U is discontinued or if its method of computation is changed, we may use another nationally published index. We will choose an index which is similar in scope and purpose to the CPI-U. The CPI-U will then mean the index which is chosen.

Review Date means each anniversary date of the start of a period of disability.

Review Period means a one year period ending on a Review Date.

Index Month means the calendar month three months prior to a Review Date. But, the first Index Month means the calendar month three months prior to the start of a period of disability. We will measure all changes in the CPI-U from the first Index Month.

Index Factor is computed by dividing the CPI-U for the latest Index Month by the CPI-U for the first Index Month. We will compute it on each Review Date during a period of disability.

Adjusted Prio█████████

If Injuries or Sickness results in a period of ████████
months, we will index your Prior Gross Income as fol██████

1. On each Review Date, your Prior Gross Income will be █████████ Index
   Factor. The result is your adjusted Prior Gross Inco██████ ████ ████ to
   figure your Loss of Gross Income during the Review Period████████████ will
   also he used in the formula to compute each Residual Disab█████████ Benefit
   during that Review Period.

   An increase in your Prior Gross Income can cause your Lo██████████ Income to
   he greater. This in turn can result in an increase in the ████████ual Disability
   Monthly Benefit. Other than your Index Factor (which is computed by using ac-
   tual CPI-U values), there is no limit on the percent of increase in your **Prior**
   **Gross Income** for a Review Period. If the CPI-U sh███d go down, your adjusted
   **Prior Gross Income** can decrease. But, it can never reduce below your **Prior**
   **Gross Income** at the start of the period of disability.

2. Indexing of your Prior Gross Income will end on the earliest of:

   a. the end of the period of disability (see Page 4);
   b. the date the Maximum Benefit Limit is reached; or
   c. your 65th birthday.

Disabilit███████████, which can be paid for the first 12 month████████
disabili███████████████████ █████████ustment of Prior Gross I██████████
Month████████████████████████████████████████████████████████████
12 mont█████████████████████████████████████████████████████

For peri███████████████████████████████████████████
provision██████████████████████

If, during a p██████████████████████████████████████████ █ days
of Total and/or R███████████████████████████████████████

1. refund any pre███████████████████████████████ ████ disabled;
   and
2. waive the paymen█████████████████████████████████ ██████ as long as
   the period of dis█████████████████████████████████ █████ in force,
   you must again pa████████████████████████████████████

For premiums to be waived█████████████████████ proof of disability."

NOTE: All portions of this R████████████████overy Benefits expire on your 65th
      birthday, and no furthe███████████ ████ will be due, even though the policy
      may be renewed after that d███████



**BUSINESS VALUE PROTECTOR OPTION**

There is, on Page 5 of this policy, a list of expenses that are not to be included as Covered Overhead Expenses. This Option modifies 1(c) and 1(d) on that list so that the following expenses will be included:

Expenses which you incur by paying the salary of a member of your profession or occupation who is employed to perform your duties because of your Total Disability. The person employed can not be your spouse or a member of your family or your spouse's family. "Family" means parent, son, daughter, brother or sister.

After you have been totally disabled for the BVP Elimination Period shown on Page 3 during a period of disability which started before your 65th birthday, we will pay benefits for the above expenses which accrue while Total Disability continues during the period of disability, but:

1. the amount of benefit paid for each month of Total Disability will not exceed the BVP Monthly Benefit shown on Page 3; and

2. benefits will not be paid for longer than the BVP Maximum Benefit Period shown on Page 3.

This benefit is payable in addition to the Monthly Benefit and the Maximum Benefit Limit. But, it will not be paid for any Partial Disability or Residual Disability Benefits that may be included in your policy.

NOTE: All portions of this Business Value Protector Option expire on your 65th birthday, and no further premiums for it will be due, even though the policy may be renewed after that date.



**GUARANTEED PHYSICAL INSURABILITY OPTION**

### DEFINITIONS

**Option Date** means each anniversary of the Effective Date of the policy starting with the first and ending with the one which falls on or next follows your 52nd birthday. If an Option Date does not coincide with a renewal date for this policy, it will change to coincide with the next renewal date thereafter.

**Option Period** means the period which begins 60 days before and ends 31 days after an Option Date.

### BENEFIT

You have the right to increase the Monthly Benefit and, proportionately, the Maximum Benefit Limit shown on Page 3. You may do so, without submitting evidence of physical insurability, by following the rules set forth below.

Increases will be made only upon formal application by you. You must apply within an Option Period. An increase, if approved by us, will be effective on the date of your application.

The amount of an increase will be subject to each of the following:

1. An increase, when combined with all other overhead expense disability benefits then in force with us and other insurers, may not exceed the amount we would issue to you as a new applicant. This amount will be subject to our published issue and participation limits on the day you apply for an increase or on the Effective Date of this policy, whichever results in higher amount.

2. After your 46th birthday, an increase can not exceed one-third of the original Maximum Increase shown on Page 3 (rounded up to the next $10.00).

3. The sum of all increases can not exceed the original Maximum Increase shown on Page 3.

You can apply for an increase during any Option Period even though you are disabled. An increase of up to 10% of the original Monthly Benefit shown on Page 3 (rounded up to the next $10.00) approved by us during a period of disability will apply to the benefits payable while that period of disability continues. And, this increased Monthly Benefit, plus any excess of 10% approved during the same period of disability will be applicable to new, separate periods of disability (see Page 4.)

If you do not qualify for an increase on an Option Date, you can still apply for an increase during a later Option Period.

The first premium for an increase approved by us must be paid within 31 days; later premiums must be paid as part of the Policy Premium. If the premium for the policy is being waived (see Waiver of Premium provision) on the effective date of the increase, you will not have to start paying the premium for the increase until the premium for your policy becomes payable again.

The premium for each increase will be based on your attained age on the date of your application for each increase. It will also be based on:

1.  our premium rates in effect at the time of the increase or on the Effective Date of the policy, whichever is less; and

2.  your occupational class at the time of the increase or on the Effective Date of the policy, whichever will produce the lower premium.

When an increase is exercised, the premium for this Option will be reduced. The reduced premium will be based on the Maximum Increase remaining.

This Option will expire, and no further premiums for it will be due, on the earlier of:  (a) the date when the Maximum Increase has been exercised; or (b) the date when the Option Period ends for the 52nd birthday Option Date described above.

**POLICY TERM**
The first term of this policy starts on the Effective Date shown on Page 3. It e
on the First Renewal Date also shown. Later terms will be the periods for which
pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Stand
Time, at your home. The renewal premium for each term will be due on the day th
preceding term ends, subject to the grace period.

**GRACE PERIOD**
This policy has a 31 day grace peri
paid on or before the date it i
the grace period, the policy

If this policy is conti
changed to read as follo

> "GRACE PERIOD
> This policy has a 31 day gr
> not paid on or before the da
> The grace period will not apply
> we have delivered or mailed to your
> notice of our intent not to renew thi
> policy will stay in force. We may refuse
> Anniversary and only when you become ineligible to continue
> to be actively and gainfully employed full time."

**CONDITIONAL RIGHT TO RENEW AFTER YOUR 65TH BIRTHDAY OR FIVE YEARS, WHICHEVER IS LATER;**
**PREMIUMS ARE NOT GUARANTEED**
(Continued from Page 1)
You can renew this policy as long as you are; 1) actively and gainfully working full
time in operating your business or profession; and 2) still incurring Covered Overhead
Expenses as defined on Page 5. From time to time, we can require proof that you are
actively and gainfully working full time. If you stop working, (except by reason of
Total Disability), this policy will terminate on the next Policy Anniversary; except
that coverage will continue to the end of any period for which premium has been ac-
cepted. All losses must occur while your policy is in force; except if your policy
terminates for any reason, loss from Injuries may begin within 30 days from the date
of the accident.

Premiums must be paid on time. They will be based on our table of rates by attained
age in effect at time of renewals for persons in your same rate class who are insured
under policies of this form. Other than your attained age, the factors used to de-
termine your rate class will be the same as those that applied to you on the Effective
Date of this policy. Notice of any increase in premium will be given to you by mail
at least 31 days prior to the renewal date upon which such increase is to be effective.

**REINSTATEMENT**
If a renewal premium is not paid before the grace period ends, the policy will lapse.
Later acceptance of the premium by us or by our agent authorized to accept payment
without requiring an application for reinstatement will reinstate this policy.

If we or our agent require an application, you will be given a conditional receipt
for the premium tendered. If the application is approved, the policy will be rein-
stated as of the approval date. Lacking such approval, the policy will be reinstated
on the 45th day after the date of the conditional receipt unless we have previously
written you of our disapproval.

1737-F-PR               JEAN P SIMON MD 36-1737-6122493                 Page 16

the reinstated policy will be so
after the date of reinstatement or Sickness which is first manifested more than
days after such date.  In all other respects, your rights and ours will remain the
same, subject to any provisions noted on or attached to the reinstated policy.

## SUSPENSION DURING MILITARY SERVICE
If you enter full-time active duty in the military (land, sea or air
nation or international authority, you may suspend this poli
suspend this
pol
pa
fe
you

If y
may d
will star

1. we have
2. you have paid
   due date.

However, your request and premium payment
the date your active duty in the military service
rate that they would have been had your policy remained in force.  You and we will
have the same rights under the policy as before it was suspended.

## YOUR RIGHT TO CANCEL POLICY PRO-RATA
If you cease to incur Covered Overhead Expenses, you may cancel this policy.  You will
receive a refund of the unearned portion of any premiums paid for any period beyond
the last day on which Covered Overhead Expenses were incurred.  To cancel and receive
a refund you must notify us in writing and verify the day you ceased to incur such
expenses.  No refund will be made for any period more than one year before the date
you give us notice.  Cancellation will be instead of:

1. any suspension under the "Suspension During Military Service" provision; and
2. your conversion right under the "Conversion Privilege".

## PREMIUM ADJUSTMENT AT DEATH
Any premium paid for a period beyond the date of your death will be refunded to your
estate.

### CLAIMS

## NOTICE OF CLAIM
Written notice of claim must be given within 20 days after a covered loss starts or
as soon as reasonably possible.  The notice can be given to us at our home office,
Chattanooga, Tennessee, or to our agent.  Notice should include your name and the
policy number.

## CLAIM FORMS
When we receive your notice of claim, we will send you claim forms for filing proof
of loss.  If these forms are not given to you within 15 days, you will meet the proof
of loss requirements by giving us a written statement of the nature and extent of your
loss.  You must give us this proof within the time set forth in the Proof of Loss
section.

1737 F C            JEAN P SIMON MD 36-1737-6122493            Page 17

**PROOF OF LOSS**
You must give us written proof of loss within 90 days after the end of each
for which we are liable.  If that is not reasonably possible, we will
deny the claim for this reason if the proof is filed as soon as
In any event, the proof required must be furnished no
90 days un

**TIME**
Afte
for dis
of the cl

**PAYMENT OF CLA**
Benefits wil
tate.

**PHYSICAL EXAMINATION**
We, at our expens
a claim is pending.

**MISSTATEMENT**
If your age has
bought at the co
would have



**LEGAL ACTIONS**
You may not start a legal action to recover on this policy within 60 days after you
give us required proof of loss.  You may not start such action after three years from
the time proof of loss is required.


## GENERAL PROVISIONS

**ENTIRE CONTRACT**
This policy with the application and attached papers is the entire contract between
you and us.  No change in this policy will be effective until approved by one of our
officers.  This approval must be noted on or attached to this policy.  No agent may
change this policy or waive any of its provisions.

**TIME LIMIT ON CERTAIN DEFENSES**

1.  After two years from the Effective Date of this policy, no misstatements, except
    fraudulent misstatements, made by you in the application for this policy will
    be used to void the policy or to deny a claim for loss incurred or disability
    that starts after the end of such two year period.

2.  No claim for loss incurred or disability that starts after two years from the
    Effective Date of this policy will be reduced or denied on the ground that a
    sickness or physical condition not excluded by name or specific description had
    existed before the Effective Date of this policy.

**CONFORMITY WITH STATE LAWS**
Any provision of this policy which, on its effective date, is in conflict with the
laws of the state in which you then reside is changed to meet the minimum requirements
of those laws.



# YOUR OUTLINE OF COVERAGE

(PLEASE KEEP WITH YOUR POLICY)



PROVIDENT
LIFE AND ACCIDENT
INSURANCE COMPANY
1 FOUNTAIN SQUARE
CHATTANOOGA  TN 37402

PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY

DISABILITY INCOME PROTECTION COVERAGE

REQUIRED DISCLOSURE STATEMENT

POLICY SERIES C-337-F

This policy provides disability income insurance.  It does NOT provide basic hospital, basic medical, or major medical insurance as defined by the New York State Insurance Department.  This policy provides as follows:

## BENEFITS

### General Definitions

**Benefit Schedule** means the schedule of benefits attached to this Disclosure Statement.

**Elimination Period** means the number of days of disability that must elapse in a period of disability before benefits become payable.  The number of days is shown in this Disclosure Statement's Benefit Schedule.  These days need not be consecutive; they can be accumulated during a period of disability to satisfy an Elimination Period. Benefits are not payable, nor do they accrue, during an Elimination Period.

If the Elimination Period is fulfilled during a period of disability, the first subsequent disability due to a different or unrelated cause will not require an Elimination Period, provided the first subsequent disability occurs within the twelve month period from the end of the prior disability, during which the Elimination Period was satisfied.

**Total Disability or totally disabled** means that due to Injuries or Sickness:

1.  you are not able to perform the substantial and material duties of your occupation; and
2.  you are receiving care by a Physician which is appropriate for the condition causing the disability.  We will waive this requirment when continued care would be of no benefit to you.

**your occupation** means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled.  If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem your specialty to be your occupation.

### Basic Benefits of Your Policy

The basic Monthly Benefit for Total Disability is shown in the Benefit Schedule. Benefits start on the day of Total Disability after the Elimination Period.  Benefits are payable for as long as the applicable maximum benefit periods also shown in the Benefit Schedule.

Disclosure Statement for JEAN P SIMON MD 36-337-6084608

DUPLICATE

**UPDATE** – This benefit provides for automatic increases in your Monthly Benefit fo Total Disability.  Refer to the policy schedule in your policy for details.

**Presumptive Total Disability** – You will be presumed totally disabled if Injuries or Sickness result in the entire and permanent loss of:  1) speech; 2) hearing in both ears; 3) sight of both eyes; or 4) use of both hands, both feet, or one hand and one foot.

The basic Monthly Benefit for Total Disability will be paid even if you can work. Further medical care will not be required.  Benefits will be payable for the Benefit Period stated in the Benefit Schedule.  If loss occurs before your 65th birthday, benefits will be payable for life.

**Waiver of Premium** – After you have been disabled for 90 days during a period of total and/or residual disability we will:

1.  refund any premiums which became due and were paid while you were totally and/or residually disabled; and
2.  waive the payment of each premium which thereafter becomes due for as long as the period of disability lasts.  After it ends, to keep your policy in force, you must again pay any premiums which become due.

**Transplant Surgery** – If you are disabled because you donate a part of your body to another person, we will consider it to be the result of a Sickness.

**Cosmetic Surgery** – If you are disabled from surgery to improve your appearance or correct disfigurement, we will consider it to be the result of a Sickness.

**Rehabilitation** – You may participate in a program of occupational rehabilitation while disabled.  This will not of itself affect Total Disability payments.  If we approve the program we will pay certain training expenses that you incur.

**Additional Benefits**

The following optional benefits are also a part of your policy and are shown in the Benefit Schedule.  Additional premium is required.

**Residual Disability Benefits** Disability/Recovery Benefits pay a percentage of the Total Disability Monthly Benefit when, due to Injuries or Sickness, you suffer a loss of earnings of 20% or more, and are receiving care by a physician.  (During the Elimination Period only, you must not be able to work fully because of the Injuries or Sickness.)  A loss of earnings over 75% is deemed a 100% loss and 100% of your Total Disability Monthly Benefit will be paid.  Residual benefits are payable for as long as stated in the policy.

When a disability lasts more than one year, Cost of Living indexing (based on the Consumer Price Index) will be applied to your pre-disability earnings.  As they increase, your loss of earnings becomes greater and this, in turn, produces increases in your Residual Disability Monthly Benefit.

**Guaranteed Physical Insurability/Long Term Disability Option** guarantees the option to purchase future coverage to your 55th birthday.

## EXCLUSIONS

This policy does not cover loss caused by:

1. war or any act of war; or
2. normal pregnancy or childbirth, except we will pay benefits for loss caused by normal pregnancy or childbirth on the later of ther 91st day of disability or the day of disability following the Elimination Period.   Complications of pregnancy are covered.  See your policy for details.

The policy will only cover a pre-existing condition if it is disclosed and not misrepresented in answer to a question in your application, and we do not specifically exclude it from coverage.

A pre-existing condition is defined in your policy.

If there are any additional exclusions, they will be referred to in the Policy Schedule.  If there is an exclusion or limitation which applies only to a benefit rider added after the policy is issued, it will be included with the rider.

## RENEWABILITY OF YOUR POLICY

**Non-Cancellable and Guaranteed Continuable at Guaranteed Premiums to Your 65th Birthday or For Five Years, Whichever Is Later:**  You can continue this policy to your 65th birthday or for five years, whichever is later, by paying the premiums on time.

**Conditional Right to Renew After Your 65th Birthday or Five Years, Whichever Is Later: Premiums are not Guaranteed:**  You can renew this policy as long as you are actively and gainfully working full time; there is no age limit.  You must pay premiums on time at our rates then in effect at time of renewal.  The basic policy, if renewed before your 75th birthday, will provide a 24 month maximum benefit period for Total Disability and for Presumptive Total Disability, if this benefit is included in the policy.  A 12 month maximum benefit period will be provided if the policy is renewed on or after your 75th birthday.

If the policy is continued, all of the basic benefit provisions will be included in the continued policy.  Any additional benefit provision contained in the policy will not be included unless it is so named as one that will be included in the continued policy.

This Disclosure Statement is a very brief summary of your policy.

The policy itself sets forth the rights and obligations of both you and your insurance company.  It is therefore important that you READ YOUR POLICY carefully.

The expected benefit ratio for this policy is 60%. This ratio is the portion of future premiums which the Company expects to return as benefits, when averaged over all people with this policy.

This Disclosure Statement was prepared on 01/09/2004 and replaces any previous description of coverage furnished you.

C-337-F-DS

JEAN P SIMON MD 36-337-6084608                                    Page 66 -

## BENEFIT SCHEDULE FOR THIS DISCLOSURE STATEMENT

--------------------------------------------------------------------------------

Elimination Period                    365 days of Total and/or Residual Disability

Monthly Benefit for Total Disability                              $10,000.00

Maximum Benefit Periods:

**Injuries:**
    Total Disability starting before your 65th birthday ............... for Life
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday .................................... 24 months
    Total Disability starting on or after your 75th birthday ........... 12 months

**Sickness:**
    Total Disability starting before your 60th birthday ............... for Life
    Total Disability starting on or after your 60th birthday
      but before your 61st birthday ......................... to your 65th birthday
    Total Disability starting on or after your 61st birthday
      but before your 62nd birthday .................................... 48 months
    Total Disability starting on or after your 62nd birthday
      but before your 63rd birthday .................................... 42 months
    Total Disability starting on or after your 63rd birthday
      but before your 64th birthday .................................... 36 months
    Total Disability starting on or after your 64th birthday
      but before your 65th birthday .................................... 30 months
    Total Disability starting on or after your 65th birthday
      but before your 75th birthday .................................... 24 months
    Total Disability starting on or after your 75th birthday ........... 12 months

------------------------------------ADDITIONAL BENEFITS------------------------------------

Residual Disability/Recovery Benefit

Guaranteed Physical Insurability/Long Term Disability Option
    Total Maximum Increase is $1,000.00

Insured - JEAN P SIMON MD                          Policy Number 6084608

Insured - JEAN P SIMON MD

Policy Number 6084608

**JEAN P. SIMON, M.D.**

Plaintiff,

- against -

**UNUM, UNUM PROVIDENT, PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, THE PAUL REVERE LIFE INSURANCE COMPANY, FIRST UNUM LIFE INSURANCE COMPANY, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, AND UNUM PROVIDENT CORPORATION,**

Defendants.

## COMPLAINT

## SACK & SACK, ESQS.

## ATTORNEYS FOR PLAINTIFF

110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
Fax: (212) 702-9702