UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
                                      :

**JEAN P. SIMON, M.D.,**                :    Civ. No.: 07-cv-11426 (SAS)
                                        :
                                        :
                        Plaintiff,    :
                                        :

               — against —       :
                                        :

**UNUM, UNUM PROVIDENT, PROVIDENT LIFE** :
**AND CASUALTY INSURANCE COMPANY, THE** :
**PAUL REVERE LIFE INSURANCE COMPANY,** :
**FIRST UNUM  LIFE INSURANCE COMPANY,** :
**PROVIDENT LIFE AND ACCIDENT INSURANCE** :
**COMPANY AND UNUMPROVIDENT** :
**CORPORATION,** :
                                        :
                        Defendants.   :
                                        :
-------------------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION OF DEFENDANT'S MOTION TO
## PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT

**SACK & SACK, ESQS.**
110 East 59th Street, 19th Floor
New York, New York 10022-2050
(212) 702-9000

Attorneys for Plaintiff

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT ..................................................................................... 1

STATEMENT OF FACTS ................................................................. 2

ARGUMENT ........................................................................................ 7

    A.    STANDARD FOR MOTION TO DISMISS UNDER 12(B)(6) ...................... 7

    B.    THERE IS NO BASIS TO DISMISS ANY OF THE NAMED DEFENDANTS FROM THE AMENDED COMPLAINT ............... 8

    C.    PLAINTIFF PROPERLY STATES A CLAIM FOR FRAUD ................ 10

    D.    THE CONSUMER FRAUD CLAIM MUST BE SUSTAINED ................ 14

    E.    PLAINTIFF PROPERLY STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ................ 14

    F.    PLAINTIFF PROPERLY ALLEGES BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING ................ 15

CONCLUSION ................................................................................... 16

## TABLE OF AUTHORITIES

### CASES

Absalom Gonzalez-Jimenez v. United States of America, 2000 U.S. Dist. LEXIS
14040 (S.D.N.Y. 2000) ...................................................................................................7

Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 151 N.E.2d
833, 176 N.Y.S.2d 259 (1958) ......................................................................................10

Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 151 N.E.2d
833, 176 N.Y.S.2d 259 (1958) ......................................................................................10

Cohen v. Koenig, 25 F.3d 1168 (2d Cir. 1994) ...............................................................7

Conley v. Gibson, 355 U.S. 41 (1957) .............................................................................7

Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998) .........................................................8

Cosmas v. Hasset, 886 F.2d 8 (2d Cir. 1989) ..................................................................7

Gant v. Wallingford Bd. of Educ., 69 F.3d 669 (2d Cir. 1995)....................................7, 8

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).........................................................8

Howell v. New York Post Co., 81 N.Y.2d 115 (N.Y. 1993) ..........................................14

Jaffe v Paramount Communications Inc., 222 A.D.2d 17, 644 N.Y.S.2d 43 (1996)....................15

Kaible v. U.S. Computer Group, 27 F. Supp. 2d 373, 1998 U.S. Dist. LEXIS 19214
(S.D.N.Y. 1998)..............................................................................................................7

II

Kenneth Dash v. The Equitable Life Assurance Society of the United States and
Ecuicor—Equitable HCA Corp., 753 F. Supp. 1062; 1990 U.S. Dist. LEXIS 17708;
59 FairEmpl. Prac. Cas. (BNA) 685 (E.D.N.Y. 1990) ........................................7


LaBounty v. Adler, 933 F.2d 121 (2d Cir. 1991) .............................................8


New York Univ. v. Cont'l Ins. Company, 87 N.Y.2d 308 (N.Y. 1995) ........................14


Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41 (2d Cir. 1997) .........................7


Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A., 85
N.Y.2d 20 (N.Y. 1995) ....................................................................14


Rocanova v. Equitable Life Assur. Soc'y, 83 N.Y.2d 603, 634 N.E.2d 940, 1994
N.Y. LEXIS 1064, 612 N.Y.S.2d 339 (N.Y. 1994) ..........................................12


Rowe v Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 412 N.Y.S.2d 827, 385 N.E.2d
566 (1978) ...............................................................................15


S.E.C. v. U.S. Environmental, Inc., 155 F.3d 107 (2d Cir. 1998) ..........................7


Villager Pond, Inc. v. Town of Darien, 56 F.3d 375 (2d Cir. 1995), cert. denied, 519
U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14 (1996) ........................................8


Weisman v. LeLandais, 532 F.2d 308 (2d Cir. 1976) ......................................8

III

## PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT

Plaintiff, Jean P. Simon ("*Simon*"), by his undersigned counsel, submits this Memorandum of Law in Opposition to Defendants' Partial Motion to Dismiss seeking denial of Defendants' motion in its entirety.

The Amended Complaint must be sustained in its entirety for several reasons. First, the listing of the various Defendants is based upon the countless correspondence to Dr. Simon from UNUM that, at one time or another, listed at least one of the Defendants on its letterhead. It is not for Dr. Simon to know, or this Court to determine, which of the names on the letterhead of correspondence received by Dr. Simon have "no corporate existence or have absolutely no involvement in this case." If that were so, then why would Defendants "Unum" or "Unum Provident" or the "Paul Revere Life Insurance Company" or "First Unum Life Insurance Company" or "Provident Life and Accident Insurance Company" be sending Dr. Simon correspondence in the first place? In fact, since Dr. Simon became a policy holder with UNUM in 1993, Provident Life and Casualty Insurance has served as a predecessor-in-interest to several upstream and/or downstream companies, some of which are named in this action.

Second, it is interesting that Defendants cite only the "Causes of Action" portions of the Amended Complaint to attempt to show that Dr. Simon failed to plead his fraud claim with particularity. Rather, in the "Facts" section of the Amended Complaint, Dr. Simon cites with specific particularity the allegations supporting his fraud claims, as well as his claims grounded in consumer fraud, intentional infliction of emotional distress and breach of good faith and fair dealing that go beyond the ambit of a simple breach of contract claim.

Unfortunately for Defendants, the Court's function for purposes of this Motion is to determine whether Dr. Simon has stated a cause of action for which relief can be sought within

the four corners of the Amended Complaint and not from the unsupported letter requests of counsel to remove causes of action and named defendants from its Amended Complaint just because they say so.

Accordingly, Defendants' motion should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiff respectfully refers the Court to the Amended Complaint filed in this matter for a full rendition of Plaintiff's allegations in its entirety. Dr. Simon, however, does proffer the following relevant facts:

On or about January 1, 1993, Dr. Simon, an obstetrician / gynecologist and gynecological surgeon ("*OB/GYN*"), as an individual consumer, purchased two (2) standard form disability insurance policies from UNUM (specifically, UNUM Provident Life and Casualty, predecessor-in-interest to one or more of the named Defendants in this action) in the event he were to become disabled (or "totally disabled") by means of his occupation as an OB/GYN specialist: (i) Policy Number 36-3376084608, effective January 1, 1993 ("*Policy 1*"); and (ii) Policy Number 36-1737-6122493, effective August 1, 1995 ( "*Policy 2*", together with Policy 1, the "*UNUM Policies*" or the "*Plan*"). (Amend. Comp. ¶ ¶ 10, 18-19.)

The UNUM Policies purchased by Dr. Simon were standard-form policies that are offered and are available to consumers at large. (Amend. Comp. ¶ ¶ 20, 89.)

According to the UNUM Policies, Dr. Simon is entitled to disability benefits in the event he suffers a "total disability" that impairs his ability to perform the "the substantial and material duties of [his] occupation" as an OB/GYN specialist. (Amend. Comp. ¶ ¶ 21 – 22.)

2

On or about November 23, 2003, Dr. Simon became "Totally Disabled" in accordance with the terms defined in the UNUM Policies following an injury incurred while performing the material and substantial duties of his occupation as an OB/GYN specialist. (Amend. Comp. ¶ 23.) As a result of his injuries, Dr. Simon suffered a "total disability" as defined in the UNUM Policies. (Amend. Comp. ¶ 33.)

Despite that Dr. Simon suffered a "total disability" pursuant to the terms of UNUM Policies, UNUM has, in bad faith and without reason, justification or cause, unilaterally withheld and refused to make any payments to Dr. Simon or otherwise honor the terms, conditions and privileges set forth in the UNUM Policies. (Amend. Comp. ¶ ¶ 37, 42.) Specifically, UNUM has pretended to be investigating Dr. Simon's claim for "total disability", knowing it never had any intention of properly investigating Dr. Simon's injury as a "total disability" or providing Dr. Simon with any benefits in the event he became totally disabled – yet they continued to collect costly premiums. (Amend. Comp. ¶ ¶ 48-49.)

Since Dr. Simon submitted to UNUM a claim for "total disability" benefits, UNUM, in bad faith, has engaged in a practice and pattern of inundating Dr. Simon with unduly burdensome, irrelevant and unreasonable requests for information in a disingenuous effort to find a reason not to pay Dr. Simon's disability claims, to which he is entitled. (Amend. Comp. ¶ 43.) Any purported investigation by UNUM into Dr. Simon's injury and the financial effect of his injury was biased only towards fraudulently inventing a pretense to deny Dr. Simon's claims. (Amend. Comp. ¶ 50.)

For example, UNUM demonstrated, through the acts, correspondence, telephone calls, internal memos and emails of its employees and their superiors that it had no intention of paying Dr. Simon's claims but continued to carry on conversations and correspondence with Dr. Simon

3

pretending to be doing a purported investigation into Dr. Simon's injury. (Amend. Comp. ¶ 51.) Furthermore, it was not until September 2005, nearly two (2) years following his injury, that UNUM finally had its own doctor examine Dr. Simon's injury, after which there were no further follow-up consultations by UNUM with any other independent medical examiners. The sole determination of whether Dr. Simon suffered a "total disability" is whether he can perform the "material and substantial duties" of his occupation; NOT whether he has the ability to earn a living performing some other medical tasks (thus tax returns and other financial data are irrelevant). (Amend. Comp. ¶ 52.) UNUM failed to perform any ergonomic assessment or functional capacity evaluation to assist it in evaluating Dr. Simon's claim, nor were any second opinions by independent OB/GYNs performed for the purpose of assessing Dr. Simon's total disability. (Amend. Comp. ¶ 53.)

Through its actions, UNUM intended that Dr. Simon rely to his detriment upon its material misrepresentations concerning any purported investigation or determination concerning Dr. Simon's injury and claim for benefit stemming therefrom. (Amend. Comp. ¶ 54.) However, UNUM merely pretended to process Dr. Simon's claim through its appeals process (and collected premiums) but never addressed the issues of whether or not Dr. Simon is able to perform the substantial and material duties of his occupation. (Amend. Comp. ¶ 55.)

Although Dr. Simon was paying for, and continues to pay high premiums towards his "own occupation" policy that he believed to his detriment would protect him and his family from exactly the kind of harm that befell him on November 23, 2003, UNUM has intentionally engaged in a "bait and switch" and with scienter and intention to willfully and knowingly defraud Dr. Simon, processed Dr. Simon's claim for benefits as if it were a cheaper "any occupation" policy. (Amend. Comp. ¶ 56.)

4

During the alleged appeal process UNUM pretended to enter into settlement discussions with Dr. Simon. (Amend. Comp. ¶ 57.)

In September 2006, three years following the injury, and two years after the elimination period, UNUM ceased the purported appeal of Dr. Simon's claims and "remanded" his claim to the initial claims review department in a further "bad faith" effort to withhold benefits, to which Dr. Simon is entitled. (Amend. Comp. ¶ 58.)

UNUM then made more irrelevant and unreasonable requests for information about Dr. Simon's injury, his occupation and even his wife's personal information in a disingenuous effort to find a reason not to pay Dr. Simon's claim for benefits for "total disability." (Amend. Comp. ¶ 59.)

UNUM continues to fraudulently refuse to properly investigate whether or not Dr. Simon is able to perform the substantial and material duties of his occupation. (Amend. Comp. ¶ 60.) UNUM's actions, apart from its obligations under the UNUM Policies, are morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to its civil obligations. (Amend. Comp. ¶ 61.)

UNUM has made no meaningful attempt or effort to rehabilitate, negotiate or deal in good faith with Dr. Simon. (Amend. Comp. ¶ 63.)

Dr. Simon has complied with all reasonable requests for information from UNUM in a timely fashion. (Amend. Comp. ¶ 38.)

Dr. Simon timely submitted an administrative appeal challenging the decision to withhold his disability benefits. (Amend. Comp. ¶ 39.) Dr. Simon's administrative appeal was denied, thereby exhausting his administrative remedies. (Amend. Comp. ¶ 40.)

Dr. Simon has and continues to pay all of the premiums in order to maintain the UNUM "own occupation" Policies. Furthermore, Dr. Simon has followed all conditions precedent and complied with all policy requirements for receipt of payment of benefits under the UNUM Policies for being "totally disabled." (Amend. Comp. ¶ 41.)

At all times herein, UNUM's conduct Dr. Simon has risen to the level of such an egregious nature it is extreme and outrageous conduct that goes beyond the ambit of a simple breach of contract. (Amend. Comp. ¶ 44.)

UNUM intended to cause Dr. Simon severe emotional distress. (Amend. Comp. ¶ 45.) Furthermore, UNUM intended to defraud Dr. Simon by collecting and continuing to collect premiums with the intention that Dr. Simon believe that he is protected by UNUM's representations that would he would be protected by the "own occupation" definition of his policy. (Amend. Comp. ¶ 46.)

Dr. Simon relied and continues to rely upon UNUM's material misrepresentations that Dr. Simon is entitled to disability benefits in the event he suffers a total disability. (Amend. Comp. ¶ 47.)

## ARGUMENT

**A.** **STANDARD FOR MOTION TO DISMISS UNDER 12(B)(6)**

As more fully described herein, Defendants do not meet the stringent standard to obtain dismissal for failure to state a claim. <u>Kaible v. U.S. Computer Group</u>, 27 F. Supp. 2d 373, 376, 1998 U.S. Dist. LEXIS 19214 at *5 (S.D.N.Y. 1998). On a motion to dismiss for failure to state a claim, a complaint should be dismissed only if it appears beyond doubt that the Plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. <u>S.E.C. v. U.S. Environmental, Inc.</u>, 155 F.3d 107 (2d Cir. 1998); <u>Northrop v. Hoffman of Simsbury, Inc.</u>, 134 F.3d 41 (2d Cir. 1997); <u>quoting</u>, <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

In addition to the foregoing, Defendants' Motion should be denied on the basis that its unsupported and self-serving representations concerning the legal nature of named defendants is insufficient to support a Motion to Dismiss. It is more than well-established law, that "on a Motion to Dismiss, the <u>allegations in the complaint are accepted as true</u>." <u>Absalom Gonzalez-Jimenez v. United States of America</u>, 2000 U.S. Dist. LEXIS 14040 (S.D.N.Y. 2000), <u>citing</u>, <u>Cohen v. Koenig</u>, 25 F.3d 1168, 1172-73 (2d Cir. 1994). <u>See also</u>, <u>Kenneth Dash v. The Equitable Life Assurance Society of the United States and Ecuicor—Equitable HCA Corp.</u>, 753 F. Supp. 1062; 1990 U.S. Dist. LEXIS 17708; 59 FairEmpl. Prac. Cas. (BNA) 685 (E.D.N.Y. 1990). "In deciding a motion to dismiss, all reasonable inferences must be drawn in the plaintiff's favor." <u>Gant v. Wallingford Bd. of Educ.</u>, 69 F.3d 669, 673 (2d Cir. 1995); <u>Cosmas v. Hasset</u>, 886 F.2d 8, 11 (2d Cir. 1989).

The issue before the Court on a Rule 12(b)(6) motion "is not whether [Simon] will ultimately prevail, but whether [Simon] is entitled to offer evidence to support the claim." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808, 117 S. Ct. 50, 136 L. Ed. 2d 14, (1996). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995); quoting, Weisman v. LeLandais, 532 F.2d 308, 311 (2d Cir. 1976).

This honorable Court is well aware that it is not the Court's function to weigh the evidence that might be presented at a trial. Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir 1985) (emphasis added). This Court must accept the allegations of Dr. Simon's Amended Complaint as true, and construe all reasonable inferences in his favor. Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991).

**B.    THERE IS NO BASIS TO DISMISS ANY OF THE NAMED DEFENDANTS FROM THE AMENDED COMPLAINT**

Defendants would like Plaintiff to dismiss certain named Defendants from the Amended Complaint simply because they have said so. Defendants make this argument without taking into account that there are sustainable causes of action alleged in the Amended Complaint beyond the simple breach of contract.

Even though Provident was the predecessor-in-interest who issued the UNUM Policies, in dealing with the UNUM entities from the date of his injury in November 2003 through the filing of the Amended Complaint, Dr. Simon has corresponded with several UNUM entities – each purporting to be a different UNUM entity – each acting in concert as one UNUM company. Furthermore, it is undeniable that UNUM Provident Life and Casualty is a predecessor-in-

interest to several upstream and/or downstream companies, some of which are named in this action.

For example, in Exhibit "C" of its own Motion Papers, Defendants include a copy of the Claim Decision denying Dr. Simon's "total disability" benefits with the name "UNUM" emblazoned on the top left corner of the front page.

In another instance, for example, on October 16, 2007, just weeks prior to filing the Complaint, Plaintiff received a letter from "UNUM Provident Corporation" concerning the possibility of enhancing his income protection "without having to provide any medical information" in a gambit to solicit even higher premiums. (Exhibit "A") UNUM Provident also corresponded with Plaintiff prior to that October 2007 date on various occasions, one of which was during the purported investigation into evaluating Dr. Simon's claim for disability benefits.

In their brief, Defendants argue that "Unum" and "Unum Provident" are not corporate entities that have been duly organized under the law of any state, yet those names appear on various letterheads.

Defendants said it best in their own motion: "To bind all subsidiaries to the same contractual obligations one would have to prove that the subsidiaries 'have no separate mind, will, or existence of its own." Such have been Defendants' actions.

Accordingly, all of the named Defendants must remain in this action.    In the alternative, however, the Court should note that Defendants have conceded that UNUM Provident Life and Casualty Insurance Company and UNUM Provident Corporation are proper parties to this action and under no circumstances should be dismissed from this Complaint.

C.     **PLAINTIFF PROPERLY STATES A CLAIM FOR FRAUD**

In a desperate attempt to fit a square peg in a round hold, Defendants cite cases tried before your Honor to support the proposition that fraud claims generally do not co-exist with breach of contract claims.  This is sometimes true, except in matters in which the fraud rises above the level of merely bad faith and breach of contract, as in the case before us.  See, Channel Master Corp. v. Aluminum Ltd. Sales, Inc., 4 N.Y.2d 403, 406-407, 151 N.E.2d 833, 835, 176 N.Y.S.2d 259, 262 (1958) (to maintain an action based on fraudulent representations it is sufficient to show that the defendant knowingly uttered a knowingly falsehood intending to deprive the plaintiff of a benefit and that the plaintiff was thereby deceived and damaged.)

Specifically, Plaintiff alleges that although Dr. Simon was paying for, and continues to pay high premiums towards his "own occupation" policy that he believed to his detriment would protect him and his family from exactly the kind of harm that befell him on November 23, 2003, UNUM has intentionally engaged in a "bait and switch" and, with scienter and intention to willfully and knowingly defraud Dr. Simon, processed Dr. Simon's claim for benefits as if it were a cheaper "any occupation" policy.  (Amend. Comp. ¶ 56.)  In other words, UNUM was knowingly substituting Dr. Simon's Cadillac as if it were a Chevy Nova.

It is important for the Court to understand the definition of an "own occupation" policy, which carries higher premiums, as distinct from an "any occupation" policy, which is the cheaper, more generic type of policy.

An "own occupation" policy, defines "total disability" as being "unable to perform the substantial and material duties of [his] Occupation due to an Injury or Sickness."  The less-expensive "any occupation" policy provides less protection because the severity of the injury must be such that the insured be unable to "perform the duties of any gainful occupation for which [he is] reasonably fitted by education, training, or experience."  This is not the threshold

found in Dr. Simon's policy. In other words, if Dr. Simon can perform the duties of *some* unrelated medical occupation, such as inspecting toenail fungus or serving as an expert witness, then he is not "totally disabled" under an "any occupation" disability policy. But that is not the case here. Under Dr. Simon's "own occupation" policy, which Dr. Simon paid (and continues to pay) the high premiums that Defendants continue to demand, it only matters that he cannot perform the "material and substantial duties of his occupation" such as delivering a baby or performing caesarian section. So long as he is unable to perform the "material and substantial duties" of his occupation (i.e., delivering babies) then he is "totally disabled" under the "own occupation" UNUM policies. Dr. Simon sufficiently plead in his Amended Complaint that UNUM knew this.

Dr. Simon purchased an "own occupation policy" from UNUM and not an "any occupation policy" from UNUM. This is undisputed. Notwithstanding, UNUM knowingly investigated and processed Dr. Simon's claim for benefits as if he was insured under the more broad "any occupation policy" type of plan while purposefully, with knowledge and scienter, making Dr. Simon believe his claims were being processed under an "own occupation policy".

For example, in a letter dated January 19, 2004, UNUM wrote to Dr. Simon concerning his "claim for Total Disability benefits" but yet required that he produce copies of his 2002 and 2003 business and personal tax returns, which have nothing to do his ability to perform the "material and substantial duties" of his occupation. (Exhibit "B") In fact, when benefits became due and the day after the Elimination Period (the day after the 365th day following the day of his injury), UNUM failed to commence making "total disability" benefit payments, nor did they make a request or arrange for an independent medical examiner to evaluate Dr. Simon's disabled left hand. It was not until September 2005, nearly two (2) years following his injury, that

UNUM finally had its own doctor examine Dr. Simon's injury, after which there were no further follow-up consultations by UNUM with any other independent medical examiners. (Amend. Comp. ¶ 52.)   UNUM failed to perform any ergonomic assessment or functional capacity evaluation to assist it in evaluating Dr. Simon's claim, nor were any second opinions by independent OB/GYNs performed for the purpose of assessing Dr. Simon's total disability. (Amend. Comp. ¶ 53.)

Through its actions, UNUM knowingly, purposefully, and with scienter ignored whether Dr. Simon could perform the "material and substantial duties" of his occupation.   UNUM intended that Dr. Simon rely to his detriment upon its material misrepresentations concerning any purported investigation or determination concerning Dr. Simon's injury and claim for benefit stemming therefrom.   (Amend. Comp. ¶ 54.)   They did not investigate his "total disability" claim, yet they continued charging him costly premiums.

In furtherance of this fraud, in a letter dated February 23, 2004, UNUM notified Dr. Simon of a "waiver of premium" which is available only in instances of "total disability" – which Dr. Simon believed he was being considered for.  Notwithstanding, within the same notice UNUM demands from Dr. Simon highly confidential documents of such a magnitude as to cause him huge mental anguish, not to mention substantial unnecessary personal expense unnecessary and irrelevant in "total disability" claims.  (Exhibit "B")

UNUM's actions are beyond a claim of breach of the implied covenant of good faith and fair dealing and mismanagement of Dr. Simon's claims, but rather engaged in an intentional and affirmative motive to deceive Dr. Simon into believing they were investigating a "total disability" claim when they were taking clear steps toward investigating claims of lesser benefits knowingly ignoring the "total disability" standard.  See, Rocanova v. Equitable Life Assur.

Soc'y, 83 N.Y.2d 603, 634 N.E.2d 940, 1994 N.Y. LEXIS 1064, 612 N.Y.S.2d 339 (N.Y. 1994).

It is alleged that UNUM fraudulently collected premiums from Dr. Simon for an "own occupation policy" with the intention of never honoring any claim for "total disability."  In committing its fraud, UNUM required that Dr. Simon provide materials, documentation and information that is never required in a determination of whether an insured party is able to perform the "substantial and material duties" of his occupation under an "own occupation" policy.  Rather, UNUM tried to determine whether an insured can "perform the duties of any gainful occupation for which [he is] reasonably fitted by education, training, or experience" under an "any occupation" policy.  (See, Amend. Comp. ¶ 55.)  This was never a definition or a clause in any policy Dr. Simon purchased from UNUM.

Dr. Simon alleged in his Amended Complaint that UNUM had the requisite scienter knowing that Dr. Simon would rely on its misrepresentations.  Dr. Simon alleged that UNUM pretended to be investigating Dr. Simon's claim for "total disability", knowing it never had any intention of properly investigating Dr. Simon's injury as a "total disability" or providing Dr. Simon with any benefits in the event he became totally disabled.   (Amend. Comp. ¶ ¶ 48-49.)  Such actions are distinct from the incidences cited and described by Defendants and are beyond merely not intending to meet its contractual obligations.  Accordingly, this cause of action grounded in fraud must be sustained.

This was all well plead with specificity in the Amended Complaint and it is not within the purview of this Honorable Court to determine whether a fraud actually occurred but whether it is sufficiently plead and, as distinguished from prior Unum cases before this Court, such claims are most certainly plead and with specificity, thereby precluding dismissal.

13

**D.    THE CONSUMER FRAUD CLAIM MUST BE SUSTAINED**

Defendants' own citations stymies its arguments supporting dismissal of the consumer fraud claim. Defendants argue that "private contract disputes unique to the parities. . . [do] not fall within the ambit of the statute [GBL § 349]." (See, Def. Mem. at 9, citing, New York Univ. v. Cont'l Ins. Company, 87 N.Y.2d 308, 320 (N.Y. 1995) (dismissing claim because a dispute over policy coverage is unique to the parties and does not affect the public at large). In that case, the disputed policy was *unique* to the parties because it was specifically negotiated to accommodate very specific requests and concerns of the insured. The only thing *unique* about Dr. Simon's UNUM Policies is that his name appears on the signature line.

Plaintiff clearly alleges that Dr. Simon purchased from UNUM standard form policies that are offered and are available to consumers at large. (Amend. Comp. ¶ ¶ 20, 89.)

Defendants do argue that the UNUM Policies were uniquely negotiated or tailored to Dr. Simon's specific needs. There is nothing in the Amended Complaint that suggests that Dr. Simon negotiated the UNUM Policies or that the standard form policies issued to Dr. Simon were in any way, shape or form amended or changed to comport to the specific needs of Dr. Simon different from the public at large. The UNUM Policies are the standard form policies issued to consumers at large. Dr. Simon's injuries resulting from his consumer purchased policy is not unique and falls within the ambit of N.Y. Gen. Bus. Law § 349 and meets it prima facie threshold. Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N. A., 85 N.Y.2d 20 (N.Y. 1995).

**E.    PLAINTIFF PROPERLY STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Defendants erroneously believe that the sole issue at dispute is over the definition language in the UNUM policies, which is not the issue at all. The language in the policies is

14

clear.  What Dr. Simon contends is that UNUM was very well aware of the language of the definition of "total disability" in the UNUM Policies, but intentionally disregarded those definitions and embarked on a campaign of extreme and outrageous conduct with the intention of causing severe emotional distress.  See, Howell v. New York Post Co., 81 N.Y.2d 115 (N.Y. 1993).

As discussed, UNUM requested documents, records and other materials when none of those documents are remotely necessary to determine whether Dr. Simon can deliver a baby or perform complex micro-surgery.  As  discussed earlier, it took nearly two years for an independent medical examiner to evaluate of Dr. Simon's disabled left hand. Such conduct is tortious.

In the Amended Complaint, Dr. Simon alleged that UNUM's conduct has risen to the level of such an egregious nature it is extreme and outrageous conduct that goes beyond the ambit of a simple breach of contract.  (Amend. Comp. ¶ 44.)  Dr. Simon further alleged in his Amended Complaint that UNUM intended to cause Plaintiff severe emotional distress.  (Amend. Comp. ¶ 45.)

Accordingly, Dr. Simon's claim for intentional infliction of emotional distress must be sustained.

**F.     PLAINTIFF PROPERLY ALLEGES BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

Defendants attempt to mince words to dismiss this claim for breach of covenant of good faith and fair dealing.  Implicit in every contract is a promise or covenant of good faith and fair dealing.  Rowe v Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 412 N.Y.S.2d 827, 385 N.E.2d 566 (1978).  This covenant is breached when a party "acts in a manner that, although not expressly

forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." <u>Jaffe v Paramount Communications Inc.</u>, 222 A.D.2d 17, 22, 644 N.Y.S.2d 43 (1996).

Dr. Simon alleged that UNUM had pretended to be investigating Dr. Simon's claim for "total disability", knowing it never had any intention of properly investigating Dr. Simon's injury as a "total disability" or providing Dr. Simon with any benefits in the event he became totally disabled. (Amend. Comp. ¶ ¶ 48-49.) Dr. Simon further alleged that UNUM, in bad faith, has engaged in a practice and pattern of inundating Dr. Simon with unduly burdensome, irrelevant and unreasonable requests for information in a disingenuous effort to find a reason not to pay Dr. Simon's disability claims, to which he is entitled. (Amend. Comp. ¶ 43.)

Accordingly, Dr. Simon's claim for Breach of Covenant of Good Faith and Fair Dealing must be sustained.

## CONCLUSION

For the reasons stated, this Honorable Court should deny Defendants' in its entirety.

Dated: New York, New York
       May 16, 2008

                    Respectfully submitted,

                    **SACK & SACK, ESQS.**

                    By:    */s/ Jonathan Sack*
                           Jonathan Sack, Esq. (JS 1835)

                    110 East 59th Street, 19th Floor
                    New York, New York 10022-2050
                    Tel:    (212) 702-9000
                    Fax:    (212) 702-9702
                    Attorneys for Plaintiff, **Jean P. Simon, M.D.**

**EXHIBIT A**

# *PROVIDENT*
# *LIFE AND CASUALTY*
**Insurance Company**

1 Fountain Square
Chattanooga, TN 37402





Jean P Simon
36 East 70th Street
New York Ny 10021



UNUMPROVIDENT CORPORATION
1 Fountain Square
Chattanooga, Tennessee 37402

October 16, 2007

Jean P Simon
36 East 70th Street
New York Ny 10021

RE:    Guaranteed Physical Insurability Benefit
       Disability Income Protection Policy:  031097-36-0006084608
       Option Date: 01/01/2008

Dear Dr. Simon:

Your disability income protection insurance policy contains the Guaranteed Physical Insurability Benefit. This benefit allows you to apply for more income protection without having to provide any medical information. The amount of additional income protection you may qualify for depends on your earned income, age, and employment status, the amount of all income protection insurance you have and the aggregate amount remaining available under your policy.

Under the provisions of your policy, you may qualify for as much as $1,000 additional monthly benefit. You currently have $14,000 monthly benefit, and your current term premium is $392.35.

If approved, your standard level monthly premium would increase $5.93 for each $100 of monthly benefit added, based on your age as of the date of this letter. Should your age increase before you apply for additional coverage, the premium would be higher.

The policy option date is 01/01/2008. You may apply for an increase within 60 days prior to or 31 days after this option date. To apply for an increase in your monthly benefit, complete, sign, date and return the enclosed application in the postage-paid envelope. You must submit a copy of your most recent Federal Tax Return Form 1040 (pages 1 and 2) and most recent W2 or Schedule C along with the application.



(Continued on Reverse)



**UnumProvident Corporation**
1 Fountain Square
Chattanooga, Tennessee 37402

**ARN: 025870015289**

## UNUM INCOME PROTECTION APPLICATION - FIO/FAO/GPI

This Application can be used for individual and/or business products insured by the following company:
**Provident Life and Casualty Insurance Company (herein referred to as "the Company.")**

This application cannot be used on an FAO special option when there has been a change in employer-provided Group LTD coverage.
I hereby apply for insurance based on the following representations:

## SECTION 1  PERSONAL INFORMATION

Proposed Insured: (herein referred to as "You," "Your," "I," "Me" or "My")

| 1. Name:(Last, First, Middle)  Simon, Jean P | Professional Designation  Md | 2. Date of Birth:(Mo/Day/Yr)  06/01/1954 |
|---|---|---|

3.(a) Social Security Number:   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          (b) Residence Phone: (   )

4.   Residence Address: Street/Apt No./P.O.Box No.                City            State      Zip

5.   Mailing Address (if different from above):Street/Apt No./P.O.Box No.      City      State      Zip

6.   Policy Number:   031097-36-0006084608

7.(a) Amount to be Exercised: $_____  (b)If Business Buy-Out, indicate if ☐ Lump Sum or ☐ Periodic Pay/Monthly Funding

8.   Option Date (Mo/Day/Year):   01/01/2008

9.   Are you currently suffering a disability that prevents You from working?... ☐ Yes ☐ No (If "Yes" please provide details below)

10.  (a) Current Employer:                          (b) Business Phone:(   )

(c) Business Address: Street/Suite No./P.O. Box No.          City            State      Zip

11.  (a) Current Occupation:

(b) Exact Duties:

## SECTION 2  EXISTING AND/OR PENDING INSURANCE INFORMATION

1.   Do You have, are You applying for, or will You become eligible within the next twelve months for other:
(A) Individual   (C) Association   (D) LTD   (E) Employer Sick Pay Disability Income Coverage
(F) Overhead Expense   (G) Buy-Out   (K) Key Person?............. ☐ Yes ☐ No (If "Yes", give details below)

| Name of Ins Company(s) or Source(s) (including Provident/Unum/Paul Revere) Include Policy # | Type of Coverage (Use letter code above) | Monthly Amount/ Face Amount Base SIS | Elimination Period | Benefit Period | Please indicate whether this coverage will be replaced* or changed (describe the change) | Effective date of discontin-uance | Paid by employer and not included in Your taxable income? YES    NO |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  | ☐    ☐ |
|  |  |  |  |  |  |  | ☐    ☐ |
|  |  |  |  |  |  |  | ☐    ☐ |

*Please complete and submit state required replacement forms if needed.
Additional Details:

## SECTION 5
## DECLARATION, AGREEMENT AND AUTHORIZATION

It is understood and agreed as follows:

1. I have read the statements and answers recorded above. They are true and complete and correctly recorded. They will become part of this Application and any policy(ies) issued on it.
2. I will permanently discontinue any group or individual policy(ies) shown to be discontinued in answer to Section 2, Question 1 on or before the date(s) indicated. The Company will rely on such answers in determining the amount of, if any, insurance it will issue.
3. Any increase in insurance must be justified according to the current underwriting limits of UnumProvident Corporation and its affiliates. It will become effective on the Option Date, provided this increase in coverage is approved.
4. The Company is authorized to obtain an investigative consumer report on Me.
5. If coverage applied for qualifies as a benefit under an Employee Welfare Benefit plan established or maintained by the employer and governed by the Employee Retirement Income Security Act (ERISA), UnumProvident Corporation and its affiliates will be the claims administrator and have full, final, binding, and exclusive discretion to determine benefits. Pursuant to ERISA the policyholder will be entitled to appeal any claims decision.
6. I have received a copy of the Notice of Information Practices (including Medical Information Bureau Notice and Fair Credit Reporting Act Notice).
7. I UNDERSTAND that if My answers on this application are incorrect or untrue, the Company may have the right to deny benefits or rescind My increase in coverage.
8. Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.
9. If I request an issue date later than the date of this application, I understand that I may be waiving certain rights and guarantees under the Receipt and Conditional Insuring Agreement.

_____
Dated

(X)_____
Signature of Insured

031097-0003

(X)_____
Signature of Policy Owner
(if different than the insured)

### Disclosure Authorization Form

I AUTHORIZE: insurance (or reinsuring) company, consumer reporting agency, Medical Information Bureau Inc., My insurance agents, employers or any other person or firm having any information needed to determine My eligibilty for insurance; to give to UnumProvident Corporation and its affiliates, its employees and agents, My broker or any consumer reporting agency, all such information. This may include (but is not limited to) information about My business and personal finances.

I UNDERSTAND the information obtained with this authorization will be used by the Company to determine My eligibility for insurance. A photocopy of the authorization is valid. I or My authorized representative may request a copy of this authorization. This authorization will be in force for two years and six months from the date shown below.

(X) _____
Signature of Insured

_____
Date

## THIS DECLARATION, AGREEMENT AND AUTHORIZATION MUST BE PROPERLY SIGNED, INCLUDING INSURED'S SIGNATURE, BEFORE APPLICATION CAN BE PROCESSED.

## SECTION 6 NOTICE OF INFORMATION PRACTICES

### This Notice must be given to Insured
(Including Medical Information Bureau Notice and Fair Credit Reporting Act Notice)

In considering Your application, information from various sources will be considered. These include Your statements, the results of Your physical examination (if required), and reports we get from doctors or medical facilities which have attended to You.

### MEDICAL INFORMATION BUREAU, INC. (MIB)
Pre-Notice: Information about Your insurability or claims will be treated as confidential. We, or our reinsurers, may, however, make a brief report thereon to MIB, a nonprofit membership organization of life insurance companies, which operates an information exchange on behalf of its members. If You apply to another MIB member company for life or health insurance coverage, or a claim for benefits is submitted to such company, MIB, upon request, will supply such company with the information in its file.

Upon receipt of a request from You, MIB will arrange disclosure of any information it may have in Your file. If You question the accuracy of information in its file, You may contact MIB and seek a correction in accordance with the procedures set forth in the federal Fair Credit Reporting Act. The address of the MIB's information office is Post Office Box 105, Essex Station, Boston Massachusetts 02112, telephone number (617) 426-3660.

We, or our reinsurers, may also release information to our reinsurers and/or other life insurance companies to whom You apply for life or health insurance, or to whom a claim for benefits is submitted.

### COMPLIANCE NOTICE
We appreciate Your application for insurance coverage. We wish to inform You that an investigative consumer report may be ordered as to Your insurability. This report may include, if applicable, information as to Your character, general reputation, personal characteristics, and mode of living as may be obtained through interviews with family members, friends, neighbors and associates. You may also request to be interviewed in connection with its preparation. If You would like to know whether such a report was ordered and, if so, receive additional information as to its nature and scope including the name, address and phone number of the reporting agency, we will be pleased to furnish this information upon Your written request to the address below. You may also receive a copy of such report by making written request to us, Your agent or the reporting agency after proper identification.

### PRIVACY NOTICE
Personal information may be collected from persons other than You. Such information, as well as other personal or privileged information subsequently collected by us or Your broker may in certain circumstances be disclosed to third parties without authorization and to affiliates of the company only as permitted by law. You have a right of access and correction with respect to all personal information collected. A detailed notice of information practices will be furnished to You upon request.

If You need any assistance, please feel free to contact Your broker or call or write to:
UnumProvident Corporation, Attn: Underwriting, 1 Fountain Square, Chattanooga, TN  37402-1338.



**EXHIBIT B**



January 19, 2004

Jean P. Simon, M.D.
710 Park Avenue
New York NY 10021


Re: Claim # 36-06084608-001

Dear Dr. Simon:

We are writing to you at this time to confirm our recent telephone conversation and to update you in regard to your claim for Total Disability benefits.

It is our understanding that the date you last worked fulltime in your occupation was November 21, 2003, and that you have returned to work in a limited capacity working approximately 10 hours per week.

As discussed, the policy provides for a monthly Total Disability benefit of $14,000 after a 365 day elimination period. Elimination Period means the number of days that must elapse in a period of disability before benefits become payable. During our telephone conversation, you indicated that you were not aware that the elimination period was 365 days. As such, enclosed is a duplicate policy for your review.

The policy contains a Waiver of Premium provision that provides,

"If, during a period of disability, Injuries or Sickness results in more than 90 days or Total and/or Residual Disability, we will:
1. Refund any premiums which became due and were paid while you were so disabled: and
2. Waive the payment of each premium which thereafter becomes due for an s long as the period of disability lasts. After it ends, to keep your policy in force, you must again pay any premiums which become due".

At this time, we are in the process of obtaining records from your attending physician so that we may complete our evaluation of your claim.

During the elimination period, we will require that you and your attending physician complete periodic Supplemental Statements to update your file. Also, we will need copies

of your 2002 and 2003(when available) business and personal tax returns including all schedules and attachments to determine your Prior Monthly Earnings. For each month disability is being claimed, after the elimination period, we will need copies of monthly Profit and Loss Statements and/or other documentation to determine your Current Monthly Earnings.

So that we may verify your occupational duties prior to the onset of disability, please provide us with copies of yearly computer print outs and total of all CPT codes billed to all payers under all tax ID numbers and or social security numbers for each year beginning January 1, 2002 through the current time. The reports should include CPT codes, description of code, # of units and charges billed. The last page of the report should include a total of all columns.

Additionally, there is a question regarding the status of policy 0006122493. Our records indicate that this policy was cancelled upon your request effective February 1, 1997. Enclosed is a copy of the request to cancel the policy and the confirmation that it was cancelled.

The enclosed Claimant's Supplemental Statement should be completed by you and your attending physician and returned to us as soon as possible so that we may determine your eligibility for waiver of premiums.

Dr. Simon, we are committed to making a prompt decision on your claim. We will determine your eligibility for benefits as soon as reasonably possible following receipt of all necessary documentation.

If you have any questions, please contact our office at 888-226-7959, extension 75075.

Sincerely yours,

Carolyn E. Semon, ALHC, ACS
Lead Disability Benefits Specialist
Provident Life and Casualty
Insurance Company

Encl.: PR, RE