SCANNED 

**SACK & SACK, ESQS.**
110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
*Attorneys for Plaintiff*

UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

JEAN P. SIMON, M.D.,

                                 Plaintiff,

— against —

UNUM GROUP F/K/A UNUMPROVIDENT
CORPORATION AND PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY,

                                 Defendants.
------------------------------------------------------------------x

Civ. No.: 07-cv-11426 (SAS)

ECF CASE

AMENDED COMPLAINT

JURY TRIAL REQUESTED

      Plaintiff, JEAN P. SIMON, M.D. ("*Dr. Simon*" or "*Plaintiff*") by his attorneys, Sack & Sack, Esqs., as and for its complaint, alleges as follows:

### NATURE OF ACTION

      1.    This action is brought by Dr. Simon against UNUM GROUP F/K/A UNUMPROVIDENT CORPORATION AND PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY (together hereinafter referred to as, "*UNUM*" or "*Defendants*").

      2.    This action is brought in breach of contract by Defendants' based upon their failure to pay Dr. Simon accrued disability benefits pursuant to disability policies entered into between UNUM and Dr. Simon.

1

3. This action is further grounded in fraud based upon UNUM's actions described herein.

4. UNUM willfully and wrongfully breached the terms and conditions of the UNUM Policies issued to Plaintiff by: (i) wrongfully withholding Plaintiffs disability benefits; and (ii) otherwise failing to honor provisions of the UNUM Policies during the "period of total disability" that continues through this date.

## THE PARTIES

5. At all times hereinafter mentioned, Plaintiff is a citizen of the County, City and State of New York.

6. At all times hereinafter mentioned, UNUM is a foreign corporation, authorized to do business in the State of New York, and doing business in the State of New York.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a). The parties are of diverse citizenship and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is properly placed in the United States District Court for the Southern District of New York since the Plaintiff resides herein, the Defendants do business here, the witnesses are located here, and this is the most convenient place for the trial of this action.

## FACTS COMMON TO ALL COUNTS

### DR. SIMON'S EDUCATIONAL AND EMPLOYMENT HISTORY

10. Dr. Simon is a very well respected obstetrician / gynecologist and gynecological surgeon ("*OB/GYN*"), and had been highly-ranked consistently for 20 years prior to the incidents leading up to this Complaint, as one of the top OB/GYNs in New York.

11. Dr. Simon graduated from the University of Paris in 1982, after five years of residency in France, specializing in OB/GYN surgery.

12. In September 1982, Dr. Simon moved to the United States and began an OB/GYN residency, training at Columbia Presbyterian in 1982, St. Luke's Roosevelt Hospital in 1984 and Boston City Hospital from 1986 to 1988, before becoming a Board Certified OB/GYN.

13. Beginning in 1988, Dr. Simon went into private practice on the Upper East Side of Manhattan, with admitting privileges at Beth Israel Hospital, Mount Sinai Hospital (since 1991) and New York Presbyterian Hospital (since 2000).

### DR. SIMON'S DUTIES AND RESPONSIBILITIES AS AN OB/GYN

14. As a Board-certified OB/GYN, the substantial and material duties of his occupation required Dr. Simon to perform all the duties of his OB/GYN specialty, including, but not limited to, deliveries and surgical procedures in a hospital setting, ranging from normal vaginal delivery (where his left hand had to guide the fetal head down the vaginal canal, helping with the rotation, deflexion, extension of the fetal head, etc.) to more complicated deliveries such as forceps, vacuum extraction and cesarean sections.

15. As a solo practitioner in his OB/GYN specialty, Dr. Simon personally delivered all the babies of all his patients as a substantial and material duty of his occupation. The deliveries and other substantial and material duties of his occupation required Dr. Simon to be present at the

hospital, on the Labor and Delivery floor, with his parturient patient, as part of the process of delivering babies. All of the various baby-delivery-protocols require an extraodinarily high degree of strength, dexterity, mobility, control and sensitivity in order to prevent the risk of harm to the baby and the mother. These protocols ranged from normal vaginal delivery (where the left hand must guide the baby's head down the vaginal canal, then assist with the rotation, deflexion, and extension of the fetal head, etc.) to more complicated deliveries such as forceps, vacuum extraction and cesarean section.

16. Oftentimes, in both emergency and non-emergency situations, as an OB/GYN specialist, Dr. Simon would be required to perform caesarian sections involving open abdominal surgery (requiring full participation of both of his hands, the left being inside the uterus, under the fetal head, with full wrist extension guiding the fetal head through the uterus).

17. In addition to the Obstetrical care, Dr. Simon's practice of his OB/GYN specialty included a complete range of gynecological (non-obstetric) medical surgical procedures for non-pregnant women, including minor and major surgical procedures performed in the hospital setting. Because Dr. Simon received his first OB/GYN specialty training in France, he trained in the most sophisticated, complex, intricate microsurgical, laparoscopy, and vaginal hysterectomy procedures with the French pioneers who invented and developed the technology and protocols that are today the gold standard of gynecological surgery. These procedures, which require the highest degree of skill and training, also require the highest degree of fine dexterity and control, and were the mainstay of Dr. Simon's OB/GYN specialty practice.

## DR. SIMON'S CONTRACT WITH UNUM

18. On or about January 1, 1993, Dr. Simon purchased disability policies from Defendant UNUM for purposes of purchasing disability policies in the event he were to become disabled (or "totally disabled") by means of his occupation as an OB/GYN specialist.

19. Dr. Simon, as an individual consumer, obtained two (2) standard form disability insurance policies from UNUM: (i) Policy Number 36-3376084608, effective January 1, 1993 ("*Policy 1*"); and (ii) Policy Number 36-1737-6122493, effective August 1, 1995 ("*Policy 2*", together with Policy 1, the "*UNUM Policies*" or the "*Plan*"). (Exhibit "A")

20. The UNUM Policies are standard form policies that are offered and are available to consumers at large.

21. According to the UNUM Policies, Dr. Simon is entitled to disability proceeds in the event he suffers a "Total Disability" or becomes "totally disabled," which is defined in the UNUM policies as follows:

```
Total Disability or totally disabled
means that . . . due to Injuries or
Sickness you are not able to perform
the substantial and material duties of
your occupation . . .
```

22. The UNUM Policies promise to pay benefits to Dr. Simon if he suffered a "total disability" that impaired his ability to perform the "the substantial and material duties of [his] occupation" as an OB/GYN specialist.

## DR. SIMON'S "TOTAL DISABILITY"

23. On or about November 23, 2003, Dr. Simon became "Totally Disabled" in accordance with the terms defined in the UNUM Policies while performing the material and substantial duties of his occupation as an OB/GYN specialist on a regular basis according to the terms of the UNUM Policies.

24. Specifically, on or about November 23, 2003, Dr. Simon suffered a massive abscess/cellulitis of the left hand.

25. As a consequence of his injury, Dr. Simon was treated by Dr. Scott Wolfe, Chief, Hand & Upper Extremity Surgery, Hospital for Special Surgery, at Hospital for Special Surgery in New York City. Subsequently, Dr. Simon was diagnosed with acute septic tenosynovitis of the left hand and was immediately taken to the OR, where he underwent emergency surgery under general anesthesia.

26. As part of the surgery, an approximately 7-inch vertical incision was performed to the palmar aspect Dr. Simon's left hand, wrist and lower forearm. The procedure was a three-hour procedure, which included debridement of deep space infection and horseshoe abscess, and lysis of adhesions.

27. Dr. Simon was hospitalized at Hospital for Special Surgery in New York City. The incision was left open to allow for the drainage of the abscess. Dr. Simon also received intravenous antibiotics to treat the severe gram negative and positive infections.

28. Dr. Simon also underwent two additional surgical procedures under general anesthesia, for a total of three surgical procedures under general anesthesia. The second procedure took place on or about November 28, 2003, to complete the debridement and irrigate the deep space

of the left hand. The initial incision was partially closed, but left open at the level of the wrist to allow for secondary healing. The third procedure took place in or around December 2003.

29. On or about December 4, 2003, Dr. Simon was discharged from the hospital and allowed to return home with a 24-hour-a-day peripherally inserted central catheter ("*PICC*") directly to his heart, in order to administer the massive antibiotics he required for one month. A nurse visited Dr. Simon every day to change the antibiotic supply, check the dressing, ensure there was no infection at the PICC site, and to ensure that the pump of the PICC was functioning properly.

30. Dr. Simon underwent significant hand therapy with an Occupational Therapist at the Hospital for Special Surgery in New York City.

31. Following his injury and hospitalization, and the removal of his PICC, Dr. Simon underwent significant therapy and treatment by medicine's top specialists in the field, including Scott Wolfe, MD (Chief of Hand Surgery at the Hospital for Special Surgery) and a second opinion by Stephen Glickel, MD (Chief of Hand Surgery Department at St. Luke's Roosevelt Hospital) who confirmed Dr. Wolfe's diagnosis, but to no avail.

32. Currently, Dr. Simon permanently suffers from sequellae from his massive abscess/cellulites of the left hand, which prevents him from performing "the substantial and material duties of his occupation," thereby rendering Dr. Simon "totally disabled" pursuant to the UNUM Policies.

33. As a result of his injuries, Dr. Simon suffers a "total disability" as defined in the UNUM Policies.

34. Dr. Simon is totally disabled from his occupation as an OB/GYN specialist based

upon definitions set forth in the UNUM Policies and pursuant to prevailing law.

35. Dr. Simon has and continues to receive care by a Physician appropriate for the condition causing his disability.

36. Dr. Simon's inability to perform the "the substantial and material duties of his occupation" thereby rendering Dr. Simon "totally disabled" is supported by the diagnosis of top specialists in the field of Hand Surgery, Doctors Scott Wolfe and Stephen Glickel.

37. All of the foregoing agree that Dr. Simon's duties and responsibilities as an OB/GYN cannot be modified to accommodate his disability.

**UNUM HAS FRAUDULENTLY REFUSED TO HONOR ITS OBLIGATIONS UNDER THE UNUM POLICIES**

38. Despite that Dr. Simon suffers a "total disability" pursuant to the terms of UNUM Policies that renders Dr. Simon eligible to receive full disability benefits, UNUM, in bad faith and without reason, justification or cause, has unilaterally withheld and refused to make any payments to Dr. Simon or otherwise honor the terms, conditions and privileges set forth in the UNUM Policies.

39. Dr. Simon has complied with all reasonable requests for information from UNUM in a timely fashion.

40. Dr. Simon timely submitted an administrative appeal challenging the decision to withhold his disability benefits.

41. Dr. Simon's administrative appeal was denied, thereby exhausting his administrative remedies.

42. Dr. Simon has and continues to pay all of the premiums in order to maintain the UNUM Policies. Furthermore, Dr. Simon has followed all conditions precedent and complied with

all policy requirements for receipt of payment of benefits under the UNUM Policies for being "totally disabled."

43. UNUM has consistently and fraudulently denied Dr. Simon's disability benefits.

44. In refusing to pay Dr. Simon's claims, UNUM, in bad faith, has engaged in a practice and pattern of inundating Dr. Simon with unduly burdensome, irrelevant and unreasonable requests for information in a disingenuous effort to find a reason not to pay Dr. Simon's disability claims, to which he is entitled.

45. At all times herein, Defendants' conduct Dr. Simon has risen to the level of such an egregious nature it is extreme and outrageous conduct.

46. Defendants intended to cause Plaintiff severe emotional distress.

47. UNUM intended to defraud Dr. Simon by collecting and continuing to collect premiums with the intention that Dr. Simon believe that he is protected by UNUM's representations.

48. Dr. Simon relied and continues to rely upon UNUM's material misrepresentations that Dr. Simon is entitled to disability benefits in the event he suffers a total disability.

49. UNUM never had any intention of properly investigating Dr. Simon's injury.

50. UNUM never had any intention of providing Dr. Simon with any protection in the event he became totally disabled.

51. UNUM failed to properly investigate Dr. Simon's injury and, any purported investigation was biased only towards fraudulently finding or inventing a pretense to deny Dr. Simon's claims.

52. UNUM demonstrated, through the acts, correspondence, telephone calls, internal memos and emails of its employees and their superiors that it had no intention of paying Dr. Simon's claims but continued to carry on conversations and correspondence with Dr. Simon pretending to be doing a purported investigation into Dr. Simon's injury

53. It was only in or about September 2005, nearly two (2) years following his injury, that UNUM finally had its own doctor examine Dr. Simon's injury, after which there were no further follow-up consultations with any other independent medical examiners.

54. Furthermore, UNUM failed to perform any ergonomic assessment or functional capacity evaluation to assist it in evaluating Dr. Simon's claim, nor were any second opinions by independent OB/GYNs performed for the purpose of assessing Dr. Simon's total disability.

55. UNUM intended that Dr. Simon rely to his detriment upon its material misrepresentations concerning any purported investigation or determination concerning Dr. Simon's injury and claim for benefit stemming therefrom.

56. Unum pretended to process Dr. Simon's claim through its appeals process but never addressed the issues of whether or not Dr. Simon is able to perform the substantial and material duties of his occupation.

57. Although Dr. Simon was paying for, and continues to pay high premiums towards his "own occupation" policy that he believed to his detriment would protect him and his family from exactly the kind of harm that befell him on November 23, 2003, UNUM has intentionally engaged in a "bait and switch" and with scienter and intention to willfully and knowingly defraud Dr. Simon, processed Dr. Simon's claim for benefits as if it were a cheaper "any occupation" policy.

58. During the alleged appeal process UNUM pretended to enter into settlement discussions with Dr. Simon.

59. In September 2006, three years following the injury, and two years after the elimination period, UNUM ceased the purported appeal of Dr. Simon's claims and "remanded" his claim to the initial claims review department in a further "bad faith" effort to withhold benefits, to which Dr. Simon is entitled.

60. UNUM then made more irrelevant and unreasonable requests for information about Dr. Simon's injury, his occupation and even his wife's personal information in a disingenuous effort to find a reason not to pay Dr. Simon's claim for benefits.

61. UNUM continues to fraudulently refuse to properly investigate whether or not Dr. Simon is able to perform the substantial and material duties of his occupation.

62. UNUM's actions, apart from its obligations under the UNUM Policies, are morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to it civil obligations.

63. In addition, apart from the fraud and bad faith actions of UNUM, despite the provision contained in the UNUM Policies providing that benefits will be paid for "a period of total disability," UNUM willfully, wrongfully and uniformly breached and continue to breach the express terms and conditions of the UNUM Policies by refusing to pay benefits accumulated since November 23, 2003.

64. As a result of Dr. Simon's injury, which has interfered with his ability to perform Obstetrical care and other services of his OB/GYN specialty, Dr. Simon's former patients have departed the practice.

65. Additionally, as a result of Dr. Simon's injury, which prevents him from performing the substantial and material duties of his occupation (i.e., the OB/GYN services of his specialty), Dr. Simon no longer receives referrals from, among others, general surgeons, internists, urologists, family practioners, nor from patient's family members, friends, colleagues and acquaintances.

66. Defendant UNUM has made no meaningful attempt or effort to rehabilitate, negotiate or deal in good faith with Dr. Simon.

67. Defendant UNUM has engaged in a variety of unethical and illegal activities forcing Dr. Simon to file a lawsuit.

68. Dr. Simon asks this Court to order UNUM to honor the UNUM Policies immediately.

69. UNUM has breached its contracts with the Dr. Simon by refusing to make payments to him under the terms of his disability policies.

70. Dr. Simon has incurred significant losses as a consequence of UNUM's failure and refusal to make payments to him under the terms of his disability policies.

71. By reason of the foregoing, Dr. Simon is entitled to recover all of his damages from the Defendants.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendants:

### COUNT ONE
### (Breach of Contract)

72. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

73. UNUM has breached its contracts with the Dr. Simon by refusing and failing to make payments to him under the terms of his disability policies.

74. By reason of UNUM's breach of contract, Dr. Simon is entitled to recover all of the proceeds due to him under the policies including past premiums paid under the UNUM Policies, to have future premiums waived, as well as to have the Court and a jury establish what future benefits are due and to have them paid to Plaintiff.

75. Plaintiff is also entitled to recover all consequential damages suffered as a result of the Defendants' refusal and failure to pay Plaintiff pursuant to the terms of the policies, including his mental anguish, inconvenience, inability to proceed with his lifestyle, loss of business, and any other consequential damages cause by the Defendants' wrongful refusal to pay Plaintiff under the terms of the policies, that are legally permitted to be recovered by law.

76. By reason of the foregoing, Plaintiff is entitled to recover all of his damages from the Defendants.

### COUNT TWO
### (Breach of Covenant of Good Faith and Fair Dealing)

77. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

78. Implicit in the dealings, agreements and understandings between Dr. Simon and Defendants is a covenant of good faith and fair dealing.

79. The covenant of good faith and fair dealing requires that Defendants not take any action which will have the effect of destroying Dr. Simon's rights to receive the promised financial benefits due him under the UNUM Policies.

80. By failing to properly and fairly provide Dr. Simon with the benefits due him under the UNUM Policies, Defendants have breached the implied covenant of good faith and fair dealing.

**COUNT THREE**
**(Fraud)**

81. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

82. The Defendants have entered into a scheme to defraud the Plaintiff with respect to the sale of disability insurance.

83. The Defendants issue disability policies for which they collect substantial premiums, particularly those policies such as the ones sold to the Plaintiff, then, when the insured makes a legitimate claim under the terms of the UNUM Policies, the Defendants refuse to make any payments at all.

84. The Defendants' conduct described herein amounts to fraud.

85. By reason of the Defendants' fraudulent conduct, Plaintiff has been damaged as set forth above.

86. By reason of the foregoing, Defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

87. By reason of the Defendants' fraudulent conduct, Plaintiff is entitled to recover all of his damages from the Defendants, including actual damages, punitive damages, treble damages and attorney's fees.

## COUNT FOUR
### (Consumer Fraud)

88. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

89. Plaintiff is an individual consumer.

90. The UNUM Policies are standard form policies that are offered and are available to consumers at large.

91. The Defendants have entered into a pattern and scheme to defraud the public and the Plaintiff with respect to the sale of disability insurance.

92. Plaintiff and Defendants occupy disparate bargaining positions.

93. The Defendants issue disability policies for which they collect substantial premiums, particularly those policies such as the ones sold to the Plaintiff, that he must be able to follow his own occupation or disability benefits will be paid, then, when the insured makes a legitimate claim under the terms of the UNUM Policies, the Defendants refuse to make a decision as to when payments should be made, make some payments, and then stop or refuse to make any further payments at all.

94. The Defendants' conduct violates §349 of the General Business Law of the State of New York and constitutes a fraud upon the Plaintiff and the public.

95. By reason of the Defendants' fraudulent conduct in violation of §349 of the General

Business Law, Plaintiff has been damaged as set forth above.

96. By reason of the foregoing, Defendants are jointly and severally liable pursuant to the exceptions set forth in the CPLR.

97. By reason of the Defendants' fraudulent conduct, Plaintiff is entitled to recover all of his damages from the Defendants, including actual damages, punitive damages, treble damages and attorney's fees.

## COUNT FIVE
### (Intentional Infliction of Emotional Distress)

98. Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

99. At all times herein, Defendants' conduct Dr. Simon has risen to the level of such an egregious nature it is extreme and outrageous conduct.

100. Defendants intended to cause Plaintiff severe emotional distress.

101. Defendants' extreme and outrageous conduct, through word and deed, did indeed cause Dr. Simon severe emotional distress.

102. Plaintiff has been injured by reason of Defendants intentional extreme and outrageous conduct.

103. Plaintiff has suffered damages as a result of the injury caused by Defendant's intentional extreme and outrageous conduct.

104. By reason of the Defendants' intentional infliction of emotional distress, Plaintiff is entitled to recover all of his damages from the Defendants, including actual damages, punitive damages, treble damages and attorney's fees.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Honorable Court order the following relief in favor of Plaintiff by determining that:

I. Plaintiff is "totally disabled" pursuant to the language and within the meaning of the UNUM Policies in that he cannot perform each of the material duties of his regular occupation;

II. Defendants must pay all disability benefits in arrears due and owing since the termination of benefits, plus interest, less any applicable "other income benefits", in an amount not less than $20,000,000;

III. Defendants' obligation to pay disability benefits to Plaintiff shall continue as long as he remains disabled, subject to the terms of and the applicable benefit period contained in the UNUM Policies;

IV. Plaintiff shall be entitled to recoup his attorney's fees, as well as all other costs and disbursements of this action;

V. Plaintiff may return to this Court, upon motion, to seek further relief in the event that it becomes necessary;

VI. An award of prejudgment interest, costs, punitive damages (where applicable) and attorneys' fees; and

VII. Such other and further relief that this Honorable Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      June 4, 2008

                Respectfully submitted,

                **SACK & SACK, ESQS.**

                */s/ Jonathan Sack*
                _____
By:   Jonathan S. Sack, Esq. (JS 1835)

                *Attorneys for Plaintiff*
                110 East 59th Street, 19th Floor
                New York, New York 10022
                Tel.: (212) 702-9000
                Fax: (212) 702-9702

UNTIED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Civ. No.: 07-cv-11426 (SAS)

JEAN P. SIMON, M.D.

Plaintiff,

- against -

UNUM, UNUM PROVIDENT, PROVIDENT LIFE AND CASUALTY INSURANCE COMPANY, THE PAUL REVERE LIFE INSURANCE COMPANY, FIRST UNUM LIFE INSURANCE COMPANY, PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, AND UNUM PROVIDENT CORPORATION,

Defendants.

## AMENDED COMPLAINT

SACK & SACK, ESQS.

ATTORNEYS FOR PLAINTIFF

110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
Fax: (212) 702-9702