```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/19/08
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
                             :

**JEAN P. SIMON, M.D.,**             :

                             :

            **Plaintiff,**        :

                             :     **OPINION AND ORDER**

       **- against -**        :

                             :     **07 Civ. 11426 (SAS)**

**UNUM GROUP F/K/A**         :
**UNUMPROVIDENT CORPORATION AND**  :
**PROVIDENT LIFE AND CASUALTY**   :
**INSURANCE COMPANY,**       :

                             :

           **Defendants.**      :

                             :
-------------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Jean P. Simon, M.D. brings this action against Unum Group, formerly known as UnumProvident Corporation, and Provident Life and Casualty Insurance Company (collectively "Unum") alleging five causes of action: (i) breach of contract; (ii) breach of the covenant of good faith and fair dealing; (iii) fraud; (iv) consumer fraud; and (v) intentional infliction of emotional distress. This complaint stems from a dispute regarding disability policies issued by Provident Life and Casualty Insurance Company. Defendants move to dismiss all of the claims with the exception of the breach of contract claim. For the reasons that follow, defendants' motion to partially dismiss the amended complaint is granted

in part and denied in part.

## II.    BACKGROUND

### A.    Facts[1]

Dr. Jean P. Simon is a citizen of the County, City and State of New York.[2] The Unum Group is a Delaware corporation with its principal place of business in Maine.[3] Provident Life and Casualty Insurance Company is a Tennessee corporation with its principal place of business in Tennessee.[4] Simon purchased two standard form disability insurance policies from Provident Life and Casualty Insurance Company (collectively "Unum policies.")[5] The Unum policies promise to pay benefits to Simon if he suffers a "total disability" wherein he is not "able to perform the substantial and material duties" of his "own" occupation as an

---

[1]    The following factual allegations, taken from the Amended Complaint ("Compl."), are accepted as true for purposes of this motion.

[2]    *See* Compl. ¶ 5.

[3]    *See* 6/4/08 Transcript of Telephone Court Conference at 4:8-9 (Defendants' counsel: "They [Unum Group] are a company that's organized in Delaware with a principal place of business in Portland, Maine.").

[4]    *See id.* at 4:13-14 (Defendants' counsel: "They [Provident Life and Casualty Insurance Company] are located in Tennessee and incorporated under the laws of Tennessee.").

[5]    *See* Compl. ¶ 19.

2

OB/GYN specialist.[6] Because an "own occupation" policy refers to the insured's regular occupation or specialty, as opposed to any available employment, this type of policy is more expensive than a more broad "any occupation" policy.[7]

On or about November 23, 2003, Simon suffered a massive abscess/cellulitis of the left hand and became "totally disabled" in accordance with the terms defined in the Unum policies.[8] As a consequence of the injury, Simon was diagnosed by Dr. Scott Wolfe with acute septic tenosynovitis who recommended emergency surgery under general anesthesia. A second opinion by Dr. Stephen Glickel confirmed Dr. Wolfe's diagnosis.[9] Simon subsequently underwent two additional surgeries under general anesthesia.[10] Following this course of treatment, Simon received therapy and further treatment from Dr. Wolfe.[11]

As a result, Simon permanently suffers from sequelae which prevents

---

6    *Id.* ¶ 20.

7    Unum policies, Ex. A to Compl., at 4.

8    *See* Compl. ¶¶ 23-24.

9    *See id.* ¶ 31.

10    *See id.* ¶¶ 25-28.

11    *See id.* ¶ 31.

3

him from performing "the substantial and material duties of his occupation,"

thereby rendering him "totally disabled" from his occupation as an OB/GYN

specialist pursuant to the definitions set forth in the Unum policies.[12]  This

diagnosis is supported by two specialists in the field of hand surgery, Dr. Wolfe

and Dr. Glickel.[13]  As a result of Simon's injury, patients have left his practice, and

patient referrals have decreased.[14]  Since the disability, Simon has incurred

significant losses.[15]

In or about September 2005, Unum's own doctor examined Simon's

injury, after which there were no further follow-up consultations or second

opinions with any other independent medical examiners.[16]  In terms of compliance

with the Unum policies, Simon has followed all conditions precedent, complied

with all policy requirements for receipt of payment of benefits and continues to

make payment toward his policies.[17]  Following a rejection of his claim, Simon

---

[12]     *Id.* ¶¶ 32-34.

[13]     *See id.* ¶ 36.

[14]     *See id.* ¶ 67.

[15]     *See id.* ¶ 72.

[16]     *See id.* ¶ 53.

[17]     *See id.* ¶ 42.

4

submitted an administrative appeal challenging the decision to withhold his

disability benefits.[18] Simon alleges that although he is paying for an "own

occupation policy, defendants are administering his claim based on the terms of an

"any occupation" policy. Simon's administrative appeal was subsequently denied,

thereby exhausting his administrative remedies.[19] According to Simon, defendants

demonstrated, through the acts, correspondence, telephone calls, internal memos

and emails of its employees and their superiors that it had no intention of paying

his claims.[20] In September 2006, Unum remanded Simon's claim to the initial

claims review department and made further requests for information regarding

Simon's injury, his occupation, and his wife's personal information.[21] Simon

claims these requests for information are unreasonable and unduly burdensome.[22]

### B.    Procedural History

Simon originally filed suit in the Supreme Court of the State of New

York seeking actual damages, punitive damages, treble damages, consequential

---

[18]    *See id.* ¶ 40.

[19]    *See id.* ¶ 41.

[20]    *See id.* ¶ 52.

[21]    *See id.* ¶¶ 61-62.

[22]    *See id.* ¶ 44.

damages and attorney's fees in an amount not less than $20,000,000.[23]  In

December 2007, Unum removed this case on grounds of diversity jurisdiction.[24]

On March 27, 2008, Simon filed an amended complaint, which defendants now

move to dismiss in large part.[25]

## III.    APPLICABLE LAW

### A.    Rule 12(b)(6) – Motion to Dismiss

When deciding a defendant's motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), the court must "accept as true all of the factual

allegations contained in the complaint"[26] and "draw all inferences in the light most

favorable to the non-moving party . . . ."[27]  Nevertheless, the court need not accord

"[l]egal conclusions, deductions or opinions couched as factual allegations . . . a

presumption of truthfulness."[28]

---

[23]      *See id.* ¶ II.

[24]      *See* Notice of Removal at 1.

[25]      *See* Defendants' Memorandum of Law in Support of Motion to
Partially Dismiss Amended Complaint at 1.

[26]      *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1975 (2007)
(quotation marks omitted).  *Accord In re NYSE Specialists Sec. Litig.*, 503 F.3d 89,
95 (2d Cir. 2007).

[27]      *In re NYSE Specialists*, 503 F.3d at 95.

[28]      *Id.* (quotation marks omitted).

In deciding a motion to dismiss, the court is not limited to the face of the complaint, but "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."[29]  However, "before materials outside the record may become the basis for a dismissal . . . it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[30]

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[31]  To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[32]  Although the complaint need not provide "detailed factual allegations,"[33] it must "amplify a claim with some factual

---

[29]    *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

[30]    *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[31]    *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[32]    *See Bell Atl.*, 127 S. Ct. at 1970.

[33]    *Id.* at 1964.  *Accord ATSI*, 493 F.3d at 98 n.2 (applying the standard of plausibility outside *Bell Atlantic*'s anti-trust context).

allegations . . . to render the claim *plausible*."[34]   The standard is no longer that a

complaint can be dismissed only if there is "no set of facts" that plaintiff could

prove "which would entitle him to relief."[35]   Rather, the complaint must provide

"the grounds upon which [the plaintiff's] claim rests through factual allegations

sufficient 'to raise a right to relief above the speculative level.'"[36]

### B.   Breach of Covenant of Good Faith and Fair Dealing

It is well-settled that the common law duty of good faith and fair

dealing is an implied term in every contract.[37]   "Under New York law, a duty of

good faith and fair dealing is implicit in every contract, but breach of that duty is

merely a breach of the underlying contract."[38]   If the allegations underlying the

---

[34]     *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

[35]     *Bell Atl.*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45, 46 (1957)). *Accord id.* ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard.").

[36]     *ATSI*, 493 F.3d at 98 (quoting *Bell Atl.*, 127 S. Ct. at 1965).

[37]     *See Cross & Cross Properties Ltd. v. Everett Allied Co.*, 886 F.2d 497, 501-02 (2d Cir. 1989) ("Since the duty of good faith and fair dealing is implied in every contract, contracting parties' fields of discretion under a contract are bounded by the parties' mutual obligation to act in good faith.").

[38]     *Geler v. National Westminister Bank USA,* 770 F. Supp. 210, 215 (S.D.N.Y. 1991). *Accord Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir. 1982).

breach of the implied covenant of good faith claim and the breach of contract

claim are the same, then the good faith claim is "redundant" and cannot survive a

motion to dismiss.[39] In sum, "New York law . . . does not recognize a separate

cause of action for breach of the implied covenant of good faith and fair dealing

when a breach of contract claim, based on the same facts, is also pled."[40]

## C.    Fraud

When a plaintiff alleges fraud, the defendant must be given more than

notice of the claim. Rule 9(b) requires that "party must state with particularity the

circumstances constituting fraud or mistake. Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."[41] Rule 9(b) must be read

in conjunction with Rule 8's requirement of a "short and plain statement" of the

claim."[42] To prevail on a common law fraud claim under New York law, a

plaintiff must prove the following by clear and convincing evidence: (i) a

---

[39]    *See Ari & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003).

[40]    *Harris v. Provident Life & Accidental Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). *Accord Butvin v. Doubleclick Inc.*, No. 99 Civ. 4727, 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001).

[41]    Fed. R. Civ. P. 9(b).

[42]    *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) (quoting Fed. R. Civ. P. 8(a)(2)).

misrepresentation or omission of material fact; (ii) that the defendant knew to be

false; (iii) that the defendant made with the intention of inducing reliance; (iv)

upon which the plaintiff reasonably relied; and (v) that caused injury to the

plaintiff.[43]

New York law "precludes fraud actions where the 'only fraud charged

relates to a breach of contract.'"[44]  "'A contract action cannot be converted to one

for fraud merely by alleging that the contracting party did not intend to meet its

contractual obligations.'"[45]  "General allegations that defendant entered into a

contract while lacking the intent to perform it are insufficient to support" a claim

---

[43]    *See Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d Cir.
2006) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir.
1997). *See also Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001); *Lama
Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 421 (1996).

[44]    *Lomaglio Assoc., Inc. v. LBK Mktg. Corp.*, 892 F. Supp. 89, 94
(S.D.N.Y. 1995) (quoting *Miller v. Volk & Huxley, Inc.*, 355 N.Y.S.2d 605, 607
(1st Dep't 1974)). *Accord Metropolitan Transp. Author. v. Triumph Advertising
Productions, Inc.*, 497 N.Y.S.2d 673, 675 (1st Dep't 1986) ("Given that the
alleged fraudulent misrepresentations set forth in the first cause of action [for
breach of contract] relate only to the specifications of the contract . . . the second
cause of action [for fraud] is redundant . . . .").

[45]    *Sichel v. Unum Provident Corp.*, 230 F. Supp. 2d 325, 328 (S.D.N.Y.
2002) (quoting *Rocanova v. Equitable Life Ins. Soc'y*, 83 N.Y.2d 603, 614
(1994)).

10

for fraud.[46]  For instance, in *New York University v. Continental Insurance Company*, plaintiff claimed that insurer defendants "engaged in a 'sham' investigation to perpetuate their allegedly fraudulent scheme."[47]  "The New York Court of Appeals held that this allegation 'merely raised a question for the fact finder determining the breach of contract claim.'"[48]

### D.    Consumer Fraud

Section 349 of New York General Business Law is a consumer protection statute.  It creates a private right of action protecting consumers from "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"[49]  Accordingly, it is relevant whether plaintiff and defendant occupy disparate bargaining positions.[50]

---

[46]    *New York Univ. v. Continental Ins. Company*, 87 N.Y.2d 308, 318 (1995).

[47]    *Id.* at 319.

[48]    *Sichel*, 230 F. Supp. 2d at 328 (quoting *New York Univ.*, 87 N.Y.2d at 319).

[49]    N.Y. Gen. Bus. Law § 349(h), (a).  *See also Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 344 (1999), *aff'd*, 96 N.Y.2d 201 (2001); *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 127 (2d Cir. 2000) ("An insurer's denial of a claim is not deceptive simply because it is mistaken.").

[50]    *See New York Univ.*, 87 N.Y.2d at 321.

11

A plaintiff bringing claims under section 349 must, "at the threshold, charge conduct that is consumer oriented . . . ."[51] "Under New York law, a deceptive act or practice 'that has a broader impact on consumers at large'" or similarly situated consumers meets "this threshold test."[52] "The conduct need not be repetitive or recurring but defendants' acts or practices must have a broad impact on consumers at large. 'Private contract disputes unique to the parties . . . would not fall within the ambit of the statute.'"[53] "The sale of a standard form insurance policy has been held to constitute such consumer oriented conduct under this statute."[54] Once the plaintiff meets the consumer-oriented threshold test, he must then show "'that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that the plaintiff has been injured by

---

[51]    *Id.* at 320.  *Accord MaGee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("The injury must be to the public generally as distinguished from the plaintiff alone."); *Gaidon*, 94 N.Y.2d at 344 ("As a threshold matter, in order to satisfy General Business Law § 349 plaintiff's claims must be predicated on a deceptive act that is 'consumer oriented.'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24-25 (1995))).

[52]    *Shapiro*, 212 F.3d at 126 (quoting *Oswego*, 85 N.Y.2d at 25).

[53]    *New York Univ.*, 87 N.Y.2d at 320 (quoting *Oswego*, 85 N.Y.2d at 25).

[54]    *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 51-53 (2d Cir. 1992).

12

reason thereof.'"[55]  "A 'deceptive act or practice' has been defined as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"[56]

### E.    Intentional Infliction of Emotional Distress

"'One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress.'"[57] The tort has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."[58] Courts have limited the first element to include only conduct "'so outrageous in character, and so extreme in

---

[55]    *Shapiro*, 212 F.3d at 126 (quoting *Gaidon*, 94 N.Y.2d 330, 344 (citation and internal quotation marks omitted)).

[56]    *Id.* (quoting *Oswego*, 85 N.Y.2d at 25).

[57]    *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993) (quoting Restatement (Second) of Torts § 46 [1] (1965)). *Accord Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985) (adopting the Second Restatement); *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983); *Fischer v. Maloney*, 43 N.Y.2d 553, 557 (1978).

[58]    *Howell*, 81 N.Y.2d at 122 ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous.").

degree, as to go beyond all possible bounds of decency, and regarded as atrocious, and utterly intolerable in a civilized community.'"[59]  Further, "'the emotional distress suffered by the plaintiff must be so severe that no reasonable man could be expected to endure it.'"[60]  "Conclusory allegations are insufficient to withstand a motion to dismiss."[61]  For instance, in *Wiener v. Unumprovident Corp.*, plaintiff alleged that termination of her disability benefits was a malicious and reckless course of conduct that caused her to suffer great mental anguish and other physical and emotional symptoms.[62]  The court stated that plaintiff's complaint, "while troubling, does not rise to the level required by law to meet the threshold of extreme and outrageous  conduct."[63]

---

[59]    *Murphy*, 58 N.Y.2d at 303 (quoting Restatement (Second) of Torts § 46, comment *d* (1965)).

[60]    *Wiener v. Unumprovident Corp.*, 202 F. Supp. 2d 116, 122 (S.D.N.Y. 2002) (quoting Restatement (Second) of Torts § 46, comment *j* (1965)). *Accord Cunningham v. Security Mut. Ins. Co.*, 689 N.Y.S.2d 290, 291 (3rd Dep't 1999) (finding that breach of contract of insurance does not create a cause of action in tort apart from the contractual relationship between the insured and the insurer).

[61]    *Northwestern Mut. Life Ins. Co. v. Wender*, 940 F. Supp. 62, 65 (S.D.N.Y. 1996).

[62]    *See Wiener*, 202 F. Supp. 2d at 122; *see also MaGee*, 954 F. Supp. at 587 ("This case, at its core, is one for breach of contract based on a failure to pay insurance benefits.").

[63]    *Wiener,* 202 F. Supp. 2d at 122-23.

## IV.  DISCUSSION

### A.    Breach of Covenant of Good Faith and Fair Dealing

Simon alleges that Unum has breached the covenant of good faith and fair dealing.  He claims that Unum has engaged in a bad faith "practice and pattern of inundating Dr. Simon with unduly burdensome, irrelevant and unreasonable requests for information in a disingenuous effort to find a reason not to pay" his disability benefits.[64]  In the complaint, the alleged breach is based solely upon Unum's refusal to pay total disability benefits to Simon.  As noted above, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."[65]  Simon's claim rests on the fact that Unum has withheld payment of disability benefits to which Simon feels he is entitled – an assertion factually identical to that contained in the breach of contract claim.  As pled, the claim does not state a distinct cause of action based on a separate set of facts and so is not independent from the underlying breach of contract claim as

---

[64]    Compl. ¶ 44.

[65]    *Harris*, 310 F.3d at 81.  *Accord Butvin*, 2001 WL 228121, at *8.

15

required by New York law.[66]  Accordingly, defendants' motion to dismiss this claim is granted.

## B.     Fraud

Simon claims that Unum has entered into a scheme to defraud him by issuing disability policies and refusing to make payment on his claim.[67]  In support of this, Simon states that he has become "totally disabled" pursuant to the terms of the contract, but has not received the requested disability benefits.[68]  Similar to the aforementioned breach of the covenant of good faith and fair dealing claim, Simon does not state any additional information other than the facts underlying the alleged breach of contract.  As stated earlier, New York law "precludes fraud actions where the 'only fraud charged relates to a breach of contract.'"[69]  In the instant case, the only alleged misrepresentation stems from the fact that Unum has withheld total disability benefits from Simon.  As pled, the claim does not state a distinct cause of action based on a separate set of facts from the breach of contract

---

[66]     *See Ari*, 273 F. Supp. 2d at 522.

[67]     *See* Compl. ¶ 85.

[68]     *Id.* ¶ 32.

[69]     *Lomaglio Assoc., Inc.*, 892 F. Supp. at 94 (quoting *Miller*, 355 N.Y.S.2d at 607).

claim and so is not independent of the contractual relations between the parties.[70]

Because Simon's fraud allegations relate only to the breach of contract claim, the

allegations are precluded as a matter of law.[71]  Accordingly, defendants' motion to

dismiss is granted.

## C.    Consumer Fraud

Simon complains that Unum's conduct violates Section 349 of the

General Business Law of the State of New York.  "Under New York law, a

deceptive act or practice 'that has "a broader impact on consumers at large" meets

[the consumer fraud] threshold test . . . ."[72]  "The sale of a standard form insurance

policy has been held to constitute such consumer oriented conduct . . . ."[73]  Simon

alleges that Unum has entered into a pattern and scheme to defraud the public by

offering and issuing expensive standard form "own occupation" disability policies

and replacing those with cheaper "any occupation" policies.[74]  Simon claims that

because his policies are not "unique" but are available in standard form to similar

---

[70]    *See Sichel*, 230 F. Supp. 2d at 328.

[71]    *See Lomaglio Assoc., Inc.*, 892 F. Supp. at 94.

[72]    *Shapiro*, 212 F.3d at 126 (quoting *Oswego*, 85 N.Y.2d at 25).

[73]    *Riordan*, 977 F.2d at 51-53.

[74]    Compl. ¶¶ 93-96.

consumers, this scheme is consumer oriented.[75]  Additionally, Simon notes that he

and Unum occupy disparate bargaining positions.[76]  While Simon's "own

occupation" policy is a premium version of the policies that Unum offers,

defendants' conduct is still consumer-directed towards "similarly situated

consumers."[77]

In addition, Simon "must also assert that defendants engaged in "a

representation or omission likely to mislead a reasonable consumer acting

reasonably under the circumstances."[78]  In the complaint, Simon asserts that

defendants engage in a practice of processing "own occupation" policies in

accordance with the terms of  "any occupation" policies.[79]  Simon alleges "that the

public relied on the insurers' alleged misrepresentations" by buying "own

occupation" polices and that these "misrepresentations were intended to induce the

public to rely on them."[80]  Finally, Simon states that he has been injured by

Unum's deceptive practices insofar as he has not received the appropriate

---

[75]    *New York Univ.*, 87 N.Y.2d at 320.

[76]    *See* Compl. ¶ 94.

[77]    *Oswego*, 85 N.Y.2d at 27.

[78]    *Id.*

[79]    Compl. ¶¶ 93-95.

[80]    *Sichel,* 230 F. Supp. 2d at 331.

disability benefits.[81]  Because the policies are available to the public, it is

reasonable to infer that others have been similarly injured.  While Simon's claim

may ultimately prove to be a "'private' contract dispute over policy coverage and

the processing of a claim," he has stated a plausible claim for consumer fraud.[82]

Accordingly, Unum's motion to dismiss is denied.

### D.    Intentional Infliction of Emotional Distress

Simon's final cause of action concerns the intentional infliction of

emotional distress.  An intentional infliction of emotional distress claim must

satisfy the following four elements:  "(i) extreme and outrageous conduct; (ii)

intent to cause, or disregard of a substantial probability of causing, severe

emotional distress; (iii) a causal connection between the conduct and injury; and

(iv) severe emotional distress."[83]  With respect to the first element, Simon alleges

that Unum's conduct has risen "to the level of such an egregious nature [that] it is

extreme and outrageous conduct."[84]  As stated earlier, the core of this case is a

breach of contract claim based on the alleged failure to honor the terms of the

---

[81]     *See* Compl. ¶ 72.

[82]     *Sichel*, 230 F. Supp. 2d at 330 (quoting *New York Univ.*, 87 N.Y.2d at 321).

[83]     *Howell*, 81 N.Y.2d at 121.

[84]     Compl. ¶ 101.

19

Unum policies. Because of disputed language over what constitutes a "total disability" under an "own occupation" policy, defendants requested information from Simon in order to determine the classification appropriate for his disability.[85] There are no facts which would constitute conduct so outrageous as to meet the strict standards required by this claim. Regarded in the light most favorable to plaintiff and without challenging the depth of plaintiff's distress, Simon's complaint does not meet the threshold of extreme and outrageous conduct.

Regarding the second element, the complaint does not provide any information that Unum intended to cause Simon severe emotional distress, but rather states Unum's alleged intent in conclusory terms.[86] Furthermore, Simon has primarily alleged economic, not emotional, losses stemming from Unum's failure to make disability payments. Accordingly, defendants' motion to dismiss the intentional infliction of emotional distress claim for failure to state a claim is granted.

## V.    CONCLUSION

---

[85]    *See id.* ¶¶ 21, 65.

[86]    *See Northwestern Mut. Life Ins. Co.*, 940 F. Supp. at 65 ("Conclusory allegations are insufficient to withstand a motion to dismiss.").

For the foregoing reasons, defendants' motion to partially dismiss is granted in part and denied in part. The Clerk of the Court is directed to close this motion [No. 14 on the docket]. A conference is scheduled for July 8, 2008, at 4 p.m., in courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          June 18, 2008

21

## -Appearances-

**For Plaintiff:**

Jonathan S. Sack, Esq.
Sack & Sack, Esqs.
110 East 59th Street, 19th Floor
New York, New York 10022
(212) 702-9000

**For Defendants:**

Andrew I. Hamelsky, Esq.
White and Williams, LLP
One Penn Plaza, 18th Floor, Suite 1801
New York, New York 10119
(212) 244-9500