UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------- X

JEAN P. SIMON, M.D.,

                     **Plaintiff,**

       **- against -**

UNUM GROUP F/K/A
UNUMPROVIDENT CORPORATION
and PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY,

             **Defendants.**

---------------------------------------------- X

**OPINION AND ORDER**

**07 Civ. 11426 (SAS)**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/09
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

Dr. Jean P. Simon – an Obstetrician/Gynecologist ("OB/GYN") –

brings this action against defendants alleging that he is entitled to disability

payments as a result of an injury that has left him unable to perform surgeries and

deliver babies.[1]  After completion of discovery, defendants now move for

---

[1]     Although Simon's disability income protection policy was issued by
Provident Life and Casualty Insurance Company only, defendants do not challenge
this issue for the purposes of this motion.

summary judgment on Simon's total disability and consumer fraud claims.[2]  For

the reasons that follow, their motion is granted.

## II.    BACKGROUND

### A.    Facts[3]

In January 1993, Simon purchased a Disability Income Protection

Policy from Provident Life and Casualty Company ("Provident").[4]  Under the

policy, Simon is eligible for coverage in the case of either total disability or

residual disability.[5]

In December 2003, Simon filed an Income Protection Claim, seeking

disability benefits after he was diagnosed with having a "deep infection of his left

---

[2]    This Opinion and Order only addresses Simon's motion for summary judgment with respect to the total disability and consumer fraud claims.  Simon also brings a claim for residual disability benefits, and defendants may choose to move for summary judgment of that claim in a separate motion.

[3]    The facts in this section are not in dispute and are drawn from Defendant's Rule 56.1 Statement ("Def. 56.1"), Plaintiffs' Counterstatement Pursuant to Rule 56.1 ("Pl. Counter. 56.1") and from the evidence submitted to the Court by the parties if not included in the 56.1 statements.

[4]    *See* Def. 56.1 ¶ 1; Pl. Counter. 56.1 ¶ 1.

[5]    *See* Disability Income Protection Policy of Jean P. Simon, MD ("Disability Policy"), Ex. 1 to Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Def. Mem.") at 6, 9.

2

hand with associated cellulitis."[6]  Even though Simon is "right-hand dominant," he

stated on the Claim Form that the injury rendered him "unable to perform

deliveries, cesarean sections, [and] surgery."[7]  In the employment section of the

Claim Form, Simon identified his Job Title as "Physician" and stated his Nature of

Business to be "Obstetrics and Gynecology."[8]

Prior to his disability, Simon possessed full admitting privileges at

Beth Israel North Hospital, Beth Israel Medical Center, Mount Sinai Medical

Center, and New York Presbyterian Medical Center-Weill Cornell Medical

Center.[9]  In 2002 and 2003, Simon performed 32 deliveries at the New York

Presbyterian Hospital, 21 surgeries at Beth Israel Medical Center, and one

procedure at Mount Sinai Hospital.[10]  He also had his own practice, A Fifth

Avenue OBGYN, at which he performed the following duties and procedures: (1)

taking of full patient history; (2) prescription of medication; (3) physical

examinations; (4) pap smear tests; (5) counseling; (6) biopsies of the cervix; (7)

---

[6]     Def. 56.1 ¶ 4; Pl. Counter. 56.1 ¶ 4.

[7]     Def. 56.1 ¶¶ 5, 6; Pl. Counter. 56.1 ¶¶ 5, 6.

[8]     Def. 56.1 ¶ 7; Pl. Counter. 56.1 ¶ 7.

[9]     *See* Def. 56.1 ¶ 10; Pl. Counter. 56.1 ¶ 10.

[10]    *See* Def. 56.1 ¶¶ 15, 16, 17; Pl. Counter. 56.1 ¶¶ 15, 16, 17.

curettages; (8) scoping; and (9) insertion of IUDs, among others.[11]  In addition, he

worked at Midtown Medical for a half day each week performing gynecological

examinations.[12]

Post-disability, Simon still has full admitting privileges at the

hospitals listed above, save for Beth Israel North Hospital, which no longer

exists.[13]  He has requested privileges from and has been approved by the hospitals

to perform medical and surgical evaluations and special gynecological procedures,

such as first trimester abortions, removal of IUDs, and biopsies.[14]  He performs the

same diagnostic tests and examinations at his A Fifth Avenue OBGYN office and

continues to work at Midtown Medical for part of one day a week.[15]  It is agreed

by the parties for the purposes of this motion, however, that Simon is no longer

able to perform surgeries or deliver babies.[16]

---

[11]    *See* Def. 56.1 ¶¶ 14, 18; Pl. Counter. 56.1 ¶¶ 14, 18.

[12]    *See* Def. 56.1 ¶¶ 19, 21; Pl. Counter. 56.1 ¶¶ 19, 21.

[13]    *See* Def. 56.1 ¶ 24; Pl. Counter. 56.1 ¶ 24.

[14]    *See* Def. 56.1 ¶¶ 26, 27; Pl. Counter. 56.1 ¶¶ 26, 27.

[15]    *See* Def. 56.1 ¶¶ 30, 33; Pl. Counter. 56.1 ¶¶ 30, 33.

[16]    *See* Def. 56.1 n.2 ("Although Defendants submit that they have ample
evidence to contradict Plaintiff's claimed disability, for the purposes of this
motion, Defendants concede that Plaintiff currently cannot perform gynecological
surgeries, or obstetrical procedures including deliveries."); Plaintiff's

4

According to Simon's policy, "Total Disability" means that "due to injuries or sickness" (1) "you are not able to perform the *substantial and material* duties of your occupation;" and (2) "you are receiving care by a [p]hysician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to you."[17]

"Residual disability" means (1) "you are not able to do *one or more of your substantial and material* daily business duties or you are not able to do your usual daily business duties for as much time as it would normally take you to do them;" (2) "you have a [l]oss of [m]onthly [i]ncome in *your occupation* of at least 20%;" and (3) "you are receiving care by a [p]hysician which is appropriate for the condition causing disability. We will waive this requirement when continued care would be of no benefit to you." The term "your occupation" is defined as

> the occupation (or occupations, if more than one) in which you are regularly engaged at the time you became disabled. If your occupation is limited to a recognized specialty within the scope of your degree or license, we will deem

---

Memorandum of Law in Opposition to Defendants Unum Group f/k/a UnumProvident Corporation and Provident Life and Casualty Insurance Company's Motion for Summary Judgment ("Pl. Mem.") at 19 (arguing that "[a]n OB/GYN who can no longer perform any obstetric surgeries, and can no longer perform gynecological surgeries, is "totally disabled" as a matter of law.").

[17]    Disability Policy at 4 (emphasis added).

your specialty to be your occupation.[18]

Simon's policy provided that if he was found to be totally disabled within the meaning of the policy, he would be entitled to $14,000 in monthly payments.[19] If he was found to be residually disabled, his monthly benefits would be calculated as a percentage of the $14,000, with the percentage equal to the loss of monthly income divided by his pre-disability income.[20]

After Simon submitted his claim, Provident's medical consultant reviewed Simon's medical records and concluded that he would make a complete recovery.[21] Simon was informed that if he encountered complications, he should inform Provident by August 1, 2004.[22] Provident's vocational consultant also contacted Simon to offer vocational assistance, but this offer was rejected by Simon as unnecessary.[23] After a sampling review of Simon's Explanation of Benefits records by the vocational consultant and further extensive investigation

18    *Id.* at 8 (emphasis added).

19    *See id.* at 3.

20    *See id.* at 9.

21    *See* 12/22/05 Letter from UnumProvident to Simon ("12/22/05 Letter"), Ex. 12 to Def. Mem. at 1.

22    *See id.*

23    *See id.*

6

by an independent auditor, Provident concluded that Simon's practice prior to his injury was more focused on gynecology than obstetrics.[24]  In a letter dated May 31, 2005, Provident informed Simon that it would consider his claim for residual benefits and needed additional information to ascertain whether Simon satisfied the requirement of a twenty percent decline in income.[25]

On December 22, 2005, Provident formally denied Simon's claim for total disability benefits by letter, but advised him that he may be eligible for residual disability benefits if it was later determined that he had lost at least twenty percent of his pre-disability earnings.[26]  The letter outlined the history of Provident's investigation into his claim, noting that it had contacted his treating physician, Dr. Wolfe, who had been unable to provide an explanation as to why Simon was unable to return to his previous activities.[27]  It also informed Simon that he was entitled to request an "independent medical examination ("IME")" should he disagree with Provident's medical assessment and that he could submit

---

[24]     *See id.* at 3.

[25]     *See id.* at 4.

[26]     *See id.* at 5; Def. 56.1 ¶ 45; Pl. Counter. 56.1 ¶ 45.

[27]     *See* 12/22/05 Letter at 4.

7

an appeal of the decision within 180 days of the decision.[28]

On August 27, 2007, Provident sent another letter to Simon, informing him that its decision that he was ineligible for total disability benefits was "unchanged."[29] The letter noted that an IME had been performed by a physician who had concluded that Simon "is able to carry out the duties of a gynecologist and of an obstetrician" and that "the records do not support the claimant's inability to carry out his obstetrics practice."[30] Provident's orthopedic surgeon, who had reviewed the records of an appointment Simon had with Dr. Wolfe, similarly concluded that Simon "would probably reasonably be able to carry out the duties of an OB/GYN surgeon in a safe and professional manner at this time."[31] The letter requested additional information to assist in Provident's determination as to whether Simon was eligible for residual disability benefits.[32] It was after this denial that Simon brought the instant action.

### B.    Procedural History

---

[28]    *See id.* at 4, 5.

[29]    8/27/07 Letter from UnumProvident to Simon, Ex. 14 to Def. Mem. at 1.

[30]    *Id.* at 3.

[31]    *Id.* at 3-4.

[32]    *See id.* at 8-10.

On December 20, 2007, this action was removed from state court and assigned to this Court.[33] Simon filed an Amended Complaint on June 4, 2008, alleging claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, consumer fraud, and intentional infliction of emotional distress.[34] On April 16, 2008, defendants filed a motion to dismiss, challenging all of the claims except for the breach of contract claim.[35] By Opinion and Order dated June 18, 2008, this Court dismissed the breach of covenant of good faith and fair dealing, fraud, and intentional infliction of emotional distress claims.[36]

On March 5, 2009, after full briefing on the instant motion, Simon requested leave of the Court to file a Second Amended Complaint to make clear that he was alleging claims for total disability and residual disability benefits.[37] He also wished to incorporate allegations regarding defendants' bad faith claims

---

[33]   *See* 12/20/07 Notice of Removal.

[34]   *See* Amended Complaint.

[35]   *See* Defendants' Memorandum of Law in Support of Motion to Partially Dismiss Amended Complaint.

[36]   *See Simon v. Unum Group*, No. 07 Civ. 11426, 2008 WL 2477471 (S.D.N.Y. June 18, 2008).

[37]   *See* Plaintiff's Memorandum of Law in Support of Motion to Amend Complaint ("Pl. Mem. Am. Compl.") at 5.

9

handling of his insurance claim into his breach of contract claim.[38]  In the June 18,

2008 Opinion and Order, the Court had dismissed Simon's breach of covenant of

good faith and fair dealing claim, ruling that under New York law, it was

"redundant" because breach of the implied covenant of good faith and breach of

contract were the same claim.[39]  Simon argued, however, that New York law has

since recognized the recovery of consequential damages for bad faith claims

handling in first-party insurance coverage situations.[40]

     At a conference on March 16, 2009, the Court granted Simon leave to

file a Second Amended Complaint with the additional allegations and agreed to

consider and rule on defendants' fully submitted summary judgment motion on the

total disability and consumer fraud claims in the meantime.  This Opinion and

Order therefore only considers defendants' February 4, 2009 summary judgment

motion with respect to Simon's total disability and consumer fraud claims.

## III.   LEGAL STANDARD

---

[38]   *See id.*

[39]   *See Simon*, 2008 WL 2477471, at *2.

[40]   *See* Pl. Mem. Am. Compl. at 13 (citing *Bi-Economy Market, Inc. v. Harleysville Ins. Co.*, 10 N.Y.3d 187, 194-95 (2008), and *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200, 203 (2008)).  Simon conceded at a conference held on March 16, 2009 that these cases were decided prior to this Court's 6/18/08 Opinion and Order but were not brought to the Court's attention at that time.

## A.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law."⁴¹  An issue of fact is genuine "'if
the evidence is such that a reasonable jury could return a verdict for the
nonmoving party.'"⁴²  A fact is material when it "'might affect the outcome of the
suit under the governing law.'"⁴³  "It is the movant's burden to show that no
genuine factual dispute exists."⁴⁴

In turn, to defeat a motion for summary judgment, the non-moving
party must raise a genuine issue of material fact.  "Summary judgment is properly
granted when the non-moving party 'fails to make a showing sufficient to establish
the existence of an element essential to that party's case, and on which that party

---

⁴¹    Fed. R. Civ. P. 56(c).

⁴²    *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008) (quoting
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

⁴³    *Ricci v. DeStefano*, 530 F.3d 88, 109 (2d Cir. 2008) (quoting
*Anderson*, 477 U.S. at 248).

⁴⁴    *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244
(2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

will bear the burden of proof at trial.'"[45]  To do so, the non-moving party must do

more than show that there is "'some metaphysical doubt as to the material

facts,'"[46] and it "'may not rely on conclusory allegations or unsubstantiated

speculation.'"[47]  However, "'all that is required [from a non-moving party] is that

sufficient evidence supporting the claimed factual dispute be shown to require a

jury or judge to resolve the parties' differing versions of the truth at trial.'"[48]

In determining whether a genuine issue of material fact exists, the

court must construe the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in that party's favor.[49]  However, "[i]t is a

---

[45]    *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). *Accord In re September 11 Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4 (S.D.N.Y. Aug. 15, 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation omitted).

[46]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[47]    *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[48]    *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson*, 477 U.S. at 248-49).

[49]    *See Mathirampuzha v. Potter*, 548 F.3d 70, 74 (2d Cir. 2008) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

12

settled rule that '[c]redibility assessments, choices between conflicting versions of

the events, and the weighing of evidence are matters for the jury, not for the court

on a motion for summary judgment.'"[50] Summary judgment is therefore "only

appropriate when there is no genuine issue as to any material fact, making

judgment appropriate as a matter of law."[51]

## B.    Breach of Contract Claim - Total Disability

The elements of a breach of contract claim under New York law are:

"'(1) the existence of an agreement, (2) adequate performance of the contract by

the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"[52] "'In

determining a dispute over insurance coverage, [a court must] first look to the

language of the policy.'"[53] A "'policy [must be construed] in a way that affords a

fair meaning to all of the language employed by the parties in the contract and

---

[50]    *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)). *Accord Anderson*, 477 U.S. at 249.

[51]    *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486-87 (2d Cir. 2006)).

[52]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

[53]    *Raymond Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 5 N.Y.3d 157, 162 (2005) (quoting *Consolidated Edison Co. of N.Y. v. Allstate Ins. Co.*, 98 N.Y.2d 208, 221 (2002)).

13

leaves no provision without force and effect.'"[54]

In addition, "[t]he question of whether a provision in an agreement is

ambiguous is a question of law."[55] "'[A]n ambiguity exists where a contract term

could suggest more than one meaning when viewed objectively by a reasonably

intelligent person who has examined the context of the entire integrated agreement

and who is cognizant of the customs, practices, usages and terminology as

generally understood in the particular trade or business.'"[56] If the contract is

found to be ambiguous, the meaning of such contract is a question of fact that

cannot be decided on a motion for summary judgment.[57]

## C.    Consumer Fraud Claim

Section 349 of the New York General Business Law is a consumer

protection statute that creates a private right of action protecting consumers from

---

[54]    *Id.* (quoting *Consolidated Edison*, 98 N.Y.2d at 221-22). *Accord Chapman v. New York State Div. for Youth*, 546 F.3d 230, 236 (2d Cir. 2008) (quoting *American Express Bank Ltd. v. Uniroyal, Inc.*, 562 N.Y.S.2d 613, 614 (1st Dep't 1990) ("'A contract should be construed so as to give full meaning and effect to all of its provisions.'").

[55]    *Chapman*, 546 F.3d at 236 (citing *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)).

[56]    *Id.* (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 184 (2d Cir. 2003)).

[57]    *See Revson v. Cinque & Cinque, P.C* ., 221 F.3d 59, 66 (2d Cir. 2000).

"[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state[.]"[58]  In order to succeed on a claim under this statute, a plaintiff must show "'that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that the plaintiff has been injured by reason thereof.'"[59]  "A 'deceptive act or practice' has been defined as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"[60]

## IV.   DISCUSSION

### A.   Breach of Contract - Total Disability

The parties disagree as to whether defendants breached their contract with Simon by refusing to pay total disability benefits.  The principal dispute turns on the meaning of "total disability" as delineated in Simon's insurance policy. Defendants argue that in order to be totally disabled, Simon must be unable to

---

[58]    N.Y. Gen. Bus. Law § 349(a), (h).  *See also Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 344 (1999), *aff'd*, 96 N.Y.2d 201 (2001) (noting that "[i]n 1980, the Legislature took a significant step to expand the statute's enforcement scheme by allowing a private cause of action.").

[59]    *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000) (quoting *Gaidon*, 94 N.Y.2d at 344) (citation and internal quotation marks omitted).

[60]    *Id.* (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)).

perform "'**all** of the important duties of [his] occupation.'"[61] They contend that

because Simon still performs gynecological examinations and procedures, he is

not totally disabled and therefore not entitled to total disability benefits.[62] Simon

argues that whether he can no longer perform the "substantial and material duties"

of his occupation is a question of fact for the jury.[63] In addition, he asserts that he

need not be unable to perform "all" of the "substantial and material" duties of his

occupation to be "totally disabled."[64]

      I agree with defendants. A contract must be read to give "force and

effect" to each provision.[65] Simon's insurance policy provided that in the event of

disability, he would be eligible for total disability or residual disability benefits.

Under the policy, to be considered residually disabled, it must be determined that

the insured is "not able to do *one or more of [his] substantial and material daily*

*business duties* or [is] not able to do [his] usual daily business duties for as much

---

[61]    Def. Mem. at 13 (quoting *Parker v. Paul Revere Life Ins. Co.*, No. 97 Civ. 4339 (E.D.N.Y. Dec. 20, 2000), Ex. 18 to Def. Mem. ("*Parker*")) (emphasis in original).

[62]    *See id.* at 14.

[63]    *See* Pl. Mem. at 19.

[64]    *Id.* at 17.

[65]    *Raymond Corp.*, 5 N.Y.3d at 162 (quoting *Consolidated Edison*, 98 N.Y.2d at 221-22).

16

time as it would normally take [him] to do them."[66]  To be considered totally

disabled, it must be determined that the insured is "not able to perform *the*

*substantial and material duties* of [his] occupation."[67]  When the policy is read as

a whole, it can only be interpreted in one way.  If the residual disability provision

is to be given meaning, an insured can only be "totally disabled" if he can no

longer perform *any* of the "substantial and material duties" of his occupation.[68]

An inability to perform one or more of those duties would only render an insured

residually disabled.  Thus, the policy is unambiguous: Simon must be unable to

---

[66]    Disability Policy at 8 (emphasis added).

[67]    *Id.* at 4 (emphasis added).

[68]    *See Parker* at 3 ("The policy provides clearly and unambiguously,
however, that an insured who is unable to perform some of the important duties of
his occupation is residually disabled. . . Thus, total disability can only mean the
inability to perform all of the important duties of one's occupation."). *Accord
Provident Life and Accident Ins. Co. v. Cohen*, 193 F. Supp. 2d 845, 850 (D. Md.
2002) ("When the insurance contract is considered as a whole, it is clear that
where the insured is unable to perform one or more but not all of the principal
duties of the regular occupation, he is not totally disabled, but residually
disabled.") (internal quotation marks omitted); *Dym v. Provident Life &
Accidental Ins. Co.*, 19 F. Supp. 2d 1147, 1150 (S.D. Cal. 1998) ("A comparison
of the two definitions suggests that the phrase 'you are not able to perform the
substantial and material duties of your occupation' as used in the 'total disability'
definition cannot reasonably be read as 'you are not able to perform one or more
of the substantial and material duties of your occupation,' because if such a
reading was intended, the language 'one or more' would have been used, as it is in
the 'residual disability' definition.").

17

perform any of the substantial and material duties of his occupation as an

OB/GYN in order to be eligible for "total disability" benefits.[69]

It is undisputed that Simon's occupation prior to and after his

---

[69] *White v. Continental Cas. Co.*, 831 N.Y.S.2d 631 (4th Dep't 2007), upon which Simon principally relies, *see* Pl. Mem. at 16-17, is distinguishable. In addition to having purchased an "any occupation" policy rather than an "own occupation" policy, the insured in that case was an orthopedic surgeon whose disability rendered him capable only of giving second opinions on surgery, performing medical examinations, and providing expert medical testimony. *See id.* at 631. *Niccoli v. Monarch Life Ins. Co.*, 332 N.Y.S.2d 803 (Sup. Ct. N.Y. Co. 1975), is likewise inapposite. After the insured, an OB/GYN, suffered a heart attack, he was forced to become a director of family planning and sex education for Coney Island Hospital. *See id.* at 804. The jury found the insured to be completely unable to engage in his regular occupation. *See id.* Much closer to this case is *Stewart v. Pennsylvania Mut. Life Ins. Co.*, in which the court held that whether an OB/GYN could no longer perform the "substantial and material duties" of her profession and was therefore totally disabled within the meaning of her policy was an issue of material fact for the jury to decide. No. 97 Civ. 5779, 2000 WL 4152, at *1 (S.D.N.Y. Jan. 3, 2000). However, while the court there was confronted with a substantially similar "total disability" definition to the one in Simon's policy, the term "residual disability" was defined as "the ability to perform some but not all of the duties" of one's occupation. *Id.* The policy therefore contained slightly different language for "residual disability," and the court there may have justifiably been concerned about what would be considered duties that are "substantial and material" to Stewart's occupation, because the inability to perform such duties would render him totally disabled. By contrast, Simon's policy uses the term "substantial and material" to define both total and residual disability – the only difference between the two definitions is that an inability to perform one or more of the "substantial and material" duties renders an insured "residually disabled."

18

disability was that of an OB/GYN.[70]  It is also undisputed that while Simon is no

longer able to perform surgeries or deliver babies, he can still perform

gynecological examinations and procedures, which are "substantial and material"

duties of his occupation as an OB/GYN.[71]  The evidence shows that he still has

full admitting privileges at all of the hospitals at which he formerly worked, except

for one that has since closed.[72]  He maintains his own practice where he continues

to perform a significant range of gynecological examinations and procedures.[73]

And he continues his part-time work at Midtown Medical, at which he had only

performed gynecological examinations and procedures prior to his disability

anyway.[74]

      Thus, Simon cannot be said to be unable to perform any of the

"substantial and material duties" of his occupation.  He may be residually

disabled, but he is not totally disabled within the meaning of the policy.  Because

Simon has failed to raise a genuine issue of material fact with respect to whether

---

[70]    Indeed, this is what Simon labeled his occupation on the claims form
he submitted in 2003.  *See* Def. 56.1 ¶ 7; Pl. Counter. 56.1 ¶ 7.

[71]    *See* Def. 56.1 n.2; Pl. Mem. at 19.

[72]    *See* Def. 56.1 ¶ 24; Pl. Counter. 56.1 ¶ 24.

[73]    *See* Def. 56.1 ¶¶ 14, 18; Pl. Counter. 56.1 ¶¶ 14, 18.

[74]    *See* Def. 56.1 ¶ 33; Pl. Counter. 56.1 ¶ 33.

defendants breached their contract with him by denying his total disability claim, summary judgment is granted to defendants on this claim.[75]

## B.    Consumer Fraud Claim

Simon appears to make two allegations in the Complaint with respect to his consumer fraud claim. *First*, he alleges that defendants engaged in deceitful conduct when they induced him to purchase the more expensive "own occupation" policy even though they intended to treat that policy as an "all occupation" policy.[76] *Second*, Simon alleges that defendants "never had any intention of providing [him] with any protection in the event he became totally disabled" and indeed "failed to properly investigate [his] injury.[77]

The allegations upon which Simon's consumer fraud claim are based are substantially similar to the ones the Second Circuit considered in *Shapiro v.*

---

[75]     Simon also makes the argument that there is an issue of fact with respect to whether he has lost 75% or more of his income post-disability. *See* Pl. Mem. at 3. Under his policy, a loss of 75% or more of income is deemed to be a loss of 100% under the residual disability provision. *See* Disability Policy at 8. Because this Opinion and Order only addresses defendants' motion for summary judgment as to Simon's total disability claim, I do not make any determination with respect to this argument.

[76]     *See* Second Amended Complaint ¶¶ 44, 76.

[77]     *See id.* ¶¶ 37, 38.

*Berkshire Life Insurance Company.*[78]  In *Shapiro*, the Second Circuit affirmed the decision of the district court which had granted summary judgment to Berkshire Life on the consumer fraud claim.  There, the insured argued that Berkshire Life had misled him when it told him that a surgeon would receive total disability benefits even if he was able to practice general medicine as long as he could no longer perform surgery as a result of the disability.[79]  In other words, Berkshire Life had explained to the insured that the policy he was purchasing was an "own occupation" policy – it was irrelevant that he could perform *an* occupation as long as he was unable to perform *his* occupation.  The Second Circuit found that Berkshire Life had not been deceptive when it used the "surgeon example" because its denial of coverage was "premised on its conclusion that [the insured] was a medical entrepreneur before the onset date, and therefore that he worked at the same occupation before and after the claimed onset of disability."[80]

The insured in *Shapiro* likewise argued that the insurance company had "failed to make a sufficient investigation of his total disability claim."[81]  The

---

[78]     *See* 212 F.3d 121 (2d Cir. 2000).

[79]     *Id.* at 126.

[80]     *Id.*

[81]     *Id.* at 127.

21

Second Circuit found these allegations to be similarly unsubstantiated because the evidence showed that the insurance company had considered the information on the claims form submitted by the insured, and the record was devoid of evidence that the insurance company never intended to provide the benefits.[82]  The Court reasoned that "an insurer's denial of a claim is not deceptive simply because it is mistaken."[83]

Simon's consumer fraud claim similarly cannot survive summary judgment.  The evidence shows that defendants denied Simon's claim because they found that he was still able to perform gynecological examinations and procedures, which are "substantial and material" duties of his occupation.  They concluded therefore that he was not "totally disabled" within the meaning of his policy.  Simon offers no proof to support his allegation that defendants had considered his policy an "all occupation" policy.  Indeed, the proof submitted to this Court reveals that defendants evaluated his claim based on the policy that he had purchased, which was an "own occupation" policy.

In addition, there is no evidence that defendants have engaged in deceitful conduct in their denial of benefits.  Indeed, Provident appears to have

---

[82]     *See id.*

[83]     *Id.*

22

conducted an even more thorough investigation into Simon's claim than Berkshire

Life did into the claim of the insured in *Shapiro*. The evidence shows that

Provident had retained a number of physicians to review Simon's medical records.

It hired an independent auditor to conduct an extensive investigation of Simon's

Explanation of Benefits records. It also communicated with Simon numerous

times to obtain more information and reconsidered his claim in light of new

records and documents. Once again, there is no proof that Provident mistakenly

assessed Simon's total disability claim. Even if such proof existed, however, that

proof would not support the allegation that Provident's denial of Simon's claim

was deceptive. Summary judgment must therefore also be granted to defendants

on the consumer fraud claim.

## V.    CONCLUSION

For the reasons stated above, defendants' motion for summary

judgment is granted with respect to Simon's total disability and consumer fraud

claims.  The Clerk of the Court is directed to close this motion (document no. 32).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 30, 2009

24

## - Appearances -

**For Plaintiff:**

Eugene Robert Anderson, Esq.
James J. Fournier, Esq.
Jeffrey E. Glen, Esq.
Marc Anthony Laquercia, Esq.
Anderson Kill & Olick, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000

Kevin Jude Connolly, Esq.
Barry B. Lepatner & Associates LLP
600 Lexington Avenue
New York, NY 10022
(212) 935-4400

**For Defendants:**

Andrew I. Hamelsky, Esq.
White and Williams, LLP
One Penn Plaza
250 W. 34th Street
New York, NY 10119
(212) 631-4406