UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

JEAN P. SIMON, M.D.,

        Plaintiff,

    - against -

UNUM GROUP F/K/A
UNUMPROVIDENT CORPORATION
and PROVIDENT LIFE AND
CASUALTY INSURANCE COMPANY,

        Defendants.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/23/10

**MEMORANDUM
OPINION AND ORDER**

07 Civ. 11426 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I. INTRODUCTION & BACKGROUND

Sack and Sack, by its managing partner, Jonathan Sack, petitions this Court to enforce a charging lien pursuant to Section 475 of New York's Judiciary Law against Dr. Jean P. Simon in the amount of $89,160. Simon – an obstetrician/gynecologist – was the plaintiff in an action before this Court in which he sought residual disability payments from defendant insurance companies due to an injury that allegedly limited his ability to perform professional services.[1] Sack was counsel of record for Simon in that action for approximately thirteen months

---

[1] *See* 3/11/10 Stipulation of Dismissal with Prejudice.

1

until he was dismissed on October 28, 2008.[2] Following substitution of counsel and further motion practice,[3] the action was concluded with a settlement in Simon's favor.[4]

After becoming aware that a settlement had been reached, but before that settlement was finalized and the action dismissed, Sack petitioned for attorneys' fees on January 22, 2010,[5] and moved for summary judgment on February 25, 2010. Thereafter, this Court determined that a factual hearing was necessary to determine (1) whether Sack was dismissed for cause and (2) the fair and reasonable value of his services as counsel for Simon.[6] That hearing was held on May 25, 2010.

## II. APPLICABLE LAW

Section 475 of the New York Judiciary Law provides, in pertinent part:

---

[2] *See* 10/28/08 Notice of Substitution of Counsel.

[3] *See Simon v. Unum Group*, No. 07 Civ. 11426, 2009 WL 2596618 (S.D.N.Y. Aug. 21, 2009); *Simon v. Unum Group*, No. 07 Civ. 11426, 2009 WL 857635 (S.D.N.Y. Mar. 30, 2009).

[4] *See* 10/30/09 Order of Discontinuance. The action was subsequently dismissed with prejudice after settlement was finalized. See 3/13/10 Stipulation of Dismissal with Prejudice.

[5] *See* 1/22/10 Petition for Attorneys' Fees.

[6] *See* 5/13/10 Order.

> From the commencement of an action, . . . the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor. . . . The court upon the petition of the client or attorney may determine and enforce the lien.

However, attorneys are not entitled to a charging liens in all instances. Under New York law, a client has an absolute right to terminate the attorney-client relationship at any time, with or without cause.[7] "If a lawyer is discharged for cause, he or she is not entitled to legal fees."[8] However, "[p]oor client relations, differences of opinion, or personality conflicts do not amount to cause."[9] Cause requires a showing of "impropriety or misconduct on the part of the attorney."[10] If the lawyer is not discharged for cause, then he or she is entitled to legal fees – which may be recovered either (1) in *quantum meruit*, the fair and reasonable value of the services rendered,[11] or (2) as a contingent portion of the former client's ultimate

---

[7] *See Cohen v. Grainger, Tesoriero, & Bell*, 81 N.Y.2d 655, 658 (1993).

[8] *Universal Acupuncture Pain Servs. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259, 263 (2d Cir. 2004) (citing *Teichner by Teichner v. W & J Holsteins, Inc.*, 64 N.Y. 2d 997, 979 (1985)).

[9] *Garcia v. Teitler*, 443 F.3d 202, 212 (2d Cir. 2006).

[10] *Id.*

[11] *See Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 458 (1989).

recovery if the parties entered into a contingency agreement.[12]

If awarding fees in *quantum meruit*, the court may consider multiple factors to determine the fair and reasonable value of an attorney's legal services, including:

> [(1)] the difficulty of the matter, [(2)] the nature and extent of the services rendered, [(3)] the time reasonably expended on those services, [(4)] the quality of performance by counsel, [(5)] the qualifications of counsel, [(6)] the amount at issue, and [(7)] the results obtained (to the extent known).[13]

"It is appropriate, after 'consider[ing] all the factors relevant to a *quantum meruit* fee analysis . . . [to] turn[] to lodestar analysis to reach a specific dollar figure for the value of the services rendered[.]'"[14] "This method, which results in the determination of the presumptively reasonable fee, is comprised of a reasonable hourly rate multiplied by a reasonable number of expended hours."[15]

## III. DISCUSSION

Although Sack asserts that he had a contingency fee agreement with

---

[12] *See id.*

[13] *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998)

[14] *Antonmarchi v. Consolidated Edison Co. of N.Y.*, 678 F. Supp. 2d 235, 242 (S.D.N.Y. 2010) (quoting *Sequa Corp.*, 156 F.3d at 148).

[15] *Melnick v. Press*, No. 06 Civ. 6686, 2009 WL 2824586, at *4 (E.D.N.Y. Aug. 28, 2009).

Simon, he only seeks fees on a *quantum meruit* basis.[16] At the hearing, Sack described under oath and in detail the work that he and his associate, Eric Stern, performed during the course of their representation of Simon in this matter.[17] In addition to the normal everyday services an attorney provides for his client, Sack and Stern drafted and filed Simon's original complaint against defendants,[18] defended a motion to dismiss filed by defendants,[19] and drafted and filed an amended complaint.[20] Although three of the four challenged claims were ultimately dismissed by this Court,[21] the motion papers filed by Sack were thorough and well-researched. Moreover, while Simon claims that his spouse (who is an attorney) actually performed much of the work in preparing these papers,[22] it is clear from

---

[16] *See* 5/25/10 Transcript ("Tr.") at 3:12-25, 4:9-11.

[17] *See id.* at 12:11-53:18. Sack's testimony is corroborated by documentary evidence he submitted in support of his motion for summary judgment. *See* Exs. to Jonathan S. Sack's Affidavit in Support of Petitioner's Motion for Summary Judgment ("Sack Aff.").

[18] *See* 3/27/08 Complaint; Tr. at 12:21 -23:14.

[19] *See* 5/6/08 Memorandum of Law in Opposition to Defendant's Motion to Partially Dismiss Plaintiff's Amended Complaint.

[20] *See* 6/6/08 Complaint.

[21] *See generally Simon v. Unum Group*, No. 07 Civ. 11426, 2008 WL 2477471 (S.D.N.Y. June 19, 2008).

[22] *See* Tr. 19:24 -20:5.

Sack's detailed testimony that his firm did the lion's share of that work. Accordingly, Sack is entitled to the fair and reasonable value of the services he rendered.

Because Sack represented Simon on a contingency fee basis, he did not maintain contemporaneous time records while serving as Simon's counsel.[23] Nevertheless, he has provided an invoice reconstructing the work his law firm performed for Simon.[24] According to that invoice, the $89,160 in attorneys' fees requested by Sack is based on his spending ninety hours at the billable rate of four hundred dollars per hour ($36,000) and Stern working one hundred and seventy-five hours at the billable rate of three hundred dollars per hour ($52,500), as well as a deposition transcript expense of six hundred and sixty dollars ($660).[25]

According to Sack, this amount is less than he would have received under his contingency fee agreement with Simon. Sack has represented to the Court that the settlement in this matter was "somewhere north of [six hundred

---

[23] *See Riordan v. Nationwide Mut. Fires Ins. Co.*, 997 F.2d 47, 53 (2d Cir. 1992) ("New York courts have specifically rejected the hard and fast rule that reconstructed time records can never serve as a basis for compensation in favor of wider trial court discretion in evaluating fee petitions." (quotation marks and citations omitted)).

[24] *See* Sack & Sack Invoice for Services Rendered on Behalf of Jean P. Simon, M.D., Ex. E. Sack Aff.

[25] *See id.*

thousand dollars],"[26] and that he had a twenty percent contingency fee agreement with Simon.[27] Thus, pursuant to the fee agreement, Sack would have been entitled to one hundred and twenty thousand dollars in fees – significantly more than the $89,160 requested by Sack – if he had completed his representation of Simon under the Agreement. This reduction in attorneys' fees properly accounts for the fact that substituted counsel, attorneys from the law firm of Anderson Kill & Olick, L.L.P., performed some of the legal work necessary to bring this case to conclusion – including defending two summary judgment motions.[28] Accordingly, I find that the amount of $89,160 reflects the fair and reasonable value of the services Sack performed in representing Simon.[29]

---

[26]   Tr. at 5:8-9.

[27]   See id. at 4:17-21.

[28]   See Simon, 2009 WL 2596618; Simon v. Unum Group, 2009 WL 857635.

[29]   While I would normally consider discounting the requested attorneys' fees to take account of the uncertainty created by the lack of contemporaneous time records, see D'Jamoos v. Griffith, No. 00 Civ. 1361, 2008 WL 2620120, at *11 (E.D.N.Y. Feb. 29, 2008), I decline to do so in this case for two reasons. First, Sack has had to spend considerable time and effort to obtain the attorneys' fees to which he is clearly entitled. Second, there are no fee-shifting statutes applicable to this case which would have required Sack to submit contemporaneous time records to receive court-awarded attorneys' fees. See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983). Accordingly, there was nothing improper about Sack, who was working on a contingency fee basis, not keeping time records.

## B. Failure to Provide a Letter of Engagement and Dismissal for Cause

Simon has made two arguments why attorney's fees are inappropriate in this case. *First*, Sack did not comply with New York's letter of engagement rule, which "requires attorneys to provide all clients with a written letter of engagement explaining the scope of legal services, the fees to be charged, billing practices to be followed, and the right to arbitrate a dispute under Rules of the Chief Administrator of the Courts . . . ."[30] Sack has admitted that he failed to comply with this rule. However, it is well established, under New York law, that this failure does not prevent an attorney from recovering fees in *quantum meruit* provided that the other requirements for such recovery are satisfied.[31] As discussed above, those requirements have been met and thus Sack is entitled to recover attorneys' fees.

*Second*, Simon asserts that Sack was dismissed for cause. As stated, an attorney is not entitled to attorneys' fees if he is dismissed for cause – *i.e.*, if he

---

[30] *Seth Rubenstein, P.C. v. Ganea*, 833 N.Y. S.2d 566, 570 (2d Dep't 2007) (citing 22 NYCRR 1215.1). *See id.* (stating that the letter of engagement rule is "also satisfied if the attorney and client execute a formal written retainer agreement reflecting the same information as required for a letter of engagement").

[31] *See Miller v. Nadler*, 875 N.Y.S.2d 461, 462 (1st Dep't 2009); *Chase v. Bowen*, 853 N.Y.S.2d 819, 819 (4th Dep't 2008); *Seth Rubenstein, P.C.*, 833 N.Y.S.2d at 572.

is dismissed for misconduct or impropriety. At the hearing, Simon rallied off a litany of reasons why Sack was discharged for cause. As an initial matter, I do not find Simon to be a credible witness and the vast majority of his statements are not supported by documentary evidence or corroborating testimony. Primarily, Simon seems to disagree with many of the tactical decisions that Sack made during the course of representing him in this matter.[32] However, "[s]omething more than a personality conflict or difference of opinion is required to establish discharge for cause and '[c]ourts typically find a discharge for cause where there has been a significant breach of legal duty."[33] There is no indication that any of the differences of opinion cited by Simon – which appear to have been manufactured after the fact to avoid paying attorneys' fees – indicate attorney misconduct. Accordingly, I find that Sack was not dismissed for *just* cause and is entitled to

---

[32] *See* Tr. at 68:2-70:14. Simon also testified that Sack had an altercation with his wife. *See id.* at 66:17-21 ("When he grabbed my wife's arm out of the deposition room. Or perhaps I'm using the wrong term. I'm sorry. He grabbed her by the arm and pulled her out of the room into the hallway, and then threw her in a chair in the office."). Simon, however, did not see the bulk of this altercation. Instead, he asserts that his wife, who did not testify, told him about the altercation. *See id.* at 66:15-15. Accordingly, the majority of this testimony is hearsay and hence inadmissible. *See* Fed. R. Evid. 801 & 802. Moreover, I do not find this story, which is utterly lacking in detail and unsubstantiated, believable.

[33] *Greenberg v. Cross Island Indus., Inc.*, 522 F. Supp. 2d 463, 467 (E.D.N.Y. 2007) (quoting *D'Jamoos v. Griffith*, No. 00 Civ. 1361, 2006 WL 2086033, at *5 (E.D.N.Y. July 25, 2006)).

attorneys' fees.

### C.    Prejudgment Interest

"Under New York law, a lawyer's right to recover in *quantum meruit* accrues immediately upon discharge."[34] Accordingly, prejudgment interest, which is mandatory on attorneys' fees awards,[35] is properly calculated from that date at the statutory rate of nine percent per annum.[36] Sack was removed as counsel one year and two-hundred and thirty-seven days ago on October 28, 2008.[37] Accordingly, he is entitled to $13,234.76 in prejudgment interest.

## IV.    CONCLUSION

For the reasons discussed, Sack's petition for attorneys' fees is granted. Sack is directed to prepare a proposed order consistent with this Opinion by no later than July 6, 2010. The Clerk of Court is directed to close this motion (Docket No. 69).

---

[34]    *Universal Acupuncture Pain Servs.*, 370 F.3d at 263.

[35]    *See Ogletree, Deakins, Nash, Smoak & Stewart P.C. v. Albany Steel, Inc.*, 663 N.Y.S.2d 313, 315 (3 Dep't 1997); CPLR § 5001(a). *See also D'Jamoos v. Griffith*, No. 08 Civ. 3668, 340 Fed. Appx. 737, 741 (2d Cir. Aug. 12, 2009).

[36]    *See* CPLR ¶ 5004.

[37]    *See* 10/28/08 Notice of Substitution of Counsel.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         June 22, 2010

## - Appearances -

**For Petitioner:**

Eric Robert Stern, Esq.
Sacks & Sacks, LLP
150 Broadway, 4th Floor
New York, NY 10038
Tel: (212) 702-9000
Fax: (212) 702-9702

**Plaintiff (Pro Se):**

Jean P. Simon
36 E. 70th Street
New York, NY 10021
Tel: (212) 677-1000
Fax: (212) 717-1171